IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| GARCIA GRAIN TRADING CORP. | ) | CASE NO. 23-70028 |
| | ) | |
| DEBTOR. | ) | (CHAPTER 11) |

**LIMITED OBJECTION OF THE UNSECURED CREDITORS' COMMITTEE
TO THE DEBTOR'S APPLICATION TO EMPLOY COUNSEL**

TO THE HON. EDUARDO V. RODRIGUEZ, CHIEF UNITED STATE BANKRUPTCY JUDGE:

The Unsecured Creditors' Committee (the "Committee" or "UCC") files this Limited Objection to the Debtor's Application to Employ David Langston and the firm of Mullin Hoard & Brown, L.L.P. [Dkt #28] (collectively the "Law Firm") as follows:

## I.
## PRELIMINARY STATEMENT

1. The Debtor, through the efforts of the Law Firm filed its Chapter 11 case on February 17, 2023. This is a complex case, created by gross mismanagement, at best, and actual fraud and potential criminal misconduct at worst. This Debtor has filed schedules and statements that fail to reflect the source of, or any explanation for, its receipt of $20+ millions of dollars in grain commodities that are now "missing" from its storage facilities, *yet carried on the books and records of the Debtor and its financial statements "as if" the commodities are still present.*

2. The Debtor has since filed its "Chapter 11 Status Conference Statement" [Dkt. #87] ("Status Report"). The Debtor acknowledges that "[t]he Debtor is currently not buying or selling any grain due to the suspension of its licenses by the TDA which sealed the Progreso facility and Donna/Santa Rosa, along with a grain elevator facility the Debtor owns in Edcouch, Texas…" [*See*, ¶15, pg.4 Debtor's Status Report Dkt. #87]. Further it is admitted that "the Debtor had a

significant deficiency in the amount of grain in inventory as compared to the grain reflected on its books." [*Id*, *See, also* ¶15 pg. 4 Debtor's Status Report Dkt. #87]. Most notably is the admission that

> [*s*]*ince there is no commercial grain trading being conducted at this time* the expenditures by the Debtor are pursuant to a cash collateral order where the expenditures are for § 506(c) expenses simply to maintain the value of the grain elevator facilities. Presently, no other form of adequate protection is possible.

[*See*, ¶ 15, pg. 4-5 Debtor's Status Report Dkt. #87 (Emphasis added.)] as well as the obvious – the Status Report it is almost void of this most crucial issue of explaining what happened to the "missing" grain.

3. The Debtor admits that it is "missing" more than $15 million (a likely low estimate) in commodities delivered to its facilities and currently carried on its books "as if" still there. The Debtor's Status Report *tellingly offers no explanation of this multi-million-dollar loss* (no claim of fire, storm, theft, or other unavoidable accident or disease) because it appears the "missing" commodities have been converted to cash (*i.e.*, sold) exclusively under the control of the Debtor's owner-managers (the current management). Of all topics ripe for explanation from an honest Debtor, it can be presumed that such explanation is missing because its owners and managers are not honest.

4. These admissions wholly destroy the justification, much less the basis, of continuing any "debtor in possession" of the cash, movable property, and the real property necessary for operations, but whose operations are prohibited because of the presence of existing management. The disclosed value of the Debtor's property and assets is far below the amount of Debtor's debts and claims against the estate, and although not normally a disqualification of a debtor in possession, this Debtor in possession *admits its own disqualification*. As the Debtor admits, it is prohibited from all operations (other than liquidation of its grain inventory) because

of the gross mismanagement and fraud of its owners-management. The TDA no longer allows this DIP to operate the business arising out of an audit that disclosed a massive amount of missing commodities not reported by the Debtor.

5. It is also important to note that the claims of the secured lenders, that is, those with the most access and knowledge of the Debtor's financial records, business, cash accounts and cash flow, have all (with the possible exception of StoneX) obtained "affiliate" guarantees and pledges of their assets to secure *the funds these lenders advanced **to the debtor**, **not to the Affiliates*** (*See, e.g*. Status Report Summary of claims of Vantage Bank, Falcon Bank and Grainchain). Obtaining this additional collateral was the direct result of the mismanagement by managers and owners of this Debtor that denuded the estate of its cash and assets in order to acquire ranches, farm land, and other valuable assets through these Affiliates but using the debtor's funds. Later, the absence of those funds to the Debtor caused the Affiliates to guaranty and pledge their assets to the Debtor's preferred lenders so as to have access to the obvious short-fall of cash arising from this denuding.

6. Important to this Limited Objection is the final denuding by this Debtor of its available cash resulting from the Debtor funding its bankruptcy counsel's $100,000.00 retainer to file what can only be, with existing management, a liquidating case. In fact, the Debtor's status report suggests exactly that – liquidating all of the assets of this Debtor with no remaining operations.

> 21. The Debtor anticipates timely filing a proposed Plan of Reorganization. The Plan will likely provide for the creation of a liquidation trust where all of the assets subject to the claims of secured creditors and unsecured creditors will be placed, and the named trustee will liquidate these assets,…

[*See*, Status Report, ¶ 21, pg. 6, Dkt. #87]. Such a Plan, based only on the schedules of values of those assets and claims, leave nothing for unsecured creditors.

## II.
## THE UCC'S LIMITED OBJECTION TO DEBTOR'S APPLICATION TO EMPLOY COUNSEL

7. The immediate effect of managements' decision to pay it's counsel the $100,000.00 retainer is to ensure the absence of funds to allow the Creditor's Committee to function and fulfill its obligations to its creditor class. By this decision, there is no cash by which the Creditors' Committee can employ legal counsel and advisors and thus, the Debtor is free to continue as the DIP without the "bother" of an active and concerned Committee.

8. In an ordinary case, absent fraud and defalcation by the pre-petition and post-petition management, courts tolerate the most insolvent Debtor's access to its funds to employ its own counsel, but even in the case of an honest debtor, that access has limitations. That is not the case here. Debtor's counsel, even though not disclosing its several years of litigation *against and on behalf of this Debtor* [*See, e.g. Case No. 17-01006, Rio Grande Valley Sugar Growers, Inc. v Byron Todd Vassberg* and Case No. 16-10059, *In re Byron Todd Vassberg*, (SDTX, McAllen Division) J. Rodriguez] had and has full knowledge that this is not representing an honest Debtor with unfortunate circumstances.

9. The Creditors' Committee believes that under the unique circumstances of this case, the retainer funds paid to initiate Debtor representation greatly exceeds a reasonable fee expected to be earned on behalf of this dishonest debtor. The Creditors' Committee believes all counsel should share in the risk of constituency representation and non-payment, particularly where the risks to creditors far exceeds the risk to a non-operating Debtor and its counsel.

10. The Creditors' Committee counsel and the Creditors' Committee expert advisors request that $50,000.00 of the "property of the estate" retainer paid to the Law Firm be transferred by order of this Court to the Committee for its counsel and its expert advisors (to be split in a

manner directed by the Committee and agreed by its counsel) and subject in all things to the approval of this Court of any draw or payment of those fees, and further, pursuant to §105 of the Bankruptcy Code, order the Debtor and its counsel to make such transfer.

WHEREFORE, the Creditors' Committee seeks the relief above requested and for such other and further relief to which the Creditors' Committee may be justly entitled, both at law and in equity.

Dated March 20, 2023.

Respectfully submitted,

*/s/ Shelby A. Jordan*
Shelby A. Jordan
St. Bar No. 11016700; S.D. No. 2195
Antonio Ortiz
St. Bar No. 24074839; SD. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Drive, Suite 900
Corpus Christi, TX 78401
Telephone: 361.884.5678
Facsimile: 361.888.5555
Email: sjordan@jhwclaw.com
aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com
**PROPOSED ATTORNEY FOR THE UNSECURED CREDITORS' COMMITTEE**

## CERTIFICATE OF SERVICE

I certify that on March 20, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Shelby A. Jordan*
Shelby A. Jordan