IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS (MCALLEN)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GARCIA GRAIN TRADING CORP., | ) | Case No. 23-70028 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

**STONEX COMMODITY SOLUTIONS LLC'S MOTION TO CONVERT CASE
TO ONE UNDER CHAPTER 7**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

COMES NOW, StoneX Commodity Solutions LLC *f/k/a* FCStone Merchant Services, LLC ("**StoneX**"), by and through its undersigned counsel, and pursuant to 11 U.S.C. §§ 105(a) and 1112(b), *et al*., FEDERAL RULES OF BANKRUPTCY PROCEDURE 1017(f) and 1019(5), *et al*., and

50452482 v7

BLR 1019-1, *et al*., files this *Motion to Convert Case to One Under Chapter 7* (the "**Motion to Convert**").  In support thereof, StoneX submits the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction concerning this Motion to Convert pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), *et seq*.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

2. On February 17, 2023 (the "**Petition Date**"), Garcia Grain Trading Corporation (the "**Debtor**") filed its voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").  The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. As of the Petition Date, the Debtor was in possession of certain grain, specifically including corn and sorghum owned by StoneX (the "Grain"), all located at the Debtor's Progreso, Texas facility.  StoneX owns the Grain pursuant to its *Master Purchase and Sale Agreement* (the "**Master Agreement**") and various Purchase Confirmations.  In addition to the above, from time-to-time, StoneX would deliver Grain to the Debtor's warehouse in Progreso, and the Debtor would agree to store the Grain and would issue warehouse receipts to StoneX for the Grain deposited at the Progreso warehouse.  Although StoneX holds valid warehouse receipts for 1,491,771 bushels of corn and 680,000 bushels of sorghum, the Debtor admits that its elevators contain far less than what is represented in such warehouse receipts – a $10,000,000.00 shortfall between the amount of Grain (or accounts receivable associated with the Grain) currently in the Progreso facility and StoneX's ownership position reflected in its warehouse receipts, at least.

4. As of the filing of this Motion to Convert, StoneX has not received payment for its Grain, and StoneX possesses the warehouse receipts evidencing its ownership of the Grain. Accordingly, StoneX owns the Grain.

5. The Debtor's Schedules and Statement of Financial Affairs have been filed, *see* [ECF Nos. 50, 51], and they reflect an entity that is significantly overleveraged with little hope for rehabilitation. *See infra* ¶ 10, *et al*. Further, the Grain, which is listed as a significant asset of the Debtor (notwithstanding the Schedules, StoneX holds warehouse receipts evidencing valid ownership of the Grain in Progreso), will be sold and the proceeds therefrom segregated into a DIP account. *See infra* ¶ 13. The Debtor is unable to operate its full prepetition business and has no ability to provide adequate protection. *See* [ECF No. 14]; *infra* ¶ 13.

## RELIEF REQUESTED

6. StoneX requests that this Court convert this case to one under chapter 7 so that a Chapter 7 Trustee (the "**Trustee**") will administer this case. *See* 11 U.S.C. § 704, *et al*.

7. Bankruptcy Code §1112(b)(1) states, in pertinent part, "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." "Cause" includes, among other things, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "failure to maintain appropriate insurance that poses a risk to the estate or to the public." *See* 11 U.S.C. § 1112(b)(4), *et seq*. In this case, the Debtor has informed the creditors that its current insurance coverage is set to expire and not renew by May 31, 2023.

8. "The inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor." *In re TMT Procurement Corp.*, 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015) (citation omitted) (Isgur, J.). "[S]ome courts have stated that the standard for finding cause is flexible and subject to the court's discretion. . . [and this Court may have] discretion in determining what additional circumstances, not enumerated in section 1112(b)(4), constitute cause." *See* 7 *Collier on Bankruptcy* P 1112.04 (16th 2022) (citations omitted); *see also* 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting"). Further, 11 U.S.C. § 105(a) empowers this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

**THERE IS A SUBSTANTIAL AND CONTINUING LOSS TO OR DIMINUTION OF THE ESTATE, AND THIS DEBTOR HAS NO REASONABLE LIKELIHOOD OF REHABILITATION.**

9. Pursuant to 11 U.S.C. § 1112(b)(4)(A), the proponent of conversion must show "that there is both (1) a substantial or continuing loss to or diminution of the estate *and* (2) the absence of a reasonable likelihood of rehabilitation." *See In re TMT Procurement Corp.*, at 918 (emphasis in original). "The test of whether there exists a 'substantial or continuing loss to or diminution of the estate' has been met where it has been shown that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the entry of the order for relief [and] [t]he second prong—whether there is an absence of a reasonable likelihood of rehabilitation—looks to whether the debtor lacks a reasonable likelihood of reestablishing itself on a firm, sound basis." *In re Express Grain Terminals, LLC*, No. 21-11832-SDM, 2022 WL 1051097, at *9 (Bankr. N.D. Miss. Apr. 7, 2022) (citations omitted).

10. Section 1112(b)(4)(A) asks, essentially, two questions, the first of which is: "[D]oes the debtor have a negative cash flow or declining asset values?" *See* 7 *Collier on Bankruptcy* P 1112.04 (16th 2022). Here, the answer is "yes." The Debtor filed its Schedules on March 3, 2023. *See* [ECF No. 50]. The Schedules indicate that the Debtor's liabilities exceed the total of the

Debtor's property by more than $22,000,000.00. *See id.* The Texas Department of Agriculture has suspended the Debtor's license and thus the Debtor is not currently allowed to operate outside the sales of Grain authorized by this Court, *see* [ECF No. 59], so there is no value being generated to replace the property being utilized to fund the current expenses of the estate. *See* 7 *Collier on Bankruptcy* P 1112.04 (16th 2022) (noting that "diminution in asset value after the commencement of the case" is sufficient to justify a finding of substantial or continuing loss to the estate). However, "courts must look beyond a debtor's financial statements and make a full evaluation of the present condition of the estate." *In re Zamora-Quezada*, 622 B.R. 865, 881 (Bankr. S.D. Tex. 2017) (citing 5 Norton Bankr. L. & Prac. 3d § 103:7). At present, the Debtor has a negative cash flow, its insurance coverage will non-renew at the end of May, and replacement insurance will be significantly more costly. Accordingly, there is a continuing loss to or diminution of the estate, and the case should be converted to one under chapter 7.

11. The second question posed by § 1112(b)(4)(A) is: "[W]ill the debtor or another party be able to 'stop the bleeding' and return the debtor to solid financial footing within a reasonable amount of time?" 7 *Collier on Bankruptcy* P 1112.04 (16th 2022). Asked otherwise: can this Debtor "be put back in good condition [in order to] justify continuance of the reorganization effort?" *See In re Zamora-Quezada*, at 881 (citation omitted) (formatting altered). Here, the answer is "no."

12. In *In re TMT Procurement Corp.*, Judge Isgur made two observations relevant to this case. *See supra* ¶ 8. First, he noted that the Debtor had "no business operations [and] no cash flow from operations." *See id.*, at 916–17. Secondly, he stated that "the Debtors, in the aggregate, [had] approximately $16.5 million in cash, all of which [was] subject to the lien of. . . the DIP lender." *See id.*, at 916. Essentially, the Debtor had "few, if any, tangible assets remaining. . .."

*See id.*, at 920.  Similar findings were made by Judge Paul in *In re Emirates, Inc.*, No. 09-30865-G3-11, 2010 WL 817220, at *2 (Bankr. S.D. Tex. Mar. 4, 2010).  There, after noting that the Debtor's primary asset had been foreclosed, the Court observed that the "Debtor ha[d] no business to reorganize," and the Debtor no longer had consent to use cash collateral. *See generally id*.  As such, conversion to chapter 7 was appropriate.

13. This Debtor's case is analogous to both *In re TMT Procurement Corp.* and *In re Emirates, Inc.*  Here, the Debtor is no longer in business, and the Texas Department of Agriculture has suspended the Debtor's operations.  The Grain, as well as the Debtor's real property, cash, inventory, and accounts receivable are subject to liens and/or ownership claims exceeding their value.[1]  The Debtor itself has conceded that it cannot generate income from operations.  *See* [ECF No. 14, p. 3] ("The Debtor is currently not buying or selling any grain due to the suspension of its licenses by the Texas Department of Agriculture ("**TDA**") which sealed the Progreso facility and Donna/Santa Rosa, along with a grain elevator facility the Debtor owns in Edcouch, Texas. . . because of its audit of the grain at such sites which concluded that *the Debtor had a significant deficiency in the amount of grain in inventory as compared to the grain reflected on its books* [and] no other form of adequate protection is possible currently") (emphasis added) (formatting altered).

14. Further, StoneX does not consent to the Debtor's continued use of the Grain to fund its operations, and the Grain is being sold pursuant to the *Agreed Order Granting Emergency Joint Motion to Sell Grain at the Progreso, Texas Facility* [ECF No. 59].  Pursuant to the same, the proceeds from the sale of the Grain will be deposited "into the Debtor in Possession Grain Proceeds Escrow Account established by the Debtor in accordance with the *Chapter 11 Trustee Handbook* and the Bankruptcy Code, and *the proceeds shall not be touched* or otherwise removed until further

---

[1] StoneX asserts, and has consistently asserted throughout the case, that the Grain belongs to it.  Nothing herein should be considered a waiver of that position or the arguments in support thereof.

Order of this Court." *See id*., ¶(f) (emphasis added).  Simply put, the Debtor does not have any reasonable prospect to fund its reorganization expenses and re-establish itself.  *See Debtor's Chapter 11 Status Conference Statement* [ECF No. 87, p. 6] ("The Plan will likely provide for the creation of a liquidation trust where all of the assets subject to the claims of secured creditors and unsecured creditors will be placed, and the named trustee will liquidate these assets, determine the lien priorities against the proceeds, and distribute the proceeds to the creditors").  It is notable that there is already in place a process for selling the Grain as well as the process under Sectin 557 of the Code to determine ownership of Grain proceeds and/or liens theron, without the delay and expense of establishing a liquidation trust. Consequently, because there is no reasonable likelihood for the Debtor's rehabilitation, this case should be converted to one under chapter 7 and a Trustee appointed.

**THE DEBTOR WILL SOON FAIL TO MAINTAIN APPROPRIATE INSURANCE AS REQUIRED BY THE BANKRUPTCY CODE.**

15. The Debtor has been given notice that FCCI Insurance Company ("**FCCI**"), along with other insurers, will soon "non-renew" certain policies covering the Debtor's property and the Grain.  The Notice from Graves Group Insurance is attached hereto as **Exhibit A**.

16. "Pursuant to § 1112(b)(4)(C), a Chapter 11 case can be dismissed or converted if the debtor's 'failure to maintain appropriate insurance. . . poses a risk to the estate or to the public.'" *In re Delta AG Grp., LLC*, 596 B.R. 186, 196 (Bankr. W.D. La. 2019) (citing § 1112(b), *et seq*.).  And when a debtor operates grain storage bins, § 1112(b)(4)(C) "requires that the debtor maintain casualty and liability insurance to protect the estate and the public." *See id*. at 196.  "The types of insurance that may be necessary to protect the estate and the public, depending on the debtor's business, may include all or some combination of fire and extended liability insurance, general liability insurance, worker's compensation and unemployment insurance, employee health

insurance, malpractice insurance, [and] product liability insurance," among others. *See* 7 *Collier on Bankruptcy* P 1112.04 (16th 2022). And this insurance is not only integral to protect the Debtor, it also serves to insulate creditors against losses that could diminish the value of the Debtor's estate. *See generally id*. Here, FCCI will soon cancel – or non-renew - insurance concerning the Debtor's property and automobiles, and other insurers may soon cancel the Debtor's windstorm and hail policies. *See* **Ex. A**.

17. Even more concerning, Harco National Insurance Company is likely to cancel the grain warehouse bonds "effective June 1, 2023." *See id*. Although the Debtor informs the creditor body that it will find and maintain adequate insurance, FCCI notes the "very difficult insurance market" surrounding this case. *See id*. Further, the Debtor has no authority to use cash collateral after May 13, 2023 and has no disclosed source of post-petition financing. Since the Debtor's insurance policies are winding down, the Debtor will not have adequate insurance to protect the assets of the estate. *See*, *e.g.*, *In re Van Eck*, 425 B.R. 54, 61 (Bankr. D. Conn. 2010) (dismissing chapter 11 case because Debtor's "[f]ailure to provide. . . insurance coverage is Section 1112(b)(1) 'cause. . .'"); *In re Gilroy*, No. BAP NH 07-054, 2008 WL 4531982, at *6 (B.A.P. 1st Cir. Aug. 4, 2008) (bankruptcy court did not err in finding that Debtor's failure to maintain insurance constituted "cause"); *In re Plaza de Retiro, Inc*., 417 B.R. 632, 642 (Bankr. D.N.M. 2009) (noting that a failure to maintain insurance constitutes "cause" to convert a case). Accordingly, this case should be converted to chapter 7 and a Trustee appointed.

**CONVERSION WILL NOT IMPEDE THE 557 PROCEDURES.**

18. StoneX filed its *Emergency Motion for Relief Pursuant to § 557* on March 17, 2023. *See* [ECF No. No. 86]. The same was granted on April 6, 2023. *See* [ECF No. 126]. Converting this case to one under chapter 7 will not hinder or delay the procedures requested therein. First,

§ 557 is "effective regardless of what chapter of the Code" the case was filed or proceeds under. *See* 5 *Collier on Bankruptcy* P 557.02 (16th 2022). Also, among the Trustee's many duties outlined in 11 U.S.C. § 704, he or she is specifically tasked with collecting property of the estate and reducing it to money in an expeditious manner. *See generally* 6 *Collier on Bankruptcy* P 704.01 (16th 2022). Here, the Trustee will have the opportunity to participate in the § 557 Procedures as he or she may deem appropriate, as well as serve as a neutral third-party throughout the § 557 process. Further, because the Grain is being sold pursuant to the *Agreed Order Granting Emergency Joint Motion to Sell Grain at the Progresso, Texas Facility* [ECF No. 59], only legal questions remain as to the party entitled to the proceeds of the Grain, and the Grain will be sold and substantially reduced to cash in a segregated Grain Account by the time a Chapter 7 Trustee would be appointed.

19. Converting the case to one under chapter 7 will also allow for continued supervision by the Court and ensure the complete administration of this case including, if necessary, the liquidation of estate assets by the Trustee in an expedited and orderly fashion. *See* 11 U.S.C. § 704(a)(1). Since the Debtor proposes a liquidating plan, there is no need for continued staffing or updated budgets. *See generally* [ECF No. 14, **Ex. A**]. If the Court were to determine that there is a continued need for staffing to complete the liquidation of the Grain, StoneX, using its expertise and experience in the grain industry, will work with a Chapter 7 Trustee to manage and oversee the same, and will do so with or without employees of the Debtor. *See, e.g.*, 11 U.S.C. §§ 704(a)(8), 721. Given the nature of the Debtor's failed business, a Chapter 7 proceeding provides the best mechanism to liquidate certain assets and it should reduce costs and expenses for both the creditors and the Debtor's estate – maximizing the realization of value for both. This is especially true in light of the Unsecured Creditors' Committee's (the "**Committee's**") recently-filed *Limited*

*Objection to the Debtor's Application to Employ Counsel*. *See* [ECF No. 92]. There, the Committee accuses the Debtor of paying its counsel a $100,000.00 retainer in order to block the Committee's efforts, among other motives. What the Committee does not mention, however, is that the retainer is likely proceeds from *StoneX's Grain*, so neither Debtor's counsel *nor* the Committee should be empowered to use it without the consent of StoneX. A Chapter 7 Trustee could adequately determine how to manage this case and allocate expenses in an equitable manner.

20. When deciding whether to convert a case, this Court "should evaluate and choose [what] would be most advantageous to the parties and the estate as a whole." *See* 7 *Collier on Bankruptcy* P 1112.04 (16th 2022) (citations omitted). Factors this Court may consider include "the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors," as well as "whether the debtor had engaged in misconduct and. . . creditors are in need of a chapter 7 case to protect their interests." *See id*. (citations omitted). When considering the foregoing factors, alongside the entire record in this case, this Court should conclude that conversion of this case to one under chapter 7 is in the best interests of the Debtor, its estate, and its creditors.

## CONCLUSION

**WHEREFORE**, StoneX requests that this Court convert this case to one under chapter 7. StoneX also requests any further, different, or additional relief that the Court deems in the interests of equity. A proposed order is attached hereto.

Respectfully submitted this, the 12TH day of April, 2023:

> /s /KURT STEPHEN
> Kurt Stephen, *Of Counsel*
> David W. Houston, IV
> D. Christopher Carson
> *Attorneys for StoneX Commodity Solutions LLC*

**OF COUNSEL**:
The Law Office of Kurt Stephen, PLLC
100 South Bicentennial
McAllen, Texas 78501
Email: kurt@kstephenlaw.com

**OF COUNSEL**:
BURR & FORMAN LLP
222 2nd Ave S #2000
Nashville, TN 37201
Telephone: (615) 724-3200
Email: dhouston@burr.com

**OF COUNSEL**:
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Emails: ccarson@burr.com
         acicero@burr.com

## CERTIFICATE OF SERVICE

     I hereby certify that on this, the 12TH day of April, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and a true and correct copy of the foregoing has been served on the following via electronic means through the Court's electronic filing system and/or via US Mail upon those listed in the attached creditor matrix:

                                                                                  */s/ David W. Houston, IV*
                                                                                  David W. Houston, IV

BURR & FORMAN LLP
222 2nd Ave S #2000
Nashville, TN 37201
Telephone: (615) 724-3200
Email: dhouston@burr.com

## **EXHIBIT A – the Notice**

*(See attached.)*

50452482 v7

## **THE PROPOSED ORDER**

*(See attached.)*

50452482 v7