IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| GARCIA GRAIN TRADING CORP. | ) | CASE NO. 23-70028 |
| | ) | |
| DEBTOR. | ) | (CHAPTER 11) |

**CORRECTED**

**NOTICE OF THE UNSECURED CREDITORS' COMMITTEE BANKRUPTCY RULE 2004 DOCUMENT PRODUCTION IN CONTEMPLATION OF EXAMINATION OF THE CORPORATE REPRESENTATIVES OF DEBTOR GARCIA GRAIN TRADING CORP.**

PLEASE TAKE NOTICE that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2004-1 of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Garcia Grain Trading Corp., as Debtor and Debtor in Possession ("Debtor" or "Garcia Grain") is commanded to produce documents and electronically stored information ("ESI"), and respond to the requests for production (the "Requests"), identified herein below in **Exhibit "A"**, to the undersigned counsel for the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned Chapter 11 case of the Debtor (the "Chapter 11 Case") on or before fourteen (14) days from service of this Notice at 4:00 p.m. (Prevailing Central) to the offices of the Committee's counsel Jordan & Ortiz, P.C. 500 N. Shoreline Drive, Suite 900, Corpus Christi Texas (within the Southern District of Texas) or as otherwise mutually agreed (the "Production Date").

Pursuant to this notice, the Debtor's corporate representatives, including Octavio Garcia, John Rowland, and Rene Izaguirre, shall also appear for a live examination by verbal questioning pursuant to this notice and the prior requests (the "Examination") to testify regarding the documents produced and the topics and categories set out in Exhibit "A", to begin on May 24, 2023 at 9:00 am to continue thereafter, ending May 25, 2023 not later than 5:00 pm. Unless

otherwise agreed by the parties, the Examination shall take place at the law offices of Atlas, Hal & Rodriguez, LLP, located at 818 Pecan Blvd., McAllen, Texas 78501, or such other place as mutually agreed. The Examination may be recorded by stenographic and/or videographic means; it will continue from day to day until concluded; and it may be used for the purpose of discovery or as evidence in the Bankruptcy Case, including but not limited to use in connection with any hearing, proceeding or adversary proceeding arising in, under or otherwise related to the Bankruptcy Case, and for any other purposes allowed by law. Each witness claiming a need of an interpreter shall arrange a qualified interpreter to permit the witnesses understanding of questions propounded.

Please take further notice that the Committee reserves its rights under title 11 of the United States Code (the "Bankruptcy Code"), the Bankruptcy Rules, the Local Rules, and any applicable law regarding the subject matter of this Notice, to amend, supplement, and/or modify this Notice in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law, and to issue additional and/or supplemental notices or Requests.

Original Service Date: April 28, 2023.

               Respectfully submitted,

               */s/ Shelby A. Jordan*
               Shelby A. Jordan
               St. Bar No. 11016700; S.D. No. 2195
               Antonio Ortiz
               St. Bar No. 24074839; SD. No. 1127322
               ***JORDAN & ORTIZ, P.C.***
               500 North Shoreline Drive, Suite 900
               Corpus Christi, TX 78401
               Telephone: 361.884.5678
               Facsimile: 361.888.5555
               Email:  sjordan@jhwclaw.com
                     aortiz@jhwclaw.com
               Copy to: cmadden@jhwclaw.com
               **ATTORNEY FOR THE UNSECURED CREDITORS' COMMITTEE**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 2004-1, I hereby certify that counsel for the Committee conferred with David Langston, counsel for Debtor Garcia Grain Trading Corp. on the Committee's Rule 2004 request and the examination dates are agreed on behalf of the debtor and the Unsecured Creditors' Committee.

                                                            */s/ Shelby A. Jordan*
                                                             Shelby A. Jordan

**CERTIFICATE OF SERVICE**

I certify that on April 29, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and by direct email upon debtor's counsel and certain parties in interest and counsel as follows:

    David Langston <dlangston@mhba.com>;
    Mitzi Emert <memert@mhba.com>;
    'Houston IV, David W.' <dhouston@burr.com>;
    'Curtis, Catherine S.' <ccurtis@mcginnislaw.com>;
    'Carson, Chris' <ccarson@burr.com>;
    'Jimenez, Andrew '  (USTP) <Andrew.Jimenez@usdoj.gov>;
    'Richard Haynes' <rhaynes@thlaw.us>;
    Vicki M. Skaggs <vmskaggs@atlashall.com>;
    Jaime Lopez <jlopez@grainchain.io>;
    'David Castillo' <David.Castillo@TexasAgriculture.gov>;
    'Layla.Milligan@oag.texas.gov' <Layla.Milligan@oag.texas.gov>;
    'Autumn.Highsmith@oag.texas.gov' <Autumn.Highsmith@oag.texas.gov>;
    Kurt Stephen <Kurt@kstephenlaw.com>;
    Chrystal Madden <cmadden@jhwclaw.com>;
    'dmclaughlin@fluegellaw.com' <dmclaughlin@fluegellaw.com>;
    'david@guerralawgroup.com' <david@guerralawgroup.com>;
    'Demetrio Duarte Jr.' <dduarte@duartemolinalaw.com>;
    'jdf@johndavidfranz.com' <jdf@johndavidfranz.com>;
    'rad@mcdonaldlaw.com' <rad@mcdonaldlaw.com>;
    Rosana Townsend <rtownsend@mhba.com>;
    Brad Odell <bodell@mhba.com>;
    Özen Zimmerman <ozimmerman@mhba.com>;
    'octavio@garciagraintrading.com' <octavio@garciagraintrading.com>;
    'Gabriela Balli' <balligabriela@gmail.com>;
    'Anis' <anamarbal@aol.com>;
    'Rene Izaguirre' <rene.izaguirre@me.com>;
    'Rowland John' <jtrowland@gmail.com>

                                                            */s/ Shelby A. Jordan*
                                                             Shelby A. Jordan

# EXHIBIT "A"

The following definitions apply to the Document Production and Examination Requests. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

2. The term "*Agent*" shall mean any Person and their Professionals acting for or on behalf of another Person.

3. The terms "*all*," "*any*," and "*each*" shall each be construed as encompassing any and all of these terms.

4. The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications, or responses that might otherwise be construed to be outside of its scope.

5. The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, cash equivalents, Commodities, Commodities futures, precious metals, jewelry, wine, art, automobiles, watercraft, boats, and any other thing of value.

6. The term "*Commodities*" shall mean any tangible material that can be bought and sold. For the avoidance of doubt, this includes gold, silver, diamonds, platinum, palladium, and other precious metals. For the further avoidance of further doubt, this includes options, futures, and funds.

7. The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). For the avoidance of doubt, this may encompass any oral,

written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, social media messages (e.g., Facebook, Twitter), WhatsApp chat messages, Telegram app messages, GroupMe chat messages, or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

8. The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing, or constituting.

9. The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, policies and resolutions made by management, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, and any other Document concerning an entity's organization or material activities.

10. The terms "*Debtor*" or "*Garcia Grain Trading Corp.*" shall mean the Person who filed a petition for chapter 11 bankruptcy in the case of *In re Garcia Grain Trading Corp.*, No.23-70028 (Bankr. S.D. Tex.), or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor, and Professionals of the Debtor.

11. The term "*Document*" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations. This includes documents stored in any medium from which information can be

obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets, and PowerPoint presentations. A draft or non-identical copy is a separate document within the meaning of this term.

12. The term "*Elevator*" or "*Elevators*" shall mean the Debtor's storage facilities located at Progresso, Donna, Santa Rosa and Edcouch Elevators and all improvements, equipment, or other property or assets used in connection therewith.

13. The term "*Financial Records*" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, and books and records containing any of the above maintained in the ordinary course of business.

14. The term "*Gift*" shall mean any Transfer to a Person, either directly or indirectly, where full consideration (measured in money or money's worth) is not received in return.

15. The term "*including*" shall mean "including, but not limited to."

16. The term "*Income*" shall mean any compensation in exchange for goods or services, including fees, commissions, fringe benefits, and other similar items.

17. The term "*Insider*" shall have the meaning ascribed in 11 U.S.C. § 101(31).

18. The term "*Investment*" or "*Investments*" shall mean any asset or entity in which the debtor invested, supplied, or contributed any funds for the acquisition or operation, including by way of example, but not limited to: (i) Pitts property; (ii) Toluca Ranch; (iii) Moore Farms; (iv) Emory Farms; (v) Baryta Industrial; (vi) Moore Property; and (vii) Garcia Balli LLC.

19. The term "*IRS*" shall refer to the Internal Revenue Service.

20. The term "*Payment*" shall mean any voluntary or involuntary Transfer of an Asset

directly or indirectly from You or on Your behalf having a value of $100 or more in exchange for any service, product, or other Asset, whether previously provided, provided contemporaneously with the Transfer, or to be provided in the future.

21. The term "*Person*" shall mean any natural person or any legal entity, unincorporated association, or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

22. The term "*Petition Date*" shall mean February 17, 2023.

23. The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, consultants (including independent consultants), independent contractors, advisors, and testifying or non-testifying experts.

24. The term "*Real Property*" shall have the meaning ascribed to the term in section 1.04(2) of the Texas Property Tax Code.

25. The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment, or information return, statement, or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a tax Professional, a bank or financial institution, the IRS, or any other governmental authority.

26. The term "*Transfer*" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

27. The terms "*You*," "*Your*," or "*Yours*" shall mean the Debtor, and each Person or entity over which the Debtor has agency or apparent authority.

28. The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

29. Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, or any other individual or entity acting or purporting to act on behalf of such Person.

30. The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

## INSTRUCTIONS
### [Exhibit "A" Continued]

1. These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules, the Federal Rules of Civil Procedure, and the Local Rules, as the case may be.

2. Each Request is continuing in nature. If at any time additional Documents responsive to the Requests come into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3. You are requested to produce all Documents, Communications, and information requested herein that are within Your possession, custody, or control or in the possession, custody, or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, or any other Person or entity acting or purporting to act on Your behalf.

4. If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify: (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the

Request(s) cannot be answered fully and completely; and (d) any knowledge, information, or belief You have concerning the unanswered portion of any such Request(s).

5. All Documents shall be produced in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format. *All Documents shall be produced with metadata, including but not limited to the date created/sent, author, recipients, cc-copies, bcc-blind copies, and whether the document contains redactions*.

6. If the response to any Request consists, in whole or in part, of an objection on the basis of or including burdensomeness, then provide those documents that can be produced without undue burden. For such documents that are too burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

7. If You intend to withhold any responsive Document, Communication, or other information on the basis of a claim of attorney-client privilege, work product protection, bank examination privilege, or any other ground of non-disclosure, You shall identify such Document, Communication, or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type, and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication, or other information, including any privilege claimed.

8. If Your response to any Request is any other objection, You must indicate if information is being withheld based on the objection(s), provide all information not covered by the objection, and state the specific basis of the objection.

9. If any Document responsive to these Requests has been destroyed, lost, or discarded, state when the Document was destroyed, lost, or discarded; identify the Person who destroyed, lost, or discarded the Document; and, in the event the Document was destroyed or

discarded, identify the Person who directed that it be destroyed or discarded. Additionally, detail the reasons for the destruction, loss, or discarding; describe the nature of the Document; identify the Persons who created, sent, received, or reviewed the Document; and state in as much detail as possible the contents of the Document.

10. Subject to Instruction No. 5 above, Documents should be produced in the manner they are kept in the ordinary course of business. In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

11. All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

12. The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

13. Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied, or otherwise obtained from April 16, 2018, to the present.

14. By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to modify or otherwise to supplement these Requests.

15. If not otherwise noted, the request for production of Documents deals with production of Documents from January 1, 2018 to May 1, 2023.

**REQUEST FOR PRODUCTION OF DOCUMENTS
AND TOPICS FOR EXAMINATION
[Exhibit "A" Continued]**

**Please produce all Documents incident or relating to the following described categories of Documents, and a corporate representative most familiar with those Documents and the familiar with the topics and categories as set out below:**

**A. Debtor's Financial Circumstances and Documents**

1. Annual audited (or reviewed) consolidated financial statements with notes prepared, issues or published for the years to 2018 to the present.

2. Annual financial statement for Progresso, Donna, Santa Rosa and Edcouch Elevators for the past four years detailing specific assets by debtor and specific obligations and collateral pledges.

3. All communications between the Debtor and the Texas Department of Agriculture ("TDA") regarding permits, reports of inventory and stored commodities, and the termination of operations privileges in 2022.

4. Federal tax returns for the prior four years.

5. The General Ledger exported to excel on a consolidated and individual company basis.

6. Details of intercompany balances between the debtor and non-debtor affiliates.

7. Dividends and distributions and details of Investments in non-debtor properties.

8. Copies of all grain elevator inventory reports/audits prepared by the debtor reports to the Texas Department of Agricultural.

9. Copies of all borrowing base reports from the secured lenders.

10. Debtor prepared Schedules (Statement of assets and liabilities and Statement of financial affairs) filed with the bankruptcy in excel.

11. Appraisals with respect to any of the debtor's assets done in the preceding two years.

12. Financial Statements and all statements of existing Warehoused Commodities furnished to the Texas Department of Agriculture.

13. Financial Statements and all statements of existing Warehoused Commodities furnished to Falcon Bank.

14. Financial Statements and all statements of existing Warehoused Commodities furnished to Vantage Bank.

15. Statement of salaries, draws, withdrawals, loans to or funds advanced to all of the Debtors' Insiders and all family members of the Debtor's Insiders.

B. **Non-debtor properties financed or invested in whole or in part by the Debtor including but not limited to: (i) Pitts property; (ii) Toluca Ranch; (iii) Moore Farms; (iv) Emory Farms; (v) Baryta Industrial; (vi) Moore Property; and (vii) Garcia Balli LLC (the "Non-Debtor Properties")**

16. Sources of funding for each of the Non-Debtor Properties referenced above including the Debtor's funding.

17. Debt on Non-debtor Properties or its assets, to the degree outstanding, if any.

18. Tax returns for the Non-Debtor Properties, including Garcia Balli LLC, for the past four years.

19. Collateral pledges of non-debtor property as the case may be to Vantage Bank, Falcon Bank, and Grain Chain, Inc.

20. Any transfers to any entity which owns the Non-Debtor Properties referenced above.

21. Any transfers to Garcia Balli LLC or transfers of Balli LLC assets.

22. The listing for sale of any Non-Debtor Properties.

C. **Regulatory Related Documents Regarding TDA and PACA**

23. Copies of all grain elevator inventory reports/audits prepared submitted to the Texas Department of Agricultural (TDA).

24. Copies of all Financial Statements furnished the TDA

25. Copies of all communications with the TDA.

26. Copies of all TDA audits of Warehoused Commodities of the Debtor, as made from time to time.

27. Copies of all notices by TDA of any cease-and-desist operations demand, instruction, or ruling issued in 2022 or 2023.

D. **Prepetition Financing and Financing Documents Related Documents**

28. Copies of all reporting provided in the last 48 months to lenders, lessors, and other persons entitled to reporting in respect of financial exposure to the company.

29. Copies of all applications for credit made in the past 48 months, including operating and capital lease financing of equipment.

30. Copies of all loan documents, including any credit agreements, guaranty agreements, security agreements, draw requests, UCC financing statements, deeds to secure debt, and notices regarding any of the foregoing received in the last 24 months.

31. Copies of all loan / intercompany netting agreements and any statements reflecting liabilities, related guarantees, amendments and releases between the Debtor and its affiliates.

32. Copies of all transactions entered into with Grainchain Inc., including documents related to its claim in the bankruptcy proceeding.

33. Correspondence with Grainchain Inc. related to any security interest granted to Grainchain prior to the petition date.

34. Copies of all invoices received from Grainchain for services rendered to the Debtor.

35. All transactions by and between (i) any Debtor's insider or family member of the Insider and (ii) any Insider or family member of the Insider to Grain Train or Verge Data, Inc.

E. **Board and Shareholders Actions; Officers' Operations and Operations Planning**

36. Lists of all current and former shareholders, members, officers and directors of the Debtor in the past 48 months, with date of appointment, and reason for resignation or removal if not incumbent.

37. All board and shareholder meeting agendas and minutes of the Debtor, and board actions by written consent of officers and directors, in the past 48 months.

38. Copies of all agenda attachments, board packages or presentations for all board and shareholder meetings of the Debtor for the past 48 months, and all shareholder reporting (including parent reporting) of the past 48 months.

39. Copies of all periodic financial and operating reporting packages, strategic business plans, capital and operating budgets, and operation projections and prospectuses prepared by or for the Debtors, any parent or affiliate, or any senior officer or director or any subsidiary or affiliated entity thereof, whether for internal or external (including marketing or financing) use.

40. To the extent not included above the current (post-petition, go forward) budget and business plan for the Debtor.

41. To the extent not included above, all proposed budgets and liquidity plans for the Chapter 11 process.

42. A listing of all the Debtor's shareholders, their holdings, and any changes in their holdings during the last 48 months.

F. **Insurance maintained by the Debtor**

43. All documents related to Directors and Officers liability insurance, general corporate liability insurance, and business termination/interruption insurance, if any.

44. All casualty or liability maintained by the Debtor on all of the Debtor's insurable interests in property.

45. All bonds, including surety bonds, covering any business actions or assets of the Debtor

G. **Executory Contracts of the Debtor**

46. Equipment and real property leases (especially any and all prepetition contracts / leases between its affiliates).

47. All remaining executory contracts.

H. **Dealings and Transactions with Grain Train or Verge Data, Inc. (Miami and Texas) (collectively "Grain Train") or Insiders to Grain Trail**

48. All documents related to any indebtedness to Grain Chain Inc. and any security interest granted to Grain Chain Inc.

49. All correspondence with Grain Chain Inc. and any of its owners or representatives for the past 24 months.

50. All audits or accounting or reports conducted or prepared by Grain Chain, or on its behalf, of Warehoused Commodities or Warehouse Receipts for stored Grains in the Debtor's facilities.

51. All payments made to Grain Train for all services it rendered to the Debtor.

52. All transactions by and between any Debtor's insider or family member of the Insider and any Insider or family member of the Insider to Grain Train.

I.  **Dealings with StoneX Commodity Solutions, LLC ("StoneX")**

53. All correspondence with Stonex Commodity Solutions, LLC regarding any audits, requests for audits, or any related due diligence to determine the actual existence of Warehoused Commodities to support warehouse receipts.

54. All contracts entered into with StoneX, including contracts for the sale of Warehoused Commodities or financing of commodities warehoused by Debtor.

55. All documents related to Warehoused Commodities sold to StoneX Commodity Solutions, LLC and the use of those sale proceeds.

56. All documents related to payments made to StoneX for the purchase by the Debtor of the Warehoused Commodities, or for the Debtor's sale of the Warehoused Commodities reflected by warehouse receipts delivered to StoneX.

57. All documents related to warehouse receipts transferred to StoneX Commodity Solutions, LLC.

58. All purchases of warehoused commodities from StoneX by the Debtors.

59. All audits conducted by StoneX or on its behalf of any Warehoused Commodities by the Debtor.

J.  **Third-Party Funding For Any Asset Acquisitions:**

60. Any documents evidencing funding or transfers of assets in exchange for equity in any other entity.

61. Any funding of private equity investments made on behalf of any owner, affiliate, or insider.

K.  **Transfers to Insiders (as defined in 11 U.S.C. § 101)**

62. Any payments made pursuant to any settlement agreement entered into with any Insider or third party regarding any Insider.

63. Any payments or transfers to Rodolfo Plascencia in exchange for his interest in Garcia Grain or pursuant to any settlement agreement entered into between Octavio Garcia and Rodolfo Plascencia.

64. Any relationship payments or advances to any family member of an Insider of the Debtor other than ordinary salaries.

**L. The Loss of Warehoused Commodities or Funds**

65. The nature and cause of the loss of any Warehoused Commodities of funds derived from Warehouse Commodities by the Debtor and each transaction comprising the loss realized.

66. Each and every sale of any Warehoused Commodities by the Debtor subject to a Warehouse Receipt held by StoneX.

67. The Debtor's use of funds received from the sale of Warehoused Commodities by the Debtor if not used to pay the warehouse receipt reflecting the Warehoused Commodities.

68. The dollar amount or estimated volume amount of lost or missing Warehoused Commodities by the Debtor.