IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| GARCIA GRAIN TRADING CORP., | § § § | Case No. 23-70028-EVR-11 |
| | § | |
| Debtor. | § | |

**DEBTOR'S EMERGENCY MOTION TO MODIFY COURT'S PRIOR RULING ON DEBTOR'S SECOND AMENDED MOTION FOR AUTHORITY TO LEASE GRAIN FACILITIES TO TEXAS VALLEY GRAIN, LLC**
**(Progreso & Santa Rosa Facilities)**
**(Docket Nos. 259 &263)**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 14 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 14 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**(Emergency Relief Needed by June 9, 2023, at 9:00 A.M.)**

TO THE HONORABLE EDUARDO V. RODRIGUEZ, U.S. BANKRUPTCY JUDGE:

NOW COMES, GARCIA GRAIN TRADING CORP., the Debtor in the above-captioned

case (the "Debtor" or "Garcia Grain"), and pursuant to Federal Rule of Bankruptcy Procedure

4001(d) and 11 U.S.C. Section 363 files this, its *Emergency Motion to Modify Court's Prior Ruling on Debtor's Second Amended Emergency Motion for Authority to Lease Grain Facilities to Texas Valley Grain (Progreso & Santa Rosa Facilities)* (the "**Emergency Motion**") and in support of such **Emergency Motion** would respectfully show the Court as follows:

### *Summary of Relief Requested*

This **Emergency Motion** requests the Court to modify its prior ruling made at the conclusion of the emergency hearing held on May 31, 2023, on the Debtor's Second Amended Emergency Motion for Authority to Lease Grain Facilities to Texas Valley Grain, LLC. At such hearing the Debtor sought authority to lease its two grain storage facilities located in Progreso and Santa Rosa, Texas for a period of nine (9) months beginning June 1, 2023, and running through February 29, 2024, so that the grain facilities could be operated to generate funds to pay adequate protection payments to the secured creditors and as part of the financial arrangement to secure casualty insurance coverage on the grain facilities to avoid the potential for immediate and irreparable harm to the bankruptcy estate.

Texas Valley Grain, Harlingen, Texas ("TVG") proposed to operate the Santa Rosa Facility and Progreso Facility and pay consideration of $7.70 per metric ton of grain stored at the Debtor's elevators, and with respect to any trans-loading operations conducted at the Progreso Facility the consideration of $3.85 per metric ton.

To address objections filed on behalf of StoneX and GrainChain the Debtor reached an agreement with TVG to modify the terms of the proposed leases to provide that TVG must pay consideration equivalent to 25,000 metric tons at each of the grain facilities by August 31, 2023, or the leases will automatically terminate, and, in such event, TVG will have until September 30, 2023, to vacate and remove its grain and equipment from the premises. If TVG pays consideration

equivalent to 25,000 metric tons at each facility by August 31, 2023, then the lease terms shall continue and will not expire until February 29, 2024.

At the conclusion of the emergency hearing held on May 31, 2023, the Court granted the Debtor's motion under the conditions agreed upon between the parties in open court and directed Director's counsel to upload an Agreed Order signed off by all parties impacted by the proposed leases and any parties objecting to the leases by noon on Tuesday, June 6, 2023.

Unfortunately, since the conclusion of the hearing Debtor's counsel was informed by counsel for TVG upon further inspection of the Progreso Facility by TVG that due to the limited capacity, and the damaged condition of the silos following the windstorm of late April, TVG does not believe it can comply with the 25,000 metric ton minimum through-put at that site by the deadline of August 31. Therefore, it has determined not to go forward with the leasing of the Progreso Facility but is still wanting to lease the Santa Rosa Facility under the announced terms. Since the decision of TVG to not lease the Progreso Facility is a substantial modification of the transaction as it was presented to the Court last Wednesday, May 31st, the Debtor believes it is imperative to inform the Court and give the creditors and parties in interest an opportunity to provide their input, prior to uploading an order that includes only the leasing of the Santa Rosa Facility.

## *Request for Authority to Substitute Elkins Grain Company as the TVF of the Progreso Facility*

Furthermore, the Debtor has reached an agreement with Elkins Grain Company, McCook, Texas ("**Elkins**"), to substitute for TVG and become the TVF in its stead in connection with leasing the Progreso Facility. The terms of the Lease Agreement covering the Progreso Facility would mirror those of the Lease Agreement between the Debtor and TVG on the Santa Rosa Facility

except for the additional consideration to be paid the Debtor for the transloading of grain at the rate of $3.85 per metric ton. The agreement of Elkins to lease the Progreso Facility would be conditioned on appropriate proof of liability and worker's compensation insurance being provided to the Debtor as well as property insurance covering the facility and the grain stocks – once again similar in nature and scope to the insurance provided on the Santa Rosa Facility by TVG.

## I.
## BACKGROUND FACTS

1. On February 17, 2023 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. An Official Committee of Unsecured Creditors ("**Committee**") has been appointed in this case and has employed professionals on its behalf.

3. This Court has jurisdiction over this Emergency Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (M).

4. Prior to the Petition Date Garcia Grain Trading Corporation (the "**Debtor**" or "**Garcia Grain**") operated public grain storage facilities located in Progreso, Texas ("**Progreso Facility**"), Donna, Texas ("**Donna Facility**"), Santa Rosa, Texas ("**Santa Rosa Facility**") and Edcouch, Texas ("**Edcouch Facility**"), and used these grain elevators in its business of buying feed grains from growers in the United States and selling them to customers in Mexico.

5. Apart from the Debtor's operations to sell the stocks of grain now stored at the Progreso Facility all other grain facilities are empty and sitting idle. Pursuant to orders entered by

the Court the Debtor is selling grain remaining in the Progreso Facility to companies in Mexico and depositing the receipts into the Debtor in Possession Grain Escrow Account it maintains with Wells Fargo Bank.

6. The motion heard by this Court on May 31, 2023, provided for the lease of the Progreso and Santa Rose Facilities by TVG. The terms of the Lease Agreements would provide for $25,000 deposits toward rent, consideration to be paid based on $7.70 per metric ton stored at each facility, a rental fee of $3.85 per metric ton transloaded at the Progreso Facility, and a through-put minimum of 25,000 metric tons at each facility by August 31, 2023, or the leases would terminate, with TVG having until September 30, 2023, to remove its grain and equipment at each facility otherwise holdover rent would commence on October 1, 2023, and if the specified through-put thresholds were met the leases would continue until the termination date of February 29, 2024.

7. All the facilities would be covered by property insurance with Falcon Bank providing the force-placed coverage on the Progreso Facility, Vantage Bank Texas providing forced-placed coverage on the Santa Rosa and Donna Facilities, GrainChain, Inc. providing the force-placed coverage on the Edcouch Facility, and StoneX covering the grain stocks at the Progreso Facility currently in the process of being sold and moved into Mexico.

8. The Court ruled upon the motion and granted authority to the Debtor to lease the Santa Rosa and Progreso Facilities to TVG for a period of nine (9) months beginning June 1, 2023 and running through February 29, 2024, under the terms and conditions announced in open Court.

9. Following the hearing representatives of TVG inspected the Progreso Facility and determined that due to the damage suffered by the grain storage silos as a result of the windstorm that it would not be possible for TVG to meet the minimum through-put threshold of 25,000 metric tons and informed counsel for the Debtor that it was not willing to move forward with the Progreso

lease, but still desired to enter into an agreement to lease the Santa Rosa Facility on the same conditions as announced at the hearing.

10. Thus, this Emergency Motion seeks authority from the Court to enter into a lease agreement between the Debtor and TVG covering the Santa Rosa Facility only.

11. Furthermore, since the Debtor learned TVG did not want to lease the Progreso Facility, the Debtor is seeking authority to substitute Elkins for TVG on the Lease Agreement covering the Progreso Facility. Additionally, the Debtor will seek authority for the leasing of one or more of the other facilities on such terms as the Debtor may determine to be the best under the circumstances to Elkins which provides property insurance coverage for the facilities that are the subject of any such proposed lease agreement.

## II.
## TERMS OF THE LEASES

12. Attached as Exhibit "A" is a copy of the Lease Agreement which the Debtor proposes to enter with TVG related to the Santa Rosa Facility, and to be modified as necessary to cover the lease terms between the Debtor and Elkins related to the Progreso Facility. Both lease agreements provide for TVG and Elkins to lease the respective facilities and make an initial payment for each of the properties of $25,000 per month. The Lease calls for consideration in the form of rent to be based upon $7.70 per metric ton of grain stored at both the Progreso and the Santa Rosa Facilities, and $3.85 for any trans-loading operations conducted at the Progreso Facility involving grain being transferred into Mexican trucks and exported into that country. The terms of the leases will be for nine (9) months from June 1, 2023, to February 29, 2024, during which the Debtor will have the time to prepare and confirm an operating plan of reorganization or otherwise administer and liquidate the estate. In the meantime, the facilities would be insured against damage to them by

Debtor's Emergency Motion to Modify Court's Prior Ruling on Debtor's Second Amended Emergency Motion for Authority to Lease Grain Facilities to Texas Valley Grain - Page 6

wind, hail, or another casualty. It is estimated the operations of TVG using the Santa Rosa Facilities and Elkins using the Progreso Facility should bring in between $350,000 and $500,000 for the estate.

13. The salient provisions of the Lease Agreement between TVG covering the Santa Rosa Facility shall provide for the following:

- TVF will lease the Santa Rosa facility consisting of two tracts of real property along with all structures, storage facilities, fixtures, operating apparatus, and other improvements located on such tracts. It being understood that Tract #1 is owned in fee simple by the Landlord and Tract #2 a leasehold in real property owned by Union Pacific Railroad Company. Tract #1 has two grain silos located on the property with a capacity of approximately 981,000 bushels, and Tract #2 has eight grain silos located on the leasehold estate with a capacity of approximately 868,500 bushels (*see* paragraph a. of the Santa Rosa Lease).

- As more fully set forth in the Santa Rosa Lease paragraphs 2., 3., 3.A. and 3.B., the lease term for the Santa Rosa Facility shall run from the commencement date to February 29, 2024, provided however, that in the event that TVG has not deposited a minimum of 25,000 metric tons at the Santa Rosa Facility by August 31, 2023,the Santa Rosa Lease shall automatically terminate and TVG shall have until September 30, 2023, to remove its grain and equipment from the Santa Rosa Facility and TVG shall be responsible for the payment of holdover rent as provided in the Lease Agreements effective October 1, 2023.

- The provisions of the Santa Rosa Lease provide that Vantage will keep the building or buildings and improvements on the Leased Premises insured by "force-placing" insurance that insures against loss by fire with extended windstorm and hail coverage as more particularly described in paragraph 9 of the Santa Rosa Lease.

- TVF shall be responsible for insurance relating to the grain stocks to be stored in the grain silos located on the Santa Rosa Facility, all machinery and equipment it may locate or use in connection with the Santa Rosa Lease, and commercial general liability insurance coverage as more particularly described in paragraph 9 of the Santa Rosa Lease.

- TVF acknowledges that it has had free access and a full and complete opportunity to inspect the property and has negotiated with the Debtor any aspects related to the physical condition of the Santa Rosa premises, and save and except for repairing the ring in one of the silos at Santa Rosa Facility within 10 days of the Commencement Date of the Santa Rosa Lease (as defined in the Santa Rosa Lease), agrees to lease the property "AS IS" with any and all faults and deficiencies already having been taken into account during the

negotiations pertaining to the execution of the Santa Rosa Lease as set forth in paragraphs 7 and 22 of the Santa Rosa Lease.

- TVF shall be responsible for the payment of all utilities on the leased premises at the Santa Rosa Facility during the term of the Santa Rosa Lease as set forth in paragraph 8 of the Santa Rosa Lease.

- TVF, at its own cost and expense, shall obtain all licenses and permits necessary for the use of the Santa Rosa Facility as a grain storage facility under the laws of the State of Texas, and TVF shall comply with all governmental laws, ordinances, and regulations applicable to the use of the property.

- TVF will timely deliver to Vantage Bank Texas ("Vantage") the sum of $25,000.00 as a security deposit to be held by Vantage and applied by Vantage at the earlier of the Santa Rosa Lease Expiration Date (as defined in the Santa Rosa Lease) or date the Santa Rosa Lease terminates to unpaid rent or other unpaid TVF obligations under the Santa Rosa Lease as set forth in paragraph 3 of the Santa Rosa Lease. Rent for the term of the Santa Rosa Lease shall be calculated at the rate of $7.70 for each metric ton of grain stored in the grain silos and paid to Vantage on a bi-weekly basis based upon the Daily Position Reports prepared and maintained by the TVF as more fully set forth in paragraph 3 of the Santa Rosa Lease.

- TVF shall not transfer or assign the lease to an unrelated third party without written permission of the Debtor and Vantage as to the Santa Rosa Facility.

- As set forth in paragraph 3 of the Santa Rosa Lease, all payments of rent on the Santa Rosa Facility shall be paid directly to Vantage and shall be applied first to defray the expense associated with the payment of the insurance premiums necessary to purchase the insurance by Vantage on the Santa Rosa Facility, and then to the principal balance owing on the Debtor's indebtedness to Vantage. These payments shall serve as a portion of the adequate protection for the Santa Rosa Facility during the pendency of the bankruptcy.

14. The salient portions of the Lease Agreement between Elkins and Debtor covering the Progreso Facility shall mirror the lease terms attached hereto as Exhibit "A" but will be modified to provide the following terms between the Debtor and Elkins:

- Elkins will lease the silo storage in the Progreso Facility along with the flat storage. This amounts to total operating capacity of 7,000 metric tons immediately and within approximately 10 days of repairs another 8,000 metric tons of capacity. In addition, Elkins will be able to undertake transloading operations of an estimated 15,000 to 20,000 metric tons.

- It is anticipated under the terms of the lease Falcon will keep the building or buildings and improvements on the Leased Premises insured by "force-placing" a comprehensive commercial general liability insurance policy that insures against loss by fire with extended windstorm, hail and flood coverage for not less than the amount in place at the time of the commencement of the Bankruptcy Case, and will keep all such insurance in full force and affect during the entire terms of these leases.

- Elkins shall be responsible for all insurance relating to the grain stocks to be stored in the grain silos located on both facilities as well as all machinery and equipment it may locate or use in connection with the Lease. Elkins shall maintain comprehensive commercial general liability insurance coverage, through companies acceptable to the Debtor, insuring against the risks of bodily injury, death, and property damage in the minimum amount of $2,000,000 per occurrence for personal injuries or deaths of persons occurring in or about the grain facilities.

- Elkins shall acknowledge that it has had free access and a full and complete opportunity to inspect the property and has negotiated with the Debtor any aspects related to the physical condition of the Premises, and save and except expanding the capacity of the operable silos at Progreso to 15,000 metric tons within 10 days of the execution of the lease agreements, agrees to lease the property "AS IS" any and all faults and deficiencies already having been taken into account during the negotiations pertaining to the execution of the Lease Agreement.

- Elkins shall be responsible for the payment of all utilities on the Leased Premises during the Term of this Agreement.

- Elkins, at its own cost and expense, shall obtain all licenses and permits necessary for the use of the Progreso Facility as a grain storage facility under the laws of the State of Texas, and Elkins shall comply with all governmental laws, ordinances, and regulations applicable to the use of the property.

- Elkins will timely pay to Debtor the sum of $25,000 as an advance payment to act as a security deposit for the rental consideration to be paid that shall be calculated by the formula based on the amount of grain stored in the silos during the term. Such initial $25,000 payment shall serve as a credit against the final payment of rent. Thereafter, rent for the term shall be calculated at the rate of $7.70 for each metric ton of grain stored in the grain silos and paid on a bi-weekly basis based upon the Daily Position Reports prepared and maintained by the Elkins.

- Elkins shall not transfer or assign the leases to an unrelated third party without written permission of the Debtor.

- All payments of rent on the Progreso Facility shall be paid directly to Vantage and applied to defray the costs of insurance and property taxes and then to the principal balance owing

on its indebtedness as adequate protection payments during the pendency of the bankruptcy.

## III.
## REQUEST FOR EMERGENCY CONSIDERATION

14.  The Debtor avers that there is an immediate need for the revenue which will be produced from the Lease Agreements, and that it is essential that the Debtor obtain insurance coverage for its assets. Failure to obtain the insurance coverage risks immediate and irreparable harm to the assets of the Debtor and could result in severe damage and diminution to the value of its assets. For these reasons, the Debtor requests an emergency hearing on shortened notice of one (1) day.

15.  Debtor's counsel certifies that the averments related to the emergency nature of the requested relief are true and correct to the best of his knowledge and belief after due inquiry.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Debtor prays that the Court set an emergency hearing on shortened notice for Friday, June 9, 2023, at 9:00 a.m. and that the hearing be conducted electronically before the U.S. Bankruptcy Court, Southern District of Texas, McAllen Division (Central Standard Time), and determine that such notice and opportunity for hearing is reasonable under the circumstances, and upon hearing of the Emergency Motion, enter an Order granting the Debtor authority to enter into the Lease Agreements more fully described above, and that the Court grant such other and further relief as the Court may deem necessary and proper.

Respectfully Submitted,

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
Email: drl@mhba.com

  /s/ David R. Langston
David R. Langston, SBN: 11923800
Southern District Bar No. 9489
***Attorneys for the Debtor, Garcia Grain Trading Corp.***

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Emergency Motion was served on the following parties in interest, via ECF, on this 7th day of June, 2023:

1. Garcia Grain Trading Corp.
   Attn: Octavio Garcia
   101 N. Val Verde Rd.
   Donna, TX 78537
   ***Debtor***

2. Andrew Jimenez
   U.S. Trustee's Office
   606 N. Carancahua, Suite 1107
   Corpus Christi, Texas 78476

3. All parties receiving notice via ECF in this case.

/s/ David R. Langston
David R. Langston