**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| GARCIA GRAIN TRADING CORP., | § | Case No. 23-70028-EVR-11 |
| | § | |
| | § | |
| Debtor. | § | |

**UNSECURED CREDITORS COMMITTEE LIMITED OBJECTION AND RESPONSE TO BRIEFS IN SUPPORT OF INTERESTS IN GRAIN ASSERTED BY VANTAGE BANK [Dkt #277], STONEX COMMODITY SOLUTIONS, LLC [Dkt #278] PURSUANT TO 11 U.S.C. § 557
[Dkt #'s 277, 278]**

TO THE HONORABLE EDUARDO V. RODRIGUEZ, U.S. BANKRUPTCY JUDGE:

NOW COMES the UNSECURED CREDITORS COMMITTEE ("UCC") of Garcia Grain Trading Corp., the Debtor in the above-captioned case (the "Debtor"), and files this its LIMITED Objection and Response (the "Objection and Response") to the 557 Claims and accompanying Briefs in Support of Interests in Grain Asserted by Vantage Bank Texas [Dkt #277] ("Vantage") and StoneX Commodity Solutions, LLC [Dkt #278] ("StoneX") and in support of the Objections Filed by the Debtors, and as the UCC's Response would respectfully show the Court as follows:

**I.
PRELIMINARY STATEMENT OF LIMITD OBJECTION
AND RESERVATION OF RIGHTS**

1. The UCC generally agrees with and adopts the Debtor's Objections to the 557 Claims of Vantage Bank and StoneX and does not disagree with the remaining objections set out in the Debtors' Objection to the various other claims.

2. The UCC believes that one has or both have of Vantage Bank and StoneX have a valid claim to commodities now in the possession of the Debtor and comprising property of the

estate of the Debtor. Accordingly, the UCC believes that a determination of the 557 Claims as secured claims will reduce the secured claims of this estate and potentially increase the potential equity available to the unsecured creditors from the remaining property of the estate.

3. The UCC expressly reserves all of its rights with respect to any further claims of any 557 Claims Claimant regarding any other assertion of a claim or priority to funds or property of the estate not expressly granted by this 557 Claims procedure. For example, a lender that advances funds the enables a debtor to continue a ponzi scheme has liability.

4. The UCC expressly reserves all of its rights to determine the dollar amount of any claim of any 557 Claims Claimant regarding any other assertion of a claim or priority to funds or property of the estate not expressly granted by this 557 Claims procedure.

5. Finally, the UCC expressly reserves its right to contest (i) the application of any funds found to be due and received under any 557 Claim or (ii) the remaining balance or deficiency claim resulting.

## II.
## DEBTOR'S CHAPTER 11 CASE

6. **The Chapter 11 Case**: On February 17, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code, initiating the above-captioned bankruptcy case.

7. **Pre-petition operations of the Elevators**: Prior to the Petition Date Garcia Grain Trading Corp. (the "Debtor" or "Garcia Grain") operated public Grain storage facilities located in

 Progreso, Texas ("Progreso Facility"),
 Donna, Texas ("Donna Facility"),
 Santa Rosa, Texas ("Santa Rosa Facility") and
 Edcouch, Texas ("Edcouch Facility"),
 Alamo (subject to fraudulent transfer claims)

The Debtor used these Grain elevators in its business of buying feed grains from growers in the United States and selling them to customers in Mexico. These Elevators were licensed by the Texas Department of Agriculture ("TDA") which likewise requires certain surety bonds to protect against losses. Shortly prior to, and thus on the Petition Date, TDA had withdrawn and terminated the Debtor's right to operate as a result of an inventory of the Elevators disclosing that the Debtor could not account for approximately $20,000,000.00 in Grain purportedly stored at the Elevators but missing.

8. **Secured Claims Against the Debtor's Store Grain**: At the time of the filing of the Chapter 11 case the debtor had five primary secured creditors purporting to cover the Grain stored in the Elevators and evidenced by Warehouse Receipts (Electronic ("EWR") or Manual "MWR"). These secured claimants can be divided into two categories:

i. Bank claimants not dealing in the day-to-day purchase and sale of Grain or in the Elevator storage operations: Falcon Bank and Vantage Bank were institutional asset-based lenders having both obtained liens on certain limited portions of the Debtor's Elevator-stored Grain, among other assets of the Debtor and insiders or affiliates of the Debtor.

ii. Non-institutional lenders dealing in the day-to-day purchase and sale of Grain or in the Elevator Storage Operations:

a. StoneX, a lender under a non-traditional system of (i) purchasing of Grain *from the Debtor* and then *re-selling such Grain to the Debtor*, without the Grain leaving the possession of the Debtor, or (ii) purchasing its own Grain for storage in the Elevators held for resale (and evidenced by EWRs); and

      b.      GrainChain, a software company[1] that purported to inventory and account for Grain storage at the Elevators serviced the Debtor's inventory including performing inventories and accounting for Grain transactions; however, for undisclosed reasons in the summer of 2022 began loaning funds to the Debtor in an aggregate of approximately $8 million and received repayments within 150 days of the Debtor's Chapter 11 case of approximately $4 million. GrainChain ultimately perfected a security interest in the Grain inventory approximately one month before the Chapter 11 case. GrainChain filed a § 557 Lien Claim in the estate but has since withdrawn its claim [Dkt #294].

Insofar as claims addressed in this Objection, the UCC does not address, nor is it required to assert claims other than perfection and priority of security interests in the Debtor's Grain, including equitable claims against assets of the Debtor in the possession of insider and affiliates, or acquired by insiders and affiliates with funds or opportunities of the Debtor, or claims arising from the recognized law that "[a] special relationship can arise where, as here, the defendant 'occupies a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" (quoting *E\*Trade Fin. Corp. v. Deutsche Bank AG*, No. 05 Civ.

---

[1]     **GrainChain**, a McAllen, TX-based company blockchain powered agricultural supply chain tracking platform, raised $29m in funding. Backers included Overstock, Pelion Venture Partners, Brigham Young University (via BYU Cougar Capital) and others. The company, which has raised a total of $39.7m, intends to use the funds to accelerate growth in the U.S. and Latin America. Led by CEO and Co-Founder Luis Macias, GrainChain is a technology company that provides a suite of products that helps facilitate transactions and financing to agricultural players by digitizing the supply chain and reducing counterparty risk. Its software ecosystem connects and enhances supply chain visibility for all players, empowering producers and suppliers while reducing risks to lenders and buyers. With agriculture markets facing substantial economic challenges over the last few years, the company has increasingly focused on facilitating access to liquidity for producers to help them run their operations seamlessly.
https://www.finsmes.com/2023/02/grainchain-raises-29m-in-funding.html
GrainChain does not promote itself as a lender or factoring company.

0902 (RWS), 2008 U.S. Dist. LEXIS 46451, 2008 WL 2428225, at *24 (S.D.N.Y. June 13, 2008)). In fact, insofar as these examples of claims, the UCC would first have to obtains standing to assert such claims.[2]

9. **Section 557 of the Bankruptcy Code**: On the petition date the Debtor had in its possession certain inventory of Grain. On April 6, 2023, the Court entered an Order Establishing Procedures for Determination of Rights, Ownership Interests, Liens, Security Interests, and All Other Interests in and to Grain and Proceeds of Grain Pursuant to 11 U.S.C. § 557 [Dkt #126] asking any party claiming an interest in Grain stored with, held by, or recently sold by the Debtor and any accounts receivable generated by sales of the Grain that was in the possession of the Debtor as of the Petition Date to file their 557 Forms and 557 Briefs to assert their claims pursuant to 11 U.S.C. § 557 ("557 Claims").

10. As of June 2, 2023 (the "557 Bar Date"), four 557 Claims and Briefs have been filed. [Dkt #273, #277, #278, #280]. None of the 557 Forms or 557 Briefs asserted any claims for the Accounts Receivable ("A/R") derived from the sale of the Grain that was in the Debtor's possession before the commencement of the Bankruptcy Proceeding ("Pre-Petition A/R").

11. **The UCC Does Not By This Objection Challenge the Asserted PACA Claims Herein**: The UCC adopts and incorporates herein by reference as if fully set out, the Objection to the Asserted PACA Claims filed by the Debtor.

---

[2] Significant here, to promote the orderly resolution of all claims and prevent creditors from racing to the courthouse to achieve preferential recoveries, the bankruptcy trustee "has 'exclusive standing' to assert causes of action belonging to the estate." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423, 430 (Bankr. S.D.N.Y. 2010), *aff'd sub nom. In re Madoff*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81 (2d Cir. 2014) ("*Madoff*"). By contrast, [**24] where the cause of action "belongs solely to the . . . creditors, the trustee has no standing to assert it." *Id.* (quoting *McHale v. Alvarez (In re The 1031 Tax Group, LLC)*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008)). The key distinction, then, is between causes of action that may be brought only by the trustee, and those that may be brought only by creditors. See, e.g., Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp., 121 F. Supp. 3d 321, 333 (S.D.N.Y. 2015)

12. **The UCC Does Not By This Objection Challenge the Reclamation Demand Claims.**  Likewise, the UCC adopts and incorporates herein by reference as if fully set out, the Objection to the Reclamation Demand Claims filed by the Debtor.

### III.
### SUMMARY OF OBJECTIONABLE 557 CLAIMS MADE

13. The Debtor, as debtor-in-possession, under Chapter 11 has all the rights of a hypothetical lien creditor and thus would be able to avoid any unperfected liens. *In re Waters*, 90 B.R. 946, 967 (Bankr. N.D. Iowa 1988).

A. **Vantage Bank (Seeking *pro rata* share in US #2 yellow corn and US #2 sorghum and highest priority in Accounts Receivables)**

14. On May 15, 2023, Vantage Bank filed its Notice of 557 Claim [Dkt #218] asserting its basis of interest as "security interest held in Grain" and "holders of warehouse receipts or other documents of title." On June 2, 2023, Vantage Bank filed its Brief in Support of its 557 Form [Dkt #277]. Other than the objection to any lien claim filed by any 557 Claimant on accounts receivables of the Debtor, the UCC adopts and incorporates herein by reference as if fully set out, the Objection to the 557 Claims of Vantage Bank filed by the Debtor.

B. **StoneX (Seeking priority ownership *as to all corn and sorghum* in Debtor's possession)**

15. On May 15, 2023, StoneX filed its Notice of 557 Claim [Dkt #219] asserting basis of its interest in sorghum and corn as "Grain stored with Debtor," "security interest held in Grain," and "holders of warehouse receipts or other documents of title." Afterwards, on June 2, 2023, StoneX filed its Brief in support of its 557 Form [Dkt #278]. Other than the objection to any lien claim filed by any 557 Claimant on accounts receivables of the Debtor, the UCC adopts and incorporates herein by reference as if fully set out, the Objection to the 557 Claims of StoneX filed

by the Debtor.

  **C.**  **Grainchain, Inc. 557 Claim (Withdrawn on June 11, 2023)**

  16.  On May 15, 2023. GrainChain, Inc. filed its (Amended) Notice of 557 Claim [Dkt #223] asserting the basis of its interest in corn, sorghum, and other collateral stated in its filed Financing Statement (UCC-1) as a security interest it holds by virtue of its agreements and UCC-1; but admitted that it "does not hold the Warehouse Receipts." Grainchain, Inc. did not file a Brief in support of its 557 Form. On June 11, 2023, Grainchain, Inc. withdrew its 557 Claim in its entirety [Dkt #294]. Accordingly, so long as Grainchain is not now asserting a 557 Claim, the UCC has no objection to its withdrawal.[3]

  **D.**  **Priority of Liens Between 577 Claims Claimants**

  17.  The Debtor does not take any sides as between creditors and to who has a superior right to the remaining Pre-petition Grain inventory on hand and stored in the bins by the Debtor on the Petition Date. As noted by the Debtor's Objection, the Debtor likewise does not take a position on the lien priority dispute between the creditors.[4]

**IV.**
**THE STONEX 557 CLAIM OBJECTIONS**

  18.  As pointed out in the Debtor's Objection, StoneX is asserting both an <u>ownership</u> interest and a security interest in the Grain [Dkt #278]. In response, the UCC joins the Debtor's Response that asserts that StoneX is precluded by the Master Sale and Purchase Agreement that it

---

[3] As part of the decision to withdraw the 557 Claim by GrainChain, discussion were commenced between GrainChain and the Debtor to provide for the Debtor, as proponent, and GrainChain as funder, under new operations management (and potentially new Debtor management) in which the UCC has participated. Those discussions, negotiations and proposals are not yet concluded but it is the believe of the Committee that those negotiations should result in a proposed Plan supported by the UCC.

[4] The Debtor does argue that since all the Grain was sold out of the Progreso Facility, Vantage Bank does not have any interest in the Grain because its lien only covered the Santa Rosa and Donna Facilities, and therefore Vantage Bank's Claim regarding <u>Post-Petition</u> Grain should be denied.

signed with the Debtor on January 2, 2018 from asserting both types of interests at the same time and, therefore, the UCC respectfully requests the Court to clarify that StoneX only has an <u>ownership</u> interest under the terms of its contract with the Debtor, and that ownership interest does not extend to the proceeds from the Grain sold to customers.

19. StoneX asserts an <u>ownership</u> claim to 1,491,771 bushels of corn and 680,000 bushels of sorghum in the Debtor's possession as of the Petition Date. [Dkt #278]. However, the Debtor only had 677,528 bushels of corn and 94,185 bushels of milo (sorghum) as of the Petition Date. [Dkt #50, p. 5, para. 22]. StoneX asserts that due to this shortage, StoneX is the "sole owner of all corn and sorghum in the Progreso Warehouse." [Dkt #278, p. 2]. The UCC does not object to StoneX's ownership interest in the Grain in the bin.

20. However, StoneX, does not have a valid lien in the <u>Pre-Petition</u> A/R. [See, infra ¶ V.] Per the Master Purchase and Sale Agreement, StoneX only has an <u>ownership</u> interest, but not a security interest in the Grain. Based on the terms of the Agreement, StoneX also would not have a valid claim for the <u>Pre-Petition</u> A/R and it has not asserted any claim to it. However, the UCC objects to any part of StoneX's 557 Brief that might be interpreted as suggesting any interest in the <u>Pre-Petition</u> A/R or any other security interest because this interpretation is against the explicit terms of the Master Purchase and Sale Agreement between the Parties.

21. StoneX (and Vantage Bank) rely on the same Arkansas case, i.e., *In re Bearhouse, Inc.*, 84 B.R. 552 (W.D. Ark. 1988), in support of their conflicting positions; however, as explained below, the facts of that case do not support either party's position contrary to what they allege in their respective 557 Briefs. Moreover, the outcomes of the *In re Bearhouse* case are specific to the factual circumstances of that case, not universal principles applicable to all Grain disputes regardless of times and circumstances; not the least because the Uniform Commercial Code, as

codified into Arkansas law in 1988 is different from the Uniform Commercial Code presently codified into Texas law.

## V.
## THE VANTAGE BANK 557 CLAIM OBJECTION

22. Vantage Bank's security agreement attached to its 557 Claim only covers Santa Rosa and Donna Facilities, not the Progreso Facility where all the Grain was located; therefore, Vantage Bank does not have a lien in the Grain nor in the *Pre-Petition* A/R collected Post-Petition, if any, based on that Grain or Vantage Bank's lien perfection on accounts receivables.

## VI.
## THERE ARE NO PERFECTED LIENS ON THE DEBTOR'S PRE-PETITION GRAIN SALES ACCOUNTS RECEIVABLES

23. Although certain filings and certain lien-documents language discuss Pre-Petition accounts receivables ("A/R) that issue has not been raised by the 557 Claimants. The question of who owns the Pre-Petition ("A/R") derived from the Pre-Petition Grain sold to customers involves both the named seller and the liens perfected in third-party seller transactions on credit. The Debtor asserts that all Pre-Petition A/R are unencumbered and belongs to the Debtor.

24. First, all of the Pre-Petition sales came out of the Progreso Facility and thus, all Pre-Petition A/R is tied to the Progreso Facility. Since A/R is site-specific, creditors had to have security agreements that covered the Pre-Petition A/R associated with Progreso Facility, but that is not the case here. For example, Vantage Bank's security agreement attached to its 557 Claim only covers Santa Rosa and Donna Facilities. Likewise, StoneX, (as well as other claimants) do not have a valid lien in the Pre-Petition A/R. The UCC agrees that all Pre-Petition A/R should be declared unencumbered property of the estate.

25. As to the A/R from Grain sales of the Debtor's inventory on the Petition Date, a buyer of farm products may take free of a security interest under Section 1324 of the Food Security

Act of 1985, 7 U.S.C. § 1631. Congress's purpose in enacting 7 U.S.C. § 1631 was to shift the potential burden of the loss to lenders. After 1986, buyers had no responsibility to search the records to determine whether the farm products they were buying were subject to a perfected security interest. In this case Rio Bravo received the Grain and arranged or consummated the sales to third parties in Mexico. All lenders in this case had constructive notice of both the sale by a third-party and in Mexico.

26. The secured creditors had the burden to provide notice of the security interest to a potential buyer. Under 7 U.S.C. § 1631(d), the general rule is that the buyer in the ordinary course[5] takes free of a perfected security interest created by his seller in farm products even though the buyer knows of its existence, and state law provides otherwise unless it has received appropriate notice under subsection (e). 7 U.S.C. § 1631(d). The same basic rule applies to commission merchants or selling agents is that is the determined status of Rio Bravo. Rio Bravo will not be subject to a perfected security interest even if they know of its existence if they sell in the ordinary course of business a farm product subject to a perfected security interest and have not received an appropriate notice. 7 U.S.C. § 1631(g). And 7 U.S.C. § 1631 preempts the states from legislating in this area. 7 U.S.C. § 1631(d) (2006). States cannot attempt to further protect buyers or lenders. Under the statute, states have the power to choose only: (1) what constitutes receipt; [§ 1631(f), (g)(3).] and (2) one of two notice alternatives developed in detail by Congress. § 1631(g)(2)(C)–(D).

27. No "lender" perfected its claim to a security interest by giving notice to third-party purchasers. Likewise, no lender perfected its claims, to sale of the Grain in Mexico. The A/Rs

---

[5] The term "buyer in the ordinary course" is the same term used in the UCC. U.C.C. § 1-201(a)(9). When one compares the definitions, unlike the UCC definition, buyer's knowledge of a perfected security interest and good faith of the buyer are irrelevant under § 1631. 7 U.S.C. § 1631(c)(1).

generated from these transactions belong to the Post-petition Debtor

## VII.
## ARGUMENT IN OPPOSITION

A.     **StoneX Commodity Solutions, LLCs 557 Claim Must Be Denied in Part**

28.     StoneX asserts an <u>ownership</u> claim to 1,491,771 bushels of corn and 680,000 bushels of sorghum in the Debtor's possession as of the Petition Date. [Dkt #278]. However, the Debtor only had 677,528 bushels of corn and 94,185 bushels of milo (sorghum) as of the Petition Date. [Dkt #50, p. 5, para. 22]. StoneX asserts that due to this shortage, StoneX is the "sole owner of all corn and sorghum in the Progreso Warehouse." [Dkt #278, p. 2]. The Debtor does not object to StoneX's ownership interest in the Grain in the bin. However, *StoneX cannot have both an ownership interest and a security interest in the Grain*

29.     However, StoneX goes further to assert that it is also entitled to a <u>security interest</u> based on the same facts, and not only that, but also that this alleged security interest has <u>priority</u> over Vantage Bank's or any other party's security interest. The UCC objects to this argument and asserts that under the present facts and the agreements in place, StoneX cannot have both an ownership and a security interest in the Grain.

30.     Per the Master Purchase and Sale Agreement between StoneX and Garcia Grain dated January 2, 2018, the <u>ownership</u> of the Grain belongs to Garcia Grain, as stated in Article 2, Section 2.1 of the Agreement: "(a) On the Trade Date specific in a Confirmation, the Parties shall agree that Customer [Garcia Grain] shall <u>sell and deliver to FCStone</u> and FCStone shall purchase and receive from Customer, the quantity of Warehoused Commodity. . ." (Master Purchase and Sale Agreement, Article 2, Section 2.1, p. 16, emphasis added). For Garcia Grain to sell the Grain back to StoneX, the Master Purchase and Sale Agreement provides that Garcia Grain first obtains the <u>ownership</u> of the Grain and retains it until it sells it back to StoneX. There is nothing in the

Agreement that confers a security interest to StoneX in the same or future Grain at this stage. The Agreement contemplates a security interest only in the alternative, as a contingency, in the event the Master Purchase and Sale Agreement were to be treated as a financing arrangement.

31. Therefore, the Debtor asks the Court to deny StoneX's 557 Claim in part where it pertains to both its alleged <u>security interest</u> in the Grain—because, as stated clearly in the Master Purchase and Sale Agreement between the Parties, StoneX does not have any security interest in it—and any alleged interest in <u>Pre-Petition</u> A/R, whether stated explicitly in its 557 Claim or not, because the Grain forming the basis of that particular A/R does not belong to StoneX per the Master Purchase and Sale Agreement.

32. **StoneX is not entitled to the Pre-Petition Accounts Receivable:  Article 4, Section 4.1** of the Master Sale and Purchase Agreement provides that the transactions contemplated in the **Section 2.1 and 2.2** "constitute a <u>true sale</u>" of the commodity in question, and the sale "is absolute and <u>not in the nature of a secured transaction</u>" (Master Purchase and Sale Agreement, Article 4, Section 4.1, p. 21, emphasis added). Therefore, StoneX cannot characterize its interest arising from the same transaction for which it is claiming an ownership interest also as a security interest at the same time. As it stands, StoneX might at most have a breach of contract claim against Garcia Grain based on the shortage of Grain in possession of the Debtor on the Petition Date, but does not have a security interest in the missing Grain or in any <u>Pre-Petition</u> A/R based on that Grain, because the <u>ownership</u> of that Grain belonged to the Debtor at the time of its sale to the customers under the terms of the Master Sale and Purchase Agreement.

33. Per **Article 2, Section 2.3** of the Master Sale and Purchase agreement, StoneX and the Debtor agreed to enter into "a simultaneous Transaction pursuant to which [StoneX] under the corresponding Purchase Transaction <u>shall sell for forward delivery</u>, and [the Debtor] shall purchase

and receive, AS IS and WHERE IS, irrespective of loss. . . and irrespective of quality thereof . . . all of the Subject Commodity (. . .)"(Master Purchase and Sale Agreement, Article 2, Section Article 2.3, p, 18-19, emphasis added). StoneX can at most have a breach of contract claim for any alleged non-compliance of the terms of the Master Purchase and Sale Agreement by the Debtor, but StoneX is not automatically entitled to the proceeds from the sale of that Grain to third parties by virtue of any alleged breach by the Debtor. Therefore, under the Parties' explicit Agreement, since the Grain forming the basis of the Pre-Petition A/R was owned by Garcia Grain, not StoneX; the A/R associated with the sale of that Pre-Petition Grain is unencumbered.

34. Therefore, the Debtor asks the Court to deny StoneX's 557 Claim in part where it might be interpreted as suggesting any interest in the Pre-Petition A/R or any other security interest because this interpretation is against the explicit terms of the Master Purchase and Sale Agreement between the Parties.

35. **The warehouse transactions between StoneX and Garcia Grain were "true sales" not a "bailment relationship"**: The Master Purchase and Sale Agreement between StoneX and the Debtor define the nature of the purchase and sale relationship between StoneX and the Debtor as a "true sale" whereby the ownership of the Grain passed to the Debtor when the Debtor purchased the Grain from StoneX, and then the Debtor sold the Grain to a third party and between

## VIII.
## VANTAGE BANK'S 557 CLAIM MUST BE DENIED IN PART.

36. Vantage Bank seeks to recover a pro rata share of U.S. #2 yellow corn and U.S. #2 sorghum that it calls the "commingled Grain" covered by its Warehouse Receipts. Vantage Bank also seeks to recover A/R from selling that Grain.

37. The Debtor objects to Vantage Bank's 557 Brief [Dkt #277] and Vantage's 557 Claim [Dkt #218] because Vantage Bank does not have a valid lien covering the Grain in the

Progreso Facility. If at all, its lien only covered the Grain in Santa Rosa and Donna Facilities. As it stands, Vantage Bank does not have a secured claim in the Grain in Progreso Facility. The UCC objects also because Vantage Bank does not have any interest in the <u>Pre-Petition</u> A/R because Vantage does not have a security interest covering the Grain in Progreso Facility and also because the Grain that forms the basis of that A/R belongs to Garcia Grain under the Master Purchase and Sale Agreement with StoneX.

38. Vantage's Brief incorrectly characterized Garcia Grain's sale of the Grain in its facilities as "unauthorized transportation of the Grain" [Dkt #277, p. 7] suggesting that the Debtor needed authority from Vantage Bank before selling the Grain in its possession and went so far as to allege that Garcia Grain was "barred" from commingling the Grain. *Id*. The Debtor objects to this characterization of the Parties' agreement because, due to the fungible and perishable nature of the commodity, it could not have been required of Garcia Grain to refrain from commingling the Grain or to seek prior authorization from Vantage Bank before each and every sale and transportation arrangement. The Debtor rejects the label "unauthorized" with regard to its commingling or transportation of the Grain.

39. Vantage also incorrectly relies on an Arkansas case, *In re Bearhouse, Inc.*, 84 B.R. 552 (W.D. Ark. 1988), for the proposition that "Similar to *Bearhouse*, the Court should rule that Garcia Grain did not extinguish Vantage Bank's title to the fungible Grain merely by moving it to another warehouse." [Dkt #277, p. 12]. However, the cited portions of the case involve the analysis of the claim of Commodity Credit Corporation (CCC), which, unlike the claim of another creditor in the case which owned rice represented by negotiable warehouse receipts for purposes of security, was "the outright owner of the rice." *In re Bearhouse*, 84 B.R. at 562. In other words, in *In re Bearhouse*, CCC retained its interest not by virtue of being a security interest holder, as

Vantage Bank represents to the Court, but by virtue of being an outright owner of the rice, among other reasons. In the present case, Vantage Bank does not have a "title" to the Grain in the Progreso Facility that is "locked up in the Receipts" as Vantage Bank wants to have the Court believe. [Dkt #277, p. 12[. On the contrary, Vantage Bank does not even have a security interest that covers any Grain in the Progreso Facility.

40. In sum, since Vantage Bank does not have a valid lien in the Grain in the Progreso Facility and it does not have any interest in the Pre-Petition A/R, the parts of its 557 Claim covering those interests should be denied.

WHEREFORE, the UNSECURED CREDITORS COMMITTEE seeks the relief above requested and for such other and further relief to which the UNSECURED CREDITORS COMMITTEE may be justly entitled, both at law and in equity.

Dated June 16, 2023

Respectfully submitted,

*/s/ Shelby A. Jordan*
Shelby A. Jordan
St. Bar No. 11016700; S.D. No. 2195
Antonio Ortiz
St. Bar No.  24074839;  SD. No. 1127322
***JORDAN & ORTIZ, P.C.***
500 North Shoreline Drive, Suite 900
Corpus Christi, TX 78401
Telephone:  361.884.5678
Facsimile:   361.888.5555
Email:       sjordan@jhwclaw.com
             aortiz@jhwclaw.com
Copy to:     cmadden@jhwclaw.com
**ATTORNEY FOR THE UNSECURED CREDITORS' COMMITTEE**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Reply was served on the following parties in interest via ECF and/or regular U.S. Mail on this 16th day of June, 2023:

David R. Langston
Özen E. Zimmerman,
MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585

***Attorneys for the Debtor, Garcia Grain Trading Corp. Debtor***

Andrew Jimenez
U.S. Trustee's Office
606 N. Carancahua, Suite 1107
Corpus Christi, Texas 78476

All parties receiving notice via ECF in this case

                                        */s/ Shelby A. Jordan*
                                          Shelby A. Jordan