## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **GARCIA GRAIN TRADING** | § | **Case No. 23-70028-EVR-11** |
| **CORP.,** | § | |
| | § | |
| Debtor. | § | |

### DEBTOR'S EMERGENCY MOTION TO EMPLOY RICHARD S. SCHMIDT, RETIRED U.S. BANKRUPTCY JUDGE AS ITS CHIEF RESTRUCTURING OFFICER

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and ay decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 14 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**(Emergency Relief Needed by August 4, 2023, at 1:30 P.M.)**

TO THE HONORABLE EDUARDO V. RODRIGUEZ, U.S. Bankruptcy Judge:

NOW COMES, GARCIA GRAIN TRADING CORP., the Debtor in the above-captioned case (the "Debtor"), and files this its Emergency Motion to Employ Richard S. Schmidt, Retired U.S. Bankruptcy Judge ("Schmidt"), as Chief Restructuring Officer (the "Motion") as set out below. In support of this Motion, the Debtor respectfully states as follows:

## I.
## Jurisdiction and Venue

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 105, 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## Factual Background

2.     On February 17, 2023 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.     An Official Committee of Unsecured Creditors has been appointed in this case and has employed professionals on its behalf.

## III
## Relief Requested

5.     On July 15 and 16, 2023, counsel for the Debtor and the major secured creditors, StoneX Commodity Solutions LLC f/k/a FCStone Merchant Services, LLC ("StoneX"), Vantage Bank Texas ("Vantage"), Falcon Bank ("Falcon"), and GrainChain, Inc. ("GrainChain"), along with the Official Unsecured Creditors Committee ("UCC") and certain other major unsecured creditors (collectively known as the 'Parties') participated in a mediation/settlement conference conducted by the Honorable Richard S. Schmidt, retired U.S. Bankruptcy Judge ("Schmidt").

6.     Over the course of intensive negotiations and deliberations directed by Schmidt considerable progress was made toward resolving many of the outstanding issues related to the Debtor's operations, management, and accounting, as well as to attempt to put together an outline of a plan of reorganization in this Chapter 11 case.  However, an issue permeating the mediation

and settlement conference dealt with the Parties lack of confidence and trust in the current management as fiduciaries of the Debtor and the options that are available to address those concerns under the circumstances involved in this case. The Parties reached a consensus to seek authority to employ a Chief Reorganization Officer to direct the continued operations of the Debtor and to investigate its financial affairs. Following the conclusion of the mediation session held in Austin, Texas, Debtor's counsel along with the counsel for the UCC interviewed several potential candidates for the position but the lack of directors and officers liability insurance, its prohibitive cost under the circumstances of this case and the potential for liability being incurred by any person or firm engaged in such capacity severely limited and in some cases prohibited desired candidates from considering and consenting to their employment in such capacity. In fact, the Parties agreed upon the selection of one firm as the CRO with a particular partner engaged as the person in charge. However, after consenting to undertake the engagement and reaching terms for compensation, the firm's management and general counsel insisted upon declining the engagement due to lack of insurance coverage and concerns over potential liability as a result of the engagement.

7.     Due to such efforts, and after considering and investigating the possibility of engaging other candidates, it was the consensus among the Parties that the Debtor should seek to employ Schmidt as its Chief Restructuring Officer ("CRO"). Schmidt, who as a former bankruptcy judge has extensive experience in dealing with companies in financial distress and has the accompanying financial, accounting, and legal skills and experience to deal with the unique and complicated issues involved in this reorganization.  Schmidt also was extremely effective in bringing all the Parties together at the mediation and reaching tentative agreements on the treatment their respective claims could potentially be afforded in a plan of reorganization. Further, over the course of the mediation he gained extensive knowledge about the Debtor's assets and

liabilities and the way they can be administered in this case to the advantage of all creditors and parties in interest. This knowledge will give him a "head-start" as the Debtor's CRO because it will not be necessary for him to spend time getting oriented about the various issues and complexities involved in this proceeding. There is an immediate need for the appointment of a qualified CRO, and considering the urgency Schmidt has agreed to accept the engagement conditioned on the Debtor and Parties waiving the mediator privilege.

8.      The Debtor and Parties understand that it is necessary for the interests of the Debtor's customers, creditors, and the integrity of the chapter 11 reorganization process that an independent, Court approved, presence be brought in by the Debtor to perform the services generally described herein.

9.      Specifically, the Debtor and Parties understand and embrace the prospect of Schmidt conducting as part of his duties an inquiry into the extent to which there has been financial wrongdoing on the part of the Debtor and any other persons within the Debtor's organization in the name of transparency and as necessary to make certain the Debtor's fulfill their obligations within the chapter 11 process.

10.     Additionally, it is of utmost importance that the Debtor's ongoing financial data be reliable, and that this reliability be effectuated in the most efficient means possible. Schmidt has extensive experience in reviewing and directing the preparation of reliable financial and other data and has the capability to ensure that these tasks will be accomplished in a reasonably efficient and effective manner.

11.     The need for retention of Schmidt is evident, and both the Debtor and Parties seek approval of the appointment of a CRO and the selection of Schmidt to serve in that capacity so that the necessary work can begin.

12.     The Debtor files this Motion seeking authority from the Court to hire Schmidt as CRO with the ability to employ and engage other professionals in this case with Court approval as in his judgment may be necessary for the proper and efficient administration of the case.

13.     The experience and qualifications of Schmidt are outlined in the resume attached hereto as Exhibit "A."

14.     By this Motion, the Debtor seeks to retain and employ Schmidt as Chief Restructuring Officer for Debtor, with the responsibilities and authority described herein, and to oversee Debtor's operations and reorganization efforts.   In support of this Motion, Debtor submits the Declaration of Richard S. Schmidt attached hereto as Exhibit "B".

## IV
## Basis for Relief

15.     Section 327(a) of the Bankruptcy Code provides that the Debtor is permitted to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons."  11 U.S.C. § 327(a).

16.     Bankruptcy Rules 2014 provides that a Motion for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the names of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, and any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

FED. R. BANKR. P. 2014.

17.     Further, this Court may approve retention and payment of a chief restructuring officer under § 363. *See, e.g.*, *In re Colad Group, Inc.*, 324 B.R. 208, 215 (Bankr. W.D.N.Y. 2005); *In re 1031 Tax Group, LLC*, 2007 WL 2085384, at *5 (Bankr. S.D.N.Y 2007). The retention of

interim corporate officers such as a CRO and other temporary employees is proper under section 363 of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(l). In approving retention under § 363, courts look to whether the debtor has "a good business reason" in seeking approval of the Motion. *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re 1031 Tax Group, LLC*, 2007 WL 2085384, at \*5.

18.     The debtor's business judgment is given significant weight. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm of Equity Sec Holders v. Lionel Corp. (In re Lionel Corp.)* 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware &Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (courts have applied a "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp)*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct"). The business judgment rule is respected within the context of a chapter 11 case and shields a debtor's management from judicial second-guessing.

19.     Bankruptcy courts have considered the propriety of a debtor in possession's employment of a corporate officer under Bankruptcy Code Section 363 on numerous occasions and regularly concluded that it is an appropriate exercise of the debtor's business judgment to employ a corporate officer in such manner. *See, e.g. In re Seahawk Drilling, Inc.*, Case No. 11-

20089 (Bankr. S.D. Tex. Feb. 14, 2011); *In re Gulf Coast Oil Corp.*, Case No. 08-50213 (Bankr. S.D. Tex. Sept. 29, 2008).

20.    The Debtor has determined in its business judgment that the retention of Schmidt as the CRO for the company will provide the Debtor with stability, oversight, and operational assistance to determine and resolve the disputes between the Parties and the Debtor, as well as providing the other Parties greater confidence in the Debtor's operations.  Such retention will resolve pending motions to convert the case to Chapter 7 or appoint a Chapter 11 Trustee and will otherwise significantly reduce the adversarial nature of this case.  Likewise, the appointment will permit the Debtor a reasonable period to explore its Plan options regarding a possible sale of assets or other form of asset disposition or reorganization, overseen by an independent person, as the CRO determines may determine as being in the best interest of the Debtor and its creditors. In addition to improving the working relationship with the Parties, the Debtor believes that the employment of Schmidt will enhance its ability to analyze from an independent perspective potential purchasers of the Debtor's assets, investigate the possibility of a viable plan of reorganization and continue to explore financing options and operating agreements for its grain facilities that are now pending before the Court. The expertise of Schmidt will also allow the Debtor to improve operations, controls, and capital and analyze avoidance actions and other potential litigation. Debtor has thus determined in its business judgment that retaining Schmidt will benefit the Debtor and its estate while at the same time fulfilling the policy of chapter 11 of the Bankruptcy Code to allow the Debtor the opportunity as debtor-in-possession to control its own reorganization process. *See In re Blue Stone Real Estate, Construction & Dev. Corp.*, 392 B.R. 897, 905 (Bankr. M.D. Fla. 2008).

## VI
## Services To Be Provided

21.     As the Debtor's CRO Schmidt will undertake the engagement with such responsibilities and authority as is commensurate with said position, including the ultimate decision making authority with respect to the operation of the Debtor. The management authority remains with the board of directors. The CRO may be supported by the current counsel engaged to represent Garcia and the Committee as well as other financial advisors and accountants retained by the Debtor, and have management control and authority over Debtor's personnel, so that he may perform the following services for the bankruptcy estate:

> a.      As a fiduciary acting on behalf of the Debtor he will direct the operations of the Debtor, including without limitation, being designated as an authorized signatory for the Debtor on all depository accounts, and to enable him to execute all documents, agreements, and reports on behalf of the Debtor;

> b.      Manage the Chapter 11 process, providing reports and other information as may be appropriate to the board of directors and including working with the Debtor's employees, professionals, secured creditors, landlords, any Committee, or other stakeholders, including the Debtor's officers and directors to insure the Debtor is properly operated and administered and the reorganization is a success;

> c.      Retaining or terminating employees, contractors and non-legal professionals employed by the Debtor;

> d.      Have decision-making authority with respect to the Debtor's exercising its business judgment as necessary in connection with the ongoing operations of the Debtor;

> e.      Assist Debtor's counsel, and provide testimony on behalf of the estate as needed in the administration of the Chapter 11 proceeding;

> f.      Establish, as may be necessary and appropriate, communication protocols with stakeholders to insure transparency and appropriate disclosures to all creditors and parties in interest;

> g.      Direct the preparation of financial projections and cash flow budgets, including implementing cash conservation strategies, tactics and processes where appropriate and feasible;

h.      Direct management in the sale process of assets of the Company and the closing of such sale of assets;

i.      Identify liquidity needs and implement a cash management program with the management team and approve all material disbursements;

j.      To the extent needed, engage other advisors, consultants, and industry experts, with Bankruptcy Court approval, to assist with the restructuring efforts and completion of bankruptcy related reporting requirements;

k.      Assist in the preparation and review of reports or filings as required by the Court or the Office of the United States Trustee, including, without limitation, any needed amendments to schedules of assets and liabilities, statements of financial affairs and monthly operating reports;

l.      Assist current Debtor's counsel in the negotiation, preparation, and confirmation of a plan of reorganization and related documents;

m.      Assist with evaluating executory contracts and unexpired leases as necessary;

n.      Assist the Debtor and its current counsel with preparation for hearings, testimony, creditor meetings, and creation of supporting exhibits and motions;

o.      Assist the Debtor and its current counsel in developing litigation strategy and related analysis; and

p.      Perform such other advisory services and other functions as are customarily provided in connection with the analysis and negotiations of any plan of reorganization.

22.      Based upon the foregoing the Debtor seeks authority to engage Schmidt to be employed as CRO as the fiduciary for the Debtor with all rights and powers of a corporate officer of the Debtor in replacement of the current key officers of the Debtor and, as such, will consult with Debtor's principals and current employees in connection with his duties as may be needed from time to time.

## VII
## Disinterestedness of Schmidt and Eligibility to Serve as CRO

23.     To the best of Debtor's knowledge and based upon the Declaration, Schmidt is a "disinterested person" as that term is defined in § 101(14), as modified by § 1107(b) of the Bankruptcy Code.

24.     To the best of Debtor's knowledge and based upon the Declaration, Schmidt does not hold or represent an interest adverse to Debtor or its estate, in accordance with § 327 of the Bankruptcy Code.

25.     To the best of Debtor's and Schmidt's knowledge, information, and belief, and based upon the Declaration, (a) Schmidt does not have any connection with Debtor, creditors of the Debtor, the United States Trustee's office, any person employed in the office of the United States Trustee's office, or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; except as disclosed in the Declaration; (b) Schmidt is not a creditor, equity security holder, or insider of Debtor; (c) none of Schmidt's partners or associates are, or were, within two years of the Petition Date, a director, officer, or employee of Debtor; and (d) Schmidt neither holds nor represents an interest adverse to Debtor, its estate, or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

26.     In addition, Schmidt represents that he is not a potential direct or indirect purchaser of Debtor's assets. Further, it agrees that in the event potential purchasers or investors become known to it, it will immediately disclose any connections with such potential purchasers or investors.

27.     Although as set forth and disclosed in prior paragraphs Schmidt has served as a mediator in this case, he avers that to the best of his knowledge and belief he did not obtain, nor

has he disclosed any confidential or privileged information from any of the Parties who participated in the mediation proceedings. On the contrary, the Debtor and the Parties believe that his service as mediator over the past several weeks has provided him with a foundation of knowledge about the various interests of the creditor constituencies in this bankruptcy case such that he will be able to commence his duties as CRO immediately upon his appointment without the normal orientation period that other candidates would necessarily have to undertake and since time is of the essence the knowledge he obtained as mediator grants him a considerable advantage over any other party who might be considered for such role. Furthermore, all the Parties have agreed to the employment of Schmidt as the Debtor's CRO and waived any mediation privileges to the extent necessary to allow him to serve in such capacity. Schmidt does not believe his service as a mediator has created any conflict of interest that disqualifies him under the provisions governing the employment of professionals under the Code or that he is otherwise disqualified or ineligible to serve in such a capacity.

27.    Debtor submits that retention of Schmidt is in the best interest of the Debtor, its estate, and the creditors.

## VIII
## Terms of Retention

28.    As more fully set forth in the Engagement Letter attached to this Motion, attached hereto as Exhibit "C", Services under the terms of this engagement will be paid at the flat rate of $20,000 per month, payable on the first business day of each month of the engagement plus reimbursement for reasonable and necessary costs and expenses, including but not limited to mileage per automobile at the current published IRS rate per mile, and standard airline fares if travel by air becomes necessary, as well the actual reasonable and customary expenses incurred for all lodging and meals while engaged in the duties and responsibilities associated with my

service as the CRO. In order to have sufficient funds to pay the fees and expenses associated with the CRO, the Debtor and GrainChain, Inc. have agreed that $250,000 of the profits from the purchase and sale of sunflower seeds during the 2023 season will be set aside for such purpose and that such funds may be reimbursed from the claim owned by the estate for the business interruption claim of the estate connected with the storm damage to the Progreso Facility so long as there are sufficient funds to make the reimbursement after all other administrative expenses other than the CRO have been paid from such recovery. As a professional of the Debtor's bankruptcy estate, all compensation will be paid Schmidt in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any order of this Court dealing with Interim Compensation Procedures. Final approval of his compensation and reimbursement of expenses will be subject to the supervision of the Court after approval of the Court following the filing of a motion with the Court, and reasonable notice and opportunity for hearing.

29.     Notwithstanding the fiduciary nature of the CRO retention, the CRO shall have no liability for any services rendered to or on behalf of the Debtor or any decision or judgment made with respect thereto as a person appointed by the Bankruptcy Court, save and except causes of action for fraud, gross negligence, willful misconduct, breach of fiduciary duty, or self-dealing established by the Bankruptcy Court, which shall have exclusive jurisdiction over any such claims brought against Schmidt or any other party affected by the actions he undertakes or the decisions he makes while serving in such capacity.

30.     Schmidt upon being authorized to serve as the CRO for the Debtor shall only be terminated by order of this Court after reasonable notice and opportunity for hearing has been given to all creditors and parties in interest in the case. Furthermore, should Judge Schmidt believe the management is unduly interfering with his duties and responsibilities in the case at his sole

discretion he may bring the matter to the attention of the creditor body and the Court so appropriate relief may be sought..

## IX
## Request for Emergency Consideration on Shortened Notice

31.     At the hearing held by the Court on July 7, 2023, to consider the Debtor's *Emergency Motion for (I) Interim Authority to Incur Post-Petition Indebtedness with GrainChain, Inc. Pursuant to 11 U.S.C. Â§ 364(c)(1) Together with Final Authority to Grant Priority Pursuant to 11 U.S.C. Â§ 364(c)(1) and (2); (II) Request to Approve Operating Agreement with GrainChain, Inc., and Elkins Grain, LLC; and (III) Request for Preliminary and Final Hearings* [Docket #342], the Court voiced its serious concerns with respect to the inability of the Debtor to have a responsible fiduciary in charge of the case to appropriately exercise the Debtor's business judgment in matters related to borrowing, entering into agreements relating to the use and administration of estate assets, and the Debtor's ability generally to be held accountable with respect to past and future operations. Following the presentation of evidence and argument of counsel at the hearing the Court directed Debtor's counsel to address these concerns by the next hearing date scheduled for August 4, 2023.

32.     In addition, the Debtor is currently faced with the need to respond to a Motion to Convert the Case to Chapter 7 as well as a Motion for the Appointment of a Chapter 11 Trustee filed by StoneX. The Debtor believes along with the UCC and other creditors that conversion to Chapter 7 would not be in the best interests of the Debtor, the creditors, and the public interest in this case. Furthermore, the appointment of a Chapter 11 Trustee would only cause additional delay and likely result in extremely small and inconsequential distributions to unsecured creditors in this proceeding.

33.     In an effort to address the Court's concerns with respect to the designation of a responsible fiduciary in this case to which the Court can look for responsible governance, transparent operations, and general accountability, the Debtor and the Parties have developed a consensus with the respect to the appointment of a CRO. Time is of the essence. The Debtor and the Parties joining in support of the Motion want to avoid the preparations necessary to defend motions for conversion and for the appointment of a trustee. Therefore, the Debtor requests that the Court set an emergency hearing on this Motion on shortened notice so it can address the concerns voiced by the Court about a responsible fiduciary in this case and also resolve pending motions that would convert the case or call for the appointment of a Chapter 11 Trustee.

34.     Therefore, the Debtor requests that this Motion be considered on an emergency basis with shortened notice and that the Court grant relief for authority to hire Judge Schmidt as the CRO in this case.

35.     Counsel for the Debtors hereby certifies that the information contained herein is a complete and accurate account as related to the facts and circumstances pertaining to the emergency relief requested.

## X
## Prayer

WHEREFORE, the Debtor respectfully requests that the Court set a hearing on shortened notice and determine that such notice and opportunity for a hearing is reasonable under the circumstances, and upon hearing of the Motion enter an order authorizing the Debtor to employ Richard S. Schmidt as the Chief Restructuring Officer of the Debtor under the terms and conditions set forth in this Motion.  Further, the Debtor prays for such other and further relief, at law or in equity, to which the Debtor may show itself justly entitled.

Respectfully Submitted,

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
Email: drl@mhba.com

 /s/ David R. Langston
David R. Langston, SBN: 11923800
Southern District Bar No. 9489
**Attorneys for the Debtor, Garcia Grain Trading**
**Corp.**

## CERTIFICATE OF CONFERENCE

I, David R. Langston, counsel for the Debtor hereby certify that I have spoken with counsel for the major secured creditors, StoneX, Vantage, Falcon, and GrainChain along with the UCC and all are in agreement with the filing of this Emergency Motion and the relief requested, and to the extent necessary agree to waive any mediator privilege such that Richard S. Schmidt is eligible to serve as the Chief Operating Officer in this bankruptcy case.

/s/ David R. Langston
David R. Langston

## <u>CERTIFICATE OF SERVICE</u>

       I certify that a true and correct copy of the foregoing Motion was served on the following parties in interest, via  email and/or via ECF on this 2nd day of August, 2023:

1.      Garcia Grain Trading Corp.
           Attn: Octavio Garcia
           101 N. Val Verde Rd.
           Donna, TX 78537
           ***Debtor***

2.      Andrew Jimenez
           U.S. Trustee's Office
           606 N. Carancahua, Suite 1107
           Corpus Christi, Texas 78476

3.      All parties receiving notice via ECF in this case.


                           /s/ David R. Langston_____
                            David R. Langston

# Richard S. Schmidt
### Retired United States Bankruptcy Judge
### Consultant and Expert Witness
### Available for appointments as Fiduciary:
Plan Agent
Trustee
Chapter 11 Bankruptcy Trustee

## Contact Information

615 Leopard, Suite 635
Corpus Christi, TX 78404
(361) 244-9333
rss@judgerss.com



One of the nation's most distinguished Bankruptcy Judges, Judge Schmidt served 28 years on the Southern District of Texas bench. He is best known for his "user friendly" judicial temperament, ability to recognize quickly complex legal issues, legendary mathematical ability, and case management style, which helped navigate some of the largest and most complex bankruptcies in the country.  Following his retirement, he is available for appointments as a fiduciary in Bankruptcy cases including Chapter 11 Trustee, Chapter 11 Plan Trustee, Receiver, Liquidator, Fee Examiner, Future Claims Representative, Independent Director of a Chapter 11 Debtor or Chief Restructuring Officer, as well as other fiduciary positions.

## Education

B.S. in Mathematics, with honors, New Mexico State University
J.D., The University of Texas

## Employment

7/30/15 to Date: Accepted appointments as a Trustee and Chapter 11 Trustee. Serves as Senior Advisor to the Reorganization Section of The Claro Group, a national litigation support organization. Accepts appointments as a mediator, receiver and post-confirmation trustee. Testifies as an expert on reorganization issues, oil and gas and fee disputes. Serves as an Adjunct Professor at Texas A & M University Corpus Christi, teaching graduate level Environmental Law with an Energy emphasis and undergraduate Business Law in the Business College.

7/31/87 to 7/30/15:  United States Bankruptcy Judge, Southern District of Texas, Corpus Christi, Texas. Appointed by the Fifth Circuit Court of Appeals.  Divisions include Corpus Christi, Brownsville and McAllen.  Managed a case load of over 10,000 with annual average filings of 6,000.  Served as Chief Judge and as a member of the Fifth Circuit Judicial Council.  Frequent lecturer and speaker at the American Bar Association, State Bar of Texas, Commercial Law League, National Conference of Bankruptcy Judges, University of Texas School of Law, Louisiana Bar Association and many local bar associations.

**EXHIBIT "A"**

<u>1978 through 7/30/87</u>:  Private practice of law as a partner with Smitherman, Lunn, Chastain & Hill, Shreveport, Louisiana.  Developed a general civil practice with an emphasis on trial work.  Character of practice was wide-spread.  Litigated in the following areas:  oil and gas, bankruptcy, tax, personal injury, corporate law, property law, eminent domain, civil rights, environmental law, family law, contracts, social security, workers' compensation.  Also accepted criminal defense appointments in both state and federal court and defended crimes ranging from driving offenses through second-degree murder.  Maintained an office practice which included formation of corporation, real estate closings, securities, tax advice, domestic relations, venture capital development, wills and successions, and bankruptcy.

<u>1973 through 1978</u>:  United States Air Force. Assistant Staff Judge Advocate, Barksdale Air Force Base, Louisiana.

<u>1970 through 1973</u>:  J.R. Reed Music Company, Austin, Texas.  Asst. Manager, Credit Department.

**Significant Trustee and Post Confirmation Appointments**

**<u>GWG L Bond Management Independent Manager.</u>** Hired as the Independent Manager of approximately $420 million of Bonds in this bankruptcy. Currently working to develop a plan which will maximize recovery for this bondholders.

<u>Black Elk Liquidation Trust</u>. Following the bankruptcy of Black Elk Offshore Energy Corporation, this trust is responsible for decommissioning over 50 platforms in the Gulf of Mexico. Duties include managing the approximate $500,000 in administrative expenses, complying with all of the reporting and noticing requirements of the federal and state government agencies, supervising the payment of $143 million in funds from bonds for the costs of decommissioning, collecting and converting all remaining assets to cash other than the litigation described below and maintaining all health safety and environmental on the platforms until they are decommissioned. Ultimately when all assets have been monetized and lawsuits collected, the trust will pay out all creditors and interest holders in accordance with the waterfall established in the Black Elk Plan of Reorganization. Currently all but three platforms have been successfully decommissioned.

<u>Black Elk Litigation Trust.</u> This Trust is responsible for prosecuting a $200 million fraud lawsuit against a several Investment Funds and former officers and directors. Obtaining judgments and collection has been complicated by some of the Funds being placed in Liquidations in the Cayman Islands and in SEC Receiverships in SDNY. Despite these complications these Trust has been highly successful in obtaining recoveries. It is also pursuing a large number of preference claims under the Bankruptcy Code and filing and prosecuting all claims objections from the Black Elk bankruptcy. It was set up with $350,000 for administrative and legal costs. The Trustee is responsible for retaining and supervising all of the attorneys handling these matters, paying valid expenses of the Trust and, upon collection of all judgements in conjunction with the Black Elk Liquidating Trust, paying all creditors and interest holders in accordance with the waterfall established in the Black Elk Plan of Reorganization.

<u>Laredo Family Trusts</u>. Four Family Trusts set up to pay the medical expenses of a terminally ill adult. The Trusts have approximately $6 million in cash and investments, including oil and gas royalties in thousands of acres of minerals. In addition to managing the investments and paying valid expenses, Judge Schmidt is also responsible for the executive mineral rights of the properties. The beneficiary of the Trust has died and thus the Trusts are awaiting a final accounting and tax return. Judge Schmidt will continue to be responsible for the executive mineral rights.

John Gorman Chapter Eleven Trustee. Appointed by the US Trustee from the DOJ, Judge Schmidt is the Chapter 11 Trustee of this bankruptcy estate. He is in the process of selling a hunting ranch interest in Mexico, a 300-acre ranch outside of Austin, Texas, and a large house in Austin, Texas and pursuing several causes of action on behalf of the estate. Ultimately, the Trustee hopes to propose a Plan of Reorganization.

Sam Kane Beef, Inc. Appointed Receiver by the Federal District Court of the tenth largest slaughterhouse in the United States whose ownership had lost the confidence of its creditors. Under the supervision of the District Court, he managed the slaughterhouse correcting significant waste water, air quality, accounting and management problems, while conducting a bid procedure which lead to a sale of the plant to new owners, saving 750 jobs.

Brooks Brothers Bankruptcy. Appointed by the Delaware Bankruptcy Court to represent several non-union retired employees concerning their retirement plan and life insurance plan. Successfully reach agreement with debtor resulting in treatment confirmed in its Plan of Reorganization.

Exide Bankruptcy. Appointed by the Delaware Bankruptcy Court to mediate with the debtor, 14 States, and creditors treatment of 14 environmental site thought the United States. After several attempts at settlement, he circulated a mediators proposal, which provided a resolution and lead to Confirmation.

**Significant Expert Witness Engagements**

*In re Life Partners Holdings, Inc.* Case No. 15-40289 (N.D. Tex.). An extremely complicated bankruptcy case involving fractional interests in Life insurance policies and allegations of fraud which led to the appointment of a Trustee. After a contentious mediation which led ultimately to a settlement of all issues other than the Trustee's fees, Judge Schmidt was ask to opine and testify on the reasonableness of the fees. The opposing party agreed to the fees after deposing Judge Schmidt.

*In re Rincon Island Limited Partnership* Case No. 16-33174 (N.D. Tex.). The Debtor in this case owned offshore oil and gas leases from the State of California. The wells were located on a man-made island located approximately 300 yards off the coast line of central California. The Island was connected to the coast by a causeway. Judge Schmidt was asked to investigate the availability of third party DIP financing and then opine and testify as to the reasonableness of insider DIP financing. Following Judge Schmidt's testimony, the Judge granted the request for DIP financing.

*MOGAS v. TOTAL.* A dispute between Joint Interest Holders over P & A and Decommissioning costs. The case was settled following the issuance of my report

*Perry v. Vida* A dispute between a Client and a Bankruptcy attorney for failing to advise the client that filing a Bankruptcy after a foreclosure would likely lead to the loss of the house and failing to file the Bankruptcy before the noticed foreclosure. The client lost his homestead as a result of the attorney's negligence. The case was settled after Judge Schmidt's deposition and the Trial Judge ruling that he was qualified to testify at the Jury Trial.

**Significant Cases as United States Bankruptcy Judge**

3

In re Asarco LLC, Case No. 05-21207-C-11.   Bankruptcy of copper mining, refining and smelting companies described by the United States District Court as "perhaps the most successful outcome in bankruptcy history." (Opinion of Hon. Andrew S. Hanen, Case No. 2:11-CV-290).  The Debtor exited bankruptcy with $1.4 billion cash and little outstanding debt.  All creditors were paid in full with interest and attorney's fees.  The case included complex legal issues including labor law, environmental, (estimations of 54 super fund sites) asbestos/toxic tort, tax law, international law and corporate law.  A review of the docket in this case indicates over 16,800 docket entries.

In re Scotia Pacific LLC, Case No. 07-20027.  Reorganization of the largest redwood forest in Northern California.  Confirmation involved federal and state environmental laws, complex bankruptcy issues including valuation of note holders' secured claim and credit bidding.   The plan sold the forest and its affiliated businesses to a "stalking horse bidder".

In re Eagle Bus Mfg, Inc. (Greyhound) Case No. 90-00985-B-11 Reorganization of Greyhound bus lines which included litigation of unfair labor practice claims and corporate issues of a publicly traded corporation.  The case was the third in a series of Bankruptcy case involving union contract dispute with a transportation company.

In re Midcon Offshore, Inc., Case No. 96-25269-C-11 Complex Chapter 11 reorganization involving offshore oil and gas production requiring the interpretation of Texas and Louisiana oil and gas law and its interplay with Federal Regulations.  The case also involved appointment of a chapter 11 trustee and litigation between a secured creditor, the unsecured creditor's committee and the chapter 11 trustee.

In re EnRe, L.P., Case No. 02-21354-C-11 Complex Chapter 11 in which competing plans of reorganization were litigated and a creditor plan was confirmed.  Texas and Wyoming mechanics and materialmens' lien issues formed a large part of the post-confirmation litigation.

In re EOTT Energy Partners, Case No. 02-21730 The "EOTT" was short for Enron Oil Trading Trust.  Complex Chapter 11 case involving claims by surface owners for environmental damage cause by pipeline and interpretation of New Mexico law.  While the Enron case proceeded in New York, this sister corporation successfully reorganized its assets and liabilities in Corpus Christi.  It was one of the largest bankruptcies filed at that time.

In re American Rice, Inc., Case No. 98-21254-C011 Reorganization of $450 million publicly traded food company, Comet Rice, with over 3500 creditors, involving securities law and corporate officer liability.

TransAmerican Energy Corp. Case No. 99-21515-C-11 Complex Chapter 11 reorganization involving Texas, Wyoming, Louisiana and Oklahoma oil and gas law.

In re Clemtex, Inc., Case No. 01-21794-C-11 Agreed plan of reorganization confirmed jointly by U.S. District and Bankruptcy Court, containing settlement trust and channeling injunction in a silicosis mass tort case.

**Significant Other Appointments**

Appointed as a Commissioner by the Governor of Texas on the Texas Ethics Commission in 2019 and continues to serve in that capacity.

**Military Duty**

<u>1978 through 2004</u>:  United States Air Force Reserves , Staff Judge Advocate, Mission Support Squadron Commander and Support Group Commander of the 917th Wing, Barksdale AFB, La.  Rose to the rank of Colonel.  Commanded a unit of over 900 personnel which provided the Wing with all support functions including Security Police, Engineering, Personnel, Finance, Food Services, Chaplains and Legal. Received the Legion of Merit for outstanding service in a position of extraordinary responsibility.

<u>1973 through 1978</u>:  United States Air Force. Assistant Staff Judge Advocate, Barksdale Air Force Base, Louisiana.  Served as corporate counsel for the Second Bomb Wing, Barksdale AFB, a company of over 7,000 employees; reviewed governmental contracts concerning Barksdale AFB, represented the base in utilities negotiations and litigation, and provided advice to commanders on a myriad of other legal and quasi-legal problems.

**Professional Organizations and Activities**

State Bar of Texas
Louisiana Bar Association
American Bar Association
Corpus Christi Bar Association
Shreveport Bar Association – Secretary/Treasurer
Northwest Louisiana Legal Services – Chairman of Board
Chairman, Bankruptcy Section – State Bar of Texas 2014-2015
American Bankruptcy Institute
National Conference of Bankruptcy Judges

**Other Organizations and Activities**

Harbor Playhouse Board of Directors
Corpus Christi Symphony, Board of Directors, President
President, Shreveport Little Theatre
Shreveport Opera – Board of Directors, President
Shreveport Symphony – Board of Directors, Vice President
Finisher, 1975, 1976 and 1977 International Rice Festival Marathon and 1995 Houston
    Tenneco Marathon
Chairman, Holiday in Dixie Military Ball, 1982 thru 1987
Shreveport Chamber of Commerce Military Affairs Committee
Finance Commission of First United Methodist Church of Corpus Christi – 1991
Finance Committee, Corpus Christi Cathedral 2000 – 2014
Director, Halo Flight, Helicopter Ambulance Service

**Professional Awards**

Selected one of top ten Bankruptcy Judges in America – Turn Around & Workout Magazine
2004 – Judicial Appreciation Award – National Association of Chapter Thirteen Trustees
Outstanding Service Award, Bankruptcy Section, State Bar of Texas 2012
Banco Rotto Award, Bankruptcy Section, State Bar of Texas 2015

**Military Awards**

Legion of Merit 2003
The Meritorious Service Medal – 1987
The Meritorious Service Medal, First Oakleaf Cluster – 1991

Air Force Commendation Medal
Air Force Achievement Medal

**Other Awards**

Outstanding Young Man of Shreveport – 1977
Junior Officer of the Quarter, Barksdale AFB, Louisiana
2018 President's Award - NAACP

**Conferences and Speaking Engagements**

Frequent Speaker on Various Continuing Legal Education Conferences Including the Following
Organizations

> Fifth Circuit Judicial Conference
> University of Texas Law School
> Louisiana State University Law School
> State Bar of Texas
> Commercial Law League
> National Association of Attorneys General
> American Conference Institute
> Fifth Circuit Bench Bar Conference
> Southern District of Texas Bench Bar Conference
> Western District Bench Bar Conference
> State of Texas Bench Bar Conference
> Corpus Christi Bar Association
> National Association of Chapter Thirteen Trustees
> American Bankruptcy Institute

6

**DECLARATION OF RICHARD S. SCHMIDT IN SUPPORT OF THE
DEBTOR'S MOTION TO EMPLOY CHIEF RESTRUCTURING OFFICER**

On the date set forth below I, Richard S. Schmidt, state and declare as follows:

1.     That he is a resident of  Corpus Christi, Texas, that he is over 21 years of age and is of sound mind and has never been convicted of an offense; that he is a Member of the State Bar of Texas, duly licensed as attorney in such state; that Schmidt possesses all of the qualifications to provide financial and operational advisory services to serve as Chief Restructuring Officer ("CRO") for the Debtor.

2.     That he has read the Debtor's Emergency Motion to Employ Chief Restructuring Officer in connection with the Chapter 11 bankruptcy proceedings of the Debtor, Garcia Grain Trading Corp.  That Schmidt has extensive knowledge and experience in providing financial and operational advisory services to serve as the Debtor's CRO and is in all respects qualified to render the necessary services requested by the Debtor.

3.     That Schmidt is disinterested and has no current connection relating to this Chapter 11 case with any of the creditors of the estate, or any party of interest, their respective attorneys and accountants, the U.S. Trustee or any person employed in the office of the U.S. Trustee, save and except for his service as a mediator in the case.

4.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: August 2, 2023

/s/ Richard S. Schmidt
Richard S. Schmidt

**EXHIBIT "B"**

**RICHARD S. SCHMIDT**
**Retired U.S. Bankruptcy Judge**
**615 Leopard, Suite 635**
**Corpus Christi, TX 78404**
**(361) 244-9333**
**rss@judgerss.com**

July 28, 2023

Mr. Octavio Garcia
Garcia Grain Trading Corp.
101 N. Val Verde Rd.
Donna, TX 78537

Re:     Engagement Agreement for Richard S. Schmidt to serve as the Chief Operating Officer for
        Garcia Grain Trading Corp.

Dear Mr. Garcia:

This letter will document my engagement to provide financial and operational advisory services as
Chief Restructuring Officer ("CRO") to Garcia Grain Trading Corp., Debtor in Possession in Case
No. 23-70028-rj11(the "Debtor" "Garcia," or the "Company"), currently pending in the U.S.
Bankruptcy Court for the Southern District of Texas, McAllen Division.

**SCOPE OF SERVICES**

The financial advisory services (the "Services") that Richard S. Schmidt ("Schmidt") will perform as
CRO for the Company include:

1.      Schmidt will serve as the Debtor's CRO with such responsibilities and authority as is
        commensurate with said position, including the ultimate decision making authority with
        respect to the management and operation of the Debtor, and be supported by the current
        counsel engaged to represent Garcia and the Committee as well as other financial advisors
        and accountants  retained by the Debtor, and have management control and authority over
        Debtor's personnel, so that he may perform the following services for the bankruptcy
        estate:

        a.      Direct the operations of the Debtor, including without limitation, being designated
        as an authorized signatory for the Debtor on all depository accounts, and to enable him to
        execute all documents, agreements, and reports on behalf of the Debtor;

        b.      Manage the Chapter 11 process, including working with the Debtor's employees,
        professionals, secured creditors, landlords, any Committee, or other stakeholders, including
        the Debtor's officers and directors;

        c.      Retaining or terminating employees, contractors and non-legal professionals
        employed by the Debtor;

        d.      Have decision-making authority with respect to the Debtor's exercise of business
        judgment as necessary in connection with the ongoing operations of the Debtor;

**EXHIBIT "C"**

e.      Assist Debtor's counsel, and provide testimony on behalf of the estate as needed in the administration of the Chapter 11 proceeding;

f.      Establish as may be necessary and appropriate communication protocols with stakeholders to insure transparency and appropriate disclosures to all creditors and parties in interest;

g.      Direct the preparation of financial projections and cash flow budgets, including implementing cash conservation strategies, tactics and processes where appropriate and feasible;

h.      Directly manage the sales process of assets of the Company and the closing of such sale of assets;

k.      Identify liquidity needs and implement a cash management program with the management team and approve all material disbursements;

l.      To the extent needed, engage other advisors, consultants, and industry experts, with Bankruptcy Court approval, to assist with the restructuring efforts and completion of bankruptcy related reporting requirements;

m.      Assist in the preparation and review of reports or filings as required by the Court or the Office of the United States Trustee, including, without limitation, any needed amendments to schedules of assets and liabilities, statements of financial affairs and monthly operating reports;

n.      Assist current Debtor's counsel in the negotiation, preparation, and confirmation of a plan of reorganization and related documents;

o.      Assist with evaluating executory contracts and unexpired leases as necessary;

p.      Assist the Debtor and its current counsel with preparation for hearings, testimony, creditor meetings, and creation of supporting exhibits and motions;

q.      Assist the Debtor and its current counsel in developing litigation strategy for any pending litigation and assisting in analysis with respect to filing recovery actions based upon causes of action constituting property of the estate; and

r.      Perform such other advisory services and other functions as are customarily provided in connection with the analysis and negotiations association with the development and confirmation of any plan of reorganization.

**FEES**

Services under the terms of this engagement will be paid at the flat rate of $20,000 per month, payable on the first business day of each month of the engagement plus reimbursement for reasonable and necessary costs and expenses, including but not limited to mileage per automobile at the current published IRS rate per mile, and standard airline fares if travel by air becomes necessary, as well the actual reasonable and customary expenses incurred for all lodging and meals while engaged in the duties and responsibilities associated with my service as the CRO.

**WORK PRODUCT**

The Company acknowledges and agrees that any written reports, analyses, statistics, assessments, plans, forecasts, recommendations, studies or other written work product prepared by Schmidt pursuant to this engagement (collectively, "Work Product") is confidential and proprietary and is for the Company's exclusive use and may not be distributed or provided to, shared with or disclosed to any other party or person, without Schmidt's prior written consent. Furthermore, the Work Product may not be relied upon by any other party or person, for any reason whatsoever and may not be utilized for any other purpose except for those specifically contemplated herein. Upon full payment of all amounts due to us in connection with this engagement, the work product embodied in the deliverables set out in this engagement letter will become your sole and exclusive property, except as set forth below.

Schmidt and Garcia acknowledge and agree that any written reports, analyses, statistics, assessments, plans, forecasts, recommendations, studies or other written work product prepared by Schmidt pursuant to this engagement (collectively, "Work Product") is confidential and proprietary and is for the Company's exclusive use and may not be distributed or provided to, shared with or disclosed to any other party or person, without Schmidt's prior written consent. Schmidt further acknowledges that portions of its work product will be filed with the United States Trustee in connection with the pending Chapter 11 case and that any such filings will not constitute confidential Work Product. The Work Product may not be relied upon by any other party or person, for any reason whatsoever and may not be utilized for any other purpose except for those specifically contemplated herein.

**GENERAL TERMS**

This engagement letter and the relationship established hereby shall be governed by all orders approving this engagement and compensation hereunder entered in the Debtor's bankruptcy case described above, the laws of the State of Texas (without regard to its conflict of laws' provisions), and any dispute or claim arising out of or relative thereto shall be heard by the U.S. Bankruptcy Court for the Southern District of Texas, McAllen Division (the "Bankruptcy Court"). Furthermore, the order authorizing the Debtor to engage Schmidt shall specifically provide that the CRO shall have no liability for all services rendered to or on behalf of the Debtor or any decision or judgment made with respect thereto, save an except actual fraud or gross negligence established by clear and convincing evidence by the bankruptcy court having exclusive jurisdiction over any such claims brought. This engagement letter constitutes the entire agreement between the parties and may be modified or amended only in writing signed by both parties, after proper approval from the Bankruptcy Court. It is specifically understood that once authorized to serve as the CRO for the Debtor may employment can only be terminated by order of the Bankruptcy Judge serving over the case.

We are prepared to begin immediately. If the foregoing terms are acceptable, please acknowledge below.

Very truly yours,

Richard S. Schmidt

Agreed to and accepted by:

GARCIA GRAIN TRADING CORP.

By:   _____

     Octavio Garcia
Its:   President/Chief Executive Officer

Dated: _____