United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 15, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **GARCIA GRAIN TRADING** | § | **Case No. 23-70028-EVR-11** |
| **CORP.,** | § | |
| | § | |
| | § | |
| **Debtor.** | § | |

## AGREED ORDER GRANTING DEBTOR'S EMERGENCY MOTION TO EMPLOY RICHARD S. SCHMIDT, RETIRED U.S. BANKRUPTCY JUDGE AS ITS CHIEF RESTRUCTURING OFFICER

On this date came on for consideration the Motion to Employ Richard S. Schmidt, Retired U.S. Bankruptcy Judge, As Its Chief Restructuring Officer (the "Emergency Motion"), and it appearing to the Court that Richard Schmidt ("Richard Schmidt") in accord with 11 U.S.C. § 327 is a disinterested party, does not represent or hold any interest adverse to the estate or creating an actual conflict of interest to the Debtor, creditors or to the other parties in interest with respect to the matters on which he is to be employed, and that he has no connections with the Debtor, the creditors, or any other party-in-interest herein, and their respective attorneys and accountants, except as disclosed in said Emergency Motion, and the Court having been advised, as is evidenced by the signatures of their respective counsel on this Order, that all parties who sent representatives and actively participated in the mediation/settlement conference conducted with Richard Schmidt in Austin, Texas, on July 13 and 14, 2023, such parties being the Debtor, StoneX Commodity Solutions, LLC, GrainChain, Inc., Vantage Bank Texas, Falcon International Bank, the Official Committee of Unsecured Creditors, and Octavio Garcia, in his individual capacity (collectively, the "Participating Mediation Parties") and to the extent each party may have shared confidential information or exchanged materials that may be subject to the attorney-client or work product

privileges with Richard Schmidt, such Participating Mediation Parties agree to waive their respective confidentiality mediation protections, attorney-client privilege and work product protections, or those protections as may be covered by Federal Rule of Evidence 408, with respect to the privilege and/or protections to the exact and actual information or communications actually shared with Richard Schmidt during his service as a mediator in this case, and further noting that no other creditors or parties in interest have filed any written objections to the appointment of Richard Schmidt as Chief Reorganization Officer in this case, or voiced any objection to his appointment in such capacity at the hearing on the Emergency Motion, the Court finds that Richard Schmidt is fully qualified and eligible to be appointed as the Chief Reorganization Officer in this case, and that his appointment is in the best interest of the Debtor, the creditors and other parties in interest in the case, it is therefore;

ORDERED, ADJUDGED AND DECREED that the Debtor, pursuant to the provisions of 11 U.S.C. § 327 is hereby authorized to employ Richard S. Schmidt, 615 Leopard Street, Suite 635, Corpus Christi, Texas 78401, as Chief Restructuring Officer for the Debtor in this bankruptcy proceeding ("CRO"), and the Debtor is authorized to sign the engagement letter describing the terms and conditions of his employment which is attached hereto as Exhibit "A," however, in the event there should arise a dispute between the terms and conditions of the CRO's employment as described in the letter as opposed to this Order, the terms of this Order shall prevail.

IT IS FURTHER ORDERED that Richard Schmidt is authorized and empowered to exercise all the powers and have the duties of a debtor in possession under 11 U.S.C. § 1107(a) and to undertake such responsibilities and authority as is commensurate with said position, including the ultimate decision-making authority with respect to the operation of the Debtor. While the ultimate management authority remains with the board of directors as it may continue to set general policies

relating to the business of the Debtor, all decisions with respect to the daily management and all operations of the Debtor during the administration of the bankruptcy estate, as well as formulation of a plan of reorganization, will be under the control of the CRO and any dispute or disagreement between the CRO and the board concerning such matters shall be brought independently by the CRO or management before the Court for its consideration. Should the CRO believe that management is interfering with his duties and responsibilities in the case, at his sole discretion, he may bring the matter to the attention of the creditor body and the Court so appropriate relief may be sought.

IT IS FURTHER ORDERED, that in light of the condition imposed by this Court on Richard Schmidt being deemed qualified to serve as the CRO in this case only upon the affirmative waiver of the Participating Mediation Parties of their respective confidentiality mediation protections, attorney-client privileges and work product protections, or those protections as may be covered by Federal Rule of Evidence 408, with respect to the privilege and/or protections to the information or communications actually shared with Richard Schmidt during his service as a mediator in such proceedings, in the exact and actual information or communications actually shared during such proceedings, should any of these parties assert a conflict of interest as the result of his service as a mediator, then in such event his service as the CRO may be terminated by this Court or otherwise resolved (e.g., appointment of conflicts counsel to advise) upon notice and hearing.

IT IS FURTHER ORDERED that while Richard Schmidt may be supported by the current counsel engaged to represent Garcia and the Committee as well as other financial advisors and accountants retained by the Debtor, to assure he has the legal advice and counsel required to make independent decisions concerning the operations of the Debtor as well as the administration of the bankruptcy estate, the CRO shall hire his own counsel to represent him in carrying out his duties and responsibilities in the case as are hereinafter set forth and described.

IT IS FURTHER ORDERED that, as CRO, Richard Schmidt shall have daily managerial and all operational control and authority over the Debtor and its powers and duties set forth in 11 U.S.C. § 1107(a), and shall be authorized to perform such services for the bankruptcy estate, including but not limited to the following:

    a. As a fiduciary acting on behalf of the Debtor he will direct the operations of the Debtor, including without limitation, being designated as an authorized signatory for the Debtor on all depository accounts, and to enable him to execute all documents, agreements, and reports on behalf of the Debtor;

    b. Administer the Chapter 11 process, including providing reports and other information as may be appropriate to the board of directors and working with the Debtor's employees, professionals, secured creditors, landlords, any Committee, or other stakeholders, including the Debtor's officers and directors, to ensure the Debtor is properly operated and administered and the reorganization of Debtor is successful;

    c. Retaining or terminating employees, contractors and non-legal professionals employed by the Debtor;

    d. Have decision-making authority with respect to the Debtor's exercising its business judgment as necessary in connection with the ongoing operations of the Debtor;

    e. Assist Debtor's counsel, and provide testimony on behalf of the estate as needed in the administration of the Chapter 11 proceeding;

    f. Establish, as may be necessary and appropriate, communication protocols with stakeholders to insure transparency and appropriate disclosures to all creditors and parties in interest;

    g. Direct the preparation of financial projections and cash flow budgets, including implementation of cash conservation strategies, tactics and processes where appropriate and feasible;

    h. Direct management in the sale process of assets of the Company and the closing of such sale of assets;

    i. Identify liquidity needs and implement a cash management program with the management team and approve all material disbursements;

    j. To the extent needed, engage other advisors, consultants, and industry experts, with Bankruptcy Court approval, to assist with the restructuring efforts and

completion of bankruptcy related reporting requirements;

k. Assist in the preparation and review of reports or filings as required by the Court or the Office of the United States Trustee, including, without limitation, any needed amendments to schedules of assets and liabilities, statements of financial affairs and monthly operating reports;

l. Assist current Debtor's counsel in the negotiation, preparation, and confirmation of a plan of reorganization and related documents;

m. Assist with evaluating executory contracts and unexpired leases as necessary;

n. Assist the Debtor and its current counsel with preparation for hearings, testimony, creditor meetings, and creation of supporting exhibits and motions;

o. Assist the Debtor and its current counsel in developing litigation strategy and related analysis; and

p. Perform such other advisory services and other functions as are customarily provided in connection with the analysis and negotiations of any plan of reorganization.

IT IS FURTHER ORDERED that Richard Schmidt will be employed as CRO to act as the fiduciary for the Debtor with all rights and powers of a corporate officer of the Debtor in replacement of the current Chief Executive Officer and President and any other officers of the Debtor and, as such, will consult with Debtor's principals and current employees in connection with his duties as may be needed from time to time.

IT IS FURTHER ORDERED that Richard Schmidt will be paid at the flat rate of $20,000 per month, payable on the first business day of each month of the engagement plus reimbursement for reasonable and necessary costs and expenses, including but not limited to mileage per automobile at the current published IRS rate per mile, and standard airline fares if travel by air becomes necessary, as well the actual reasonable and customary expenses incurred for all lodging and meals while engaged in the duties and responsibilities associated with my service as the CRO. In order to have sufficient funds to pay the fees and expenses associated with the CRO, the Debtor and

GrainChain, Inc. have agreed that $250,000 of the profits from the purchase and sale of sunflower seeds during the 2023 season will be set aside for such purpose and that such funds may be reimbursed from the claim owned by the estate for the business interruption claim of the estate connected with the storm damage to the Progreso Facility so long as there are sufficient funds to make the reimbursement after all other administrative expenses other than the CRO have been paid from such recovery. As a professional of the Debtor's bankruptcy estate, all compensation will be paid in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any order of this Court dealing with Interim Compensation Procedures. Final approval of his compensation and reimbursement of expenses will be subject to the supervision of the Court and only after approval by the Court following the filing a motion with the Court, reasonable notice, and opportunity for hearing.

IT IS FURTHER ORDERED that Richard Schmidt will have no liability for any services rendered to or on behalf of the Debtor or any conduct, decision, or judgment made with respect thereto as a person appointed by the Bankruptcy Court, save and except causes of action for fraud, gross negligence, willful misconduct, breach of fiduciary duty, or self-dealing established by clear and convincing evidence and ordered exclusively by the Bankruptcy Court, which shall have exclusive jurisdiction over any such claims brought at any time against Schmidt or any other party affected by the actions he undertakes or the decisions he makes while serving in such capacity.

IT IS FURTHER ORDERED that Richard Schmidt shall only be terminated by order of this Court after reasonable notice and opportunity for hearing has been given to all creditors and parties in interest in the case.

IT IS FURTHER ORDERED that nothing in this order shall excuse the CRO or any other party from (i) obtaining any and all licenses and/or permits required for the use of the grain facilities

owned or operated by the Debtor under the laws of the State of Texas or (ii) complying with all applicable governmental laws, ordinances, and regulations in connection with the use of or leasing of the grain facilities.

IT IS FURTHER ORDERED that prior to the Petition Date, Harco National Insurance Company ("Harco") executed as surety for the Debtor four commercial surety bonds ("the Surety Bonds") having an aggregate penal sum of $2,397,850, specifically including Grain Warehouse Operator bonds for the grain facilities owned and operated by the Debtor. Nothing in this Order shall permit or otherwise effect an assumption, assignment, or transfer of (a) any Surety Bonds, (b) any indemnity agreements entered into with respect to the Surety Bonds, or (c) any and all obligations under the Surety Bonds or indemnity agreements to Debtor or any other party, unless and until a further order is entered by this Court after a subsequent hearing on at least 21-days' notice, or as submitted as an agreed order by the Debtor and Harco. All of Harco's rights shall be deemed fully preserved pending the entry of such a further order, including, without limitation, Harco's rights under the bonds, indemnity agreements, and/or the common law of suretyship, including but not limited to its subrogation rights, and nothing in this Order is intended to alter, limit, modify or affect those rights. Nothing in this Order shall be deemed to authorize or provide Harco's consent to the substitution of any principal under any of the Surety Bonds. Furthermore, while Harco and the Texas Department of Agriculture do not presently assert that they have shared any privileged information, their rights to assert any such privileges are preserved to the extent they exchanged any information or shared any materials with Richard Schmidt, the Debtor or other creditors and parties in interest in this case while Richard Schmidt served in his capacity as a mediator in this case.

IT IS FURTHER ORDERED THAT the terms and provisions of this Order are effective upon its entry and any stay of its effectiveness is waived.

Signed: August 15, 2023

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

**APPROVED AS TO FORM AND CONTENT AND ENTRY REQUESTED:**

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
Email: drl@mhba.com

/s/ David R. Langston
David R. Langston, SBN: 11923800
Southern District Bar No. 9489
*Attorneys for the Debtor, Garcia Grain Trading Corp.*

BURR & FORMAN LLP
222 2nd Ave S #2000
Nashville, TN 37201
Telephone: (615) 724-3200
Email: dhouston@burr.com

And

The Law Office of Kurt Stephen, PLLC
100 South Bicentennial
McAllen, Texas 78501
Email: kurt@kstephenlaw.com


 /s/ David W. Houston, IV
Appearing *Pro hac vice*
*Attorneys for StoneX Commodity Solutions, LLC*

Trevino / Haynes, LLP
3910 E. Del Mar Blvd., Ste 107
Laredo, Texas 78045
(956) 722-1417
(956) 791-0220

/s/ Richard E. Haynes, II
RICHARD E. HAYNES, II
Bar No. 00793923
U.S. District Court No. 22865
***Attorneys for Falcon International Bank***

ATLAS, HALL & RODRIGUEZ, LLP
P.O. Box 3725
McAllen, TX  78502-3725
(956) 682-5501 Office
(956) 686-6109 Telecopier
e-mail: vmskaggs@atlashall.com

 /s/ Vicki M. Skaggs
Vicki M. Skaggs, State Bar No. 13320100
S.D. Texas Federal I.D.  No. 1226
***Attorneys for Vantage Bank Texas***

MCGINNIS LOCHRIDGE
P.O. Box 720788
McAllen, Texas 78504
(956) 489-5958 (Phone)
(956) 331-2304 (Fax)
Email: ccurtis@mcginnislaw.com


/s/Catherine Stone Curtis
CATHERINE STONE CURTIS, TBN: 24074100
Federal ID No.: 1129434


And

Steven Shurn
TBN 24013507
sshurn@hwa.com
HUGHES, WATTERS & ASKANASE, LLP
Total Energies Tower
1201 Louisiana, 28th Floor

Houston, Texas  77002
(713) 759-0818 Telephone
(713) 759-6834 Facsimile
(713) 410-2139 Cell Phone
**Counsel for GrainChain, Inc.**

DUARTE & MOLINA, P.C.
2200 Warner Avenue
San Antonio, Texas 78201
(210) 737-6676 Office
(210) 733-6181
dduarte@duartelawfirm.com

/s/ Demetrio Duarte, Jr.
DEMETRIO DUARTE, JR.
**Attorney for Octavio Garcia**


JORDAN & ORTIZ, P.C.
500 North Shoreline Drive, Suite 900
Corpus Christi, TX 78401
Telephone: 361.884.5678
Facsimile: 361.888.5555
Email: sjordan@jhwclaw.com

/s/ Shelby A. Jordan
Shelby A. Jordan
St. Bar No. 11016700; S.D. No. 2195
Antonio Ortiz
St. Bar No. 24074839; SD. No. 1127322
**Attorneys for Unsecured Creditors Committee**

Dry Law, PLLC
909 18th Street
Plano, Texas 75074
T: (972) 797-9517
F: (972) 797-9510
Email: sbeauchamp@drylaw.com

/s/ Steven M. Beauchamp
Steven M. Beauchamp, State Bar No. 24102924
**Attorneys for Harco National Insurance Company**

Assistant Attorney General
Bankruptcy & Collections Division
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 12548
Austin, TX 78711 – 2548
Office (512) 475-4933
Email: layla.milligan@oag.texas.gov

/s/ Layla D. Milligan
Layla D. Milligan, State Bar No. 24026015
*Attorneys for Texas Department of Agriculture*

**RICHARD S. SCHMIDT**
**Retired U.S. Bankruptcy Judge**
**615 Leopard, Suite 635**
**Corpus Christi, TX 78404**
**(361) 244-9333**
**rss@judgerss.com**

**EXHIBIT "A"**

August 14, 2023

Mr. Octavio Garcia
Garcia Grain Trading Corp.
101 N. Val Verde Rd.
Donna, TX 78537

Re:     Engagement Agreement for Richard S. Schmidt to serve as the Chief Operating Officer for Garcia Grain Trading Corp.

Dear Mr. Garcia:

This letter will document my engagement to provide financial and operational advisory services as Chief Restructuring Officer ("CRO") to Garcia Grain Trading Corp., Debtor in Possession in Case No. 23-70028-rj11(the "Debtor" "Garcia," or the "Company"), currently pending in the U.S. Bankruptcy Court for the Southern District of Texas, McAllen Division.

**SCOPE OF SERVICES**

The financial advisory services (the "Services") that Richard S. Schmidt ("Schmidt") will perform as CRO for the Company include:

1.      Richard Schmidt is authorized and empowered to exercise the powers and have the duties of a debtor in possession under 11 U.S.C. § 1107(a) and to undertake such responsibilities and authority as is commensurate with said position, including the ultimate decision-making authority with respect to the operation of the Debtor. The management authority remains with the board of directors. Additionally Richard Schmidt shall have operational control and authority over the Debtor and its powers and duties set forth in 11 U.S.C. § 1107(a), and shall be authorized to perform services for the bankruptcy estate,

2.      While Richard Schmidt may be supported by the current counsel engaged to represent Garcia and the Committee of Unsecured Creditors as well as other financial advisors and accountants retained by the Debtor, to assure he has the legal advice and counsel required to make independent decisions concerning the operations of the Debtor as well as the administration of the bankruptcy estate, he shall hire his own counsel to represent him in carrying out his duties and responsibilities in the case including but not limited to the following:

   a.      As a fiduciary acting on behalf of the Debtor he will direct the operations of the Debtor, including without limitation, being designated as an authorized signatory for the Debtor on all depository accounts, and to enable him to execute all documents, agreements, and reports on behalf of the Debtor;

   b.      Administer the Chapter 11 process, including providing reports and other information as may be appropriate to the board of directors and working with the

Debtor's employees, professionals, secured creditors, landlords, any Committee, or other stakeholders, including the Debtor's officers and directors, to ensure the Debtor is properly operated and administered and the reorganization is a success;

c. Retaining or terminating employees, contractors and non-legal professionals employed by the Debtor;

d. Have decision-making authority with respect to the Debtor's exercising its business judgment as necessary in connection with the ongoing operations of the Debtor, and while the management authority remains with the board of directors, and it may continue to set general policies relating to the business of the Debtor, all decisions with respect to the operations of the Debtor during the administration of the bankruptcy estate as well as formulation of a plan of reorganization will be under the control of the CRO and any dispute or disagreement between the CRO and the board concerning such matters may be brought independently by the CRO before the Court for its consideration;.

e. Assist Debtor's counsel, and provide testimony on behalf of the estate as needed in the administration of the Chapter 11 proceeding;

f. Establish, as may be necessary and appropriate, communication protocols with stakeholders to insure transparency and appropriate disclosures to all creditors and parties in interest;

g. Direct the preparation of financial projections and cash flow budgets, including implementing cash conservation strategies, tactics and processes where appropriate and feasible;

h. Direct management in the sale process of assets of the Company and the closing of such sale of assets;

i. Identify liquidity needs and implement a cash management program with the management team and approve all material disbursements;

j. To the extent needed, engage other advisors, consultants, and industry experts, with Bankruptcy Court approval, to assist with the restructuring efforts and completion of bankruptcy related reporting requirements;

k. Assist in the preparation and review of reports or filings as required by the Court or the Office of the United States Trustee, including, without limitation, any needed amendments to schedules of assets and liabilities, statements of financial affairs and monthly operating reports;

l. Assist current Debtor's counsel in the negotiation, preparation, and confirmation of a plan of reorganization and related documents;

m. Assist with evaluating executory contracts and unexpired leases as necessary;

n. Assist the Debtor and its current counsel with preparation for hearings, testimony, creditor meetings, and creation of supporting exhibits and motions;

    o. Assist the Debtor and its current counsel in developing litigation strategy and related analysis; and

    p. Perform such other advisory services and other functions as are customarily provided in connection with the analysis and negotiations of any plan of reorganization.

  3. Schmidt shall only be terminated by order of this Court after reasonable notice and opportunity for hearing has been given to all creditors and parties in interest in the case. Should Schmidt believe that management is unduly interfering with his duties and responsibilities in the case at his sole direction he may bring the matter to the attention of the creditor body and the Court so appropriate relief may be sought.

  4. Schmidt will be employed as CRO to act as the fiduciary for the Debtor with all rights and powers of a corporate officer of the Debtor in replacement of the current Chief Executive Officer and President and any other officers of the Debtor and, as such, will consult with Debtor's principals and current employees in connection with his duties as may be needed from time to time.

  5. Furthermore, in light of the condition imposed by this Court on Schmidt being deemed qualified to serve as the CRO in this case only upon the affirmative waiver of the Participating Mediation Parties of their respective confidentiality mediation protections, attorney-client privileges and work product protections, or those as may be covered by Federal Rule of Evidence 408, with respect to the privilege and/or protections to the information and to the information actually shared with Richard Schmidt during this service as a mediator, in the exact and actual information or communications actually shared during such proceedings, should any of these parties assert a conflict of interest as the result of his service as a mediator, then in such event his service as the CRO may be terminated or otherwise resolved (e.g., appointment of conflicts counsel to advise) by the Court upon appropriate notice and opportunity for hearing.

**FEES**

  Services under the terms of this engagement will be paid at the flat rate of $20,000 per month, payable on the first business day of each month of the engagement plus reimbursement for reasonable and necessary costs and expenses, including but not limited to mileage per automobile at the current published IRS rate per mile, and standard airline fares if travel by air becomes necessary, as well the actual reasonable and customary expenses incurred for all lodging and meals while engaged in the duties and responsibilities associated with my service as the CRO. In order to have sufficient funds to pay the fees and expenses associated with the CRO, the Debtor and GrainChain, Inc. have agreed that $250,000 of the profits from the purchase and sale of sunflower seeds during the 2023 season will be set aside for such purpose and that such funds may be reimbursed from the claim owned by the estate for the business interruption claim of the estate connected with the storm damage to the Progreso Facility so long as there are sufficient funds to make the reimbursement after all other administrative expenses other than the CRO have been paid from such recovery. As a professional of the Debtor's bankruptcy estate, all compensation will be paid in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any order of this Court dealing with Interim Compensation Procedures. Final approval of his compensation and reimbursement of expenses will be subject to the supervision of the Court and only after approval by the Court following the filing a motion with the Court, reasonable notice, and opportunity for hearing.

**WORK PRODUCT**

  The Company acknowledges and agrees that any written reports, analyses, statistics, assessments, plans, forecasts, recommendations, studies or other written work product prepared by

Schmidt pursuant to this engagement (collectively, "Work Product") is confidential and proprietary and is for the Company's exclusive use and may not be distributed or provided to, shared with or disclosed to any other party or person, without Schmidt's prior written consent. Furthermore, the Work Product may not be relied upon by any other party or person, for any reason whatsoever and may not be utilized for any other purpose except for those specifically contemplated herein. Upon full payment of all amounts due to us in connection with this engagement, the work product embodied in the deliverables set out in this engagement letter will become your sole and exclusive property, except as set forth below.

Schmidt and Garcia acknowledge and agree that any written reports, analyses, statistics, assessments, plans, forecasts, recommendations, studies or other written work product prepared by Schmidt pursuant to this engagement (collectively, "Work Product") is confidential and proprietary and is for the Company's exclusive use and may not be distributed or provided to, shared with or disclosed to any other party or person, without Schmidt's prior written consent. Schmidt further acknowledges that portions of its work product will be filed with the United States Trustee in connection with the pending Chapter 11 case and that any such filings will not constitute confidential Work Product. The Work Product may not be relied upon by any other party or person, for any reason whatsoever and may not be utilized for any other purpose except for those specifically contemplated herein.

**GENERAL TERMS**

This engagement letter and the relationship established hereby shall be governed by all orders approving this engagement and compensation hereunder entered in the Debtor's bankruptcy case described above, the laws of the State of Texas (without regard to its conflict of laws' provisions), and any dispute or claim arising out of or relative thereto shall be heard by the U.S. Bankruptcy Court for the Southern District of Texas, McAllen Division (the "Bankruptcy Court"). By order of the Bankruptcy Court the Debtor is authorized to sign this engagement letter describing the terms and conditions of his employment, and in the event, there should arise a dispute between the terms and conditions of the Schmidt's employment as described in the letter as opposed to the order, the terms of this order shall prevail. Furthermore, the order authorizing the Debtor to engage Schmidt specifically provides that Schmidt will have no liability for any services rendered to or on behalf of the Debtor or any decision or judgment made with respect thereto as a person appointed by the Bankruptcy Court, save and except causes of action for fraud, gross negligence, willful misconduct, breach of fiduciary duty, or self-dealing established by the Bankruptcy Court, which shall have exclusive jurisdiction over any such claims brought against Schmidt or any other party affected by the actions he undertakes or the decisions he makes while serving in such capacity.

This engagement letter constitutes the entire agreement between the parties and may be modified or amended only in writing signed by both parties, after proper approval from the Bankruptcy Court. Schmidt shall only be terminated by order of the Judge presiding over this case after reasonable notice and opportunity for hearing has been given to all creditors and parties in interest in the case. Should Schmidt believe that management is unduly interfering with his duties and responsibilities in the case at his sold direction he may bring the matter to the attention of the creditor body and the Court so appropriate relief may be sought.

I am prepared to begin immediately. If the foregoing terms are acceptable, please acknowledge below.

Very truly yours,

Richard S. Schmidt

Agreed to and accepted by:

GARCIA GRAIN TRADING CORP.

By: _____

    Octavio Garcia

Its: President/Chief Executive Officer

Dated: _____