IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **GARCIA GRAIN TRADING** | § | |
| **CORP.,** | § | Case No. 23-70028-EVR-11 |
| | § | |
| Debtor. | § | |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITOR TO THE AMENDED MOTION TO
APPROVE MEDIATED SETTLEMENT [Dkt# 611]**

TO THE HONORABLE CHIEF U.S. BANKRUPTCY JUDGE EDUARCO V. RODRIGUEZ:

NOW COME the Official Committee of Unsecured Creditor (the "Committee") appointed and acting in this Chapter 11 case and files this Limited Objection to the Amended Motion to Approve Mediated Settlement [Dkt# 611] filed by the Debtor pursuant to Bankruptcy Rule 9019 seeking to compromise an Adversary Proceeding described therein, and would show as follows:

**I.
COMMITTEE'S INITIAL PARTICIPATION**

1. The Committee was active in the initial stages of this Chapter 11 case, including litigation involving the Insiders or affiliate Insiders Rodolfo Plascencia, Sr. ("Plascencia") and WNGU PROPERTIES, LLC ("WNGU") (Plascencia and WNGU are collectively "Defendants"). The Committee encouraged the Debtor to promptly seek recovery of the cash and property conveyed to a prior owner and director of the Debtor, Rodolfo Plascencia, Sr. in settlement of a disputed between Octavio Garcia, the Debtor, other of the Debtor's owners or Insiders and the Defendants.[1]

---

[1] Prior to the Petition Date, Plaintiff and Defendant, along with others, entered into a Settlement Agreement on July 26, 2022, to settle five state court lawsuits ("Lawsuits") against Garcia Grain and some of its principals and their family members in exchange for transfers of real property and cash payment to Rodolfo Plascencia, Sr. The

Page 1 of 8

2. The Committee encouraged the Debtor to promptly file suit and record a *lis pendens* to secure claims to real property of the Debtor conveyed to Defendants within a year of the Chapter 11 case.

3. The limited investigation of the Committee prior to the Debtor's adversary action (the "Avoidance Action") indicated that the assets conveyed and cash paid could exceed $1 million.

4. Based partly on the Committee's insistence, the Debtor filed the Avoidance Action and prepared and filed a *lis pendens* to protect from loss of the real property at issue.

## II.
## COMMITTEE PARTICIPATION AFTER THE ADVERSARY FILING

5. It now appears that the Debtor desires to settle the Avoidance Action for $200,000.00 cash. The Committee had no role in the mediation or the settlement. The Committee was not consulted in any respect or invited to attend the mediation, nor consulted during the mediation regarding, nor prior to filing this Amended Motion, concerning the reasons and analysis of any proposed settlement.

6. Accordingly, the Committee cannot express any "reasonable view" about the merits of the proposed settlement from its participation and has no idea of the Debtor's reasons or

---

pleading were very specific about the abuses of Octavio Garcia and his family of the assets and opportunities of the Debtor taken by the Garcia family. Those five suits were:

**Lawsuit No. 1.** The lawsuit instituted by Plascencia against the Defendants (to the Settlement Agreement) in the 275th Judicial District Court of Hidalgo County, Texas, in Cause No. C-4763-17-E, and Defendants' counterclaim and a Third-Party Petition against Plascencia ("Lawsuit No. 1");
**Lawsuit No. 2.** The lawsuit instituted by Plascencia against Octavio Garcia in the 398th Judicial District Court of Hidalgo County, Texas in Cause No. C-0562-19-I ("Lawsuit No. 2");
**Lawsuit No. 3.** The lawsuit instituted by Plascencia against Baldemar Salinas in the 398th Judicial District Court of Hidalgo County, Texas in Cause No. C-0563-19-I ("Lawsuit No. 3")
**Lawsuit No. 4.** The lawsuit instituted by Plascencia against Octavio Garcia and Baldemar Salinas Cantu in the 275th Judicial District Court of Hidalgo County, Texas in Cause No. C-0565-19-E ("Lawsuit No. 4")
**Lawsuit No. 5.** The lawsuit instituted by Ruiz Plascencia against Balli Garcia and Baldemar Salinas Cantu in the 332nd Judicial District Court of Hidalgo County, Texas in Cause No. C-0566-19-F ("Lawsuit No. 5")

considerations of the resulting settlement, nor the status of the Adversary Proceeding (discovery, trial date, *etc*.). Thus, for this basic information the Committee could only consult the Debtor's Amended Motion pleadings which, aside from conclusions of "best interest of the estate", "fair and reasonable", "the complexity and likely duration of the litigation and any expense, inconvenience and delay" and likely most important, "possible problems collecting a judgment in such litigation", contain no facts, analysis, or documents (referenced or attached) which would supply any of those facts necessary to support these conclusions. [*See*, pg. 9-10 ¶ 19]. The Committee has no doubt that the settlement is a product of arms-length negotiations, and the Committee has no doubt that when inquiry is made the Debtor's counsel will advise of the basis in fact for this Amended Motion. However, the Committee relies on both full disclosure by the Debtor and the pleadings the Debtor files to notify all creditors of a factual basis and analysis of the Debtor's decisions fairly and fully. It is not the Committee's function to do so nor can it on this occasion.

7.   Based on the pleadings as they now exist, no reasonable response could be made by the Committee or any creditor to the proposed settlement and accordingly, the Committee objects to the lack of details in support of the Amended Motion to enable creditors to make an informed decision.

8.   The Committee considers the absence of facts as a fatal defect to the approval of the Amended Motion, but the Committee favors settlement but takes no position opposing this proposed settlement and cannot do so until the facts and information supporting a settlement analysis is supplied.

**III.
ARGUMENTS AND AUTHORITIES**

9.   Under Bankruptcy Rule 9019, the decision to approve the compromise of a

controversy is within the sound discretion of the Bankruptcy Court. *See In re Aweco, Inc.*, 725 F.2d 293, 297 (5th Cir. 1984), *cert denied*, 496 U.S. 880 (1984); *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997). The Court must "make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *In re Cajun Electric Power Coop., 119 F.3d at 356 (citing In re Jackson Brewing Co., 624 F.2d 599, 602 (5th Cir. 1980)).* This decision should begin with fact-based pleading and if necessary, evidence offered at the hearing of the Amended Motion.

10. The Fifth Circuit views compromises as a "normal part of the process of reorganization … oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly" [*In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted)] but not simply a glance at pleading and a settlement agreement. In determining the best interests of creditors, the "test is not the desires of the majority as such, but the best interests of creditors taking into account their reasonable views." *In re Cajun Elec. Power Coop.*, 119 F.3d at 358 (upholding a settlement agreement despite the numerical majority of creditors opposing the settlement). The Debtors have the burden of showing that the balance of these factors demonstrates a fair and equitable compromise, but they must only show that the settlement falls within the "range of reasonable litigation alternatives." *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (*citing In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). In making the analysis, the bankruptcy court can give more weight to one or more of the factors in exercising its discretion, *but the facts must be disclosed to creditors*. *In re Derosa-Grund*, 567 B.R. 773, 785 (Bankr. S.D. Tex. 2017) (*citing In re Bard*, 49 Fed.Appx. 528, 532-33 (6th Cir. 2002); *In re Adelphia Commc'ns Corp.,* 327 B.R. 143, 160-65 (Bankr. S.D.N.Y. 2005) (giving certain factors "some weight," "no weight," or "moderate weight")).

11. As cited in the Amended Motion, in deciding whether to approve a settlement, the following factors must be considered:

  a. the probability of success in the litigation, with due consideration of the uncertainty in fact and law;

  b. the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

  c. all other factors bearing on the wisdom of the compromise.

*Jackson Brewing*, 624 F.2d at 602 (citing *TMT Trailer*). Under the rubric of the third, catch-all provision [d. above], the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement.

  d. the court should consider "*the paramount interest of creditors with proper deference to their reasonable views*." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); and

  e. the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collision." *Id*. at 918 (citations omitted) [arms-length negotiations is *not an issue in this Limited Objection*].

Without facts plead or somehow communicated to creditors there can be way to form a "reasonable view" of the proposed settlement.

12. It is the Debtor's burden to present the basis of its settlement in its pleading and persuade the Court that the settlement is reasonable, appropriate, and in the best interests of a debtor and its estate and creditors. Fed. R. Bankr. P. 9019(a); *See, e.g., The Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y.

1993), *aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600 (2d Cir. 1994). To satisfy this burden, *the Debtor must, at a minimum, inform the Court of the underlying facts that would enable the Court to make an independent judgment as to whether the compromise is fair and equitable. See, e.g., TMT Trailer*, 390 U.S. at 424. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 299-300 (5th Cir. 1984) ("The bankruptcy judge should not reach for his stamp marked 'approved' <u>unless some party supplies concrete facts</u>.").[2] [Emphasis added.] Rather, bankruptcy proceedings require that there be an assessment of the relative merits of conflicting claims first set out in a pleading and next that information presented to the court, in connection with the proposed settlement, sufficient to enable the court to canvass issues in its determination of reasonableness. *See In re Egolg*, 102 B.R. 706, 710 (Bankr. D. Ind. 1989).

13. The Committee suspects significant problems arose from the date of the initial analysis of the Avoidance Action made by the Committee (and communicated to the Debtor) however there is no disclosure of what those problems may be. For instance, a "cost of defense" settlement is not evidence of the "reasonableness" of a settlement. *See In re Hydronic Enter.*, 58 B.R. 363, 366 (Bankr. D.R.I. 1986) (explaining that a court should not approve a settlement that

---

[2] Faced with a situation like this case, the *TMT Trailer Court* criticized the federal district court for approving a settlement based on nothing more than "conclusory statements [of the proponents of the compromise] that the claims should be compromised." *Id.* at 436. As the Supreme Court emphasized, the district judge could not undertake an independent analysis of the wisdom of the compromise without apprising "himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated." *Id.* at 424; *see also AWECO*, 725 F.2d at 299 (citations omitted) (reversing the bankruptcy court's approval of a settlement because there were "gaping holes in the background of information regarding the . . . settlement," and "unsubstantiated, gratuitous declarations regarding an estate's worth cannot support an approval of a settlement."), *Gowan v. Gardy (In re Gardi)*, 273 B.R. 4 (Bankr. E.D. N.Y. 2002) (court satisfied that settlement was fair and in the best interests of the estate only after meaningful evidence introduced showing that Trustee had engaged in a "formal decision analysis" in which Trustee estimated estate's chances of success, expenses of continued litigation, and maximum recovery the estate could expect).

It is an abuse of discretion for a court to approve a settlement absent a sufficient factual foundation, and without making findings of fact and conclusions based on evidence adduced by the parties. *AWECO,* 725 F.2d 293; *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989); *Velde v. First Int'l Bank & Trust (In re Y-Knot Constr., Inc.)*, 369 B.R. 405, 408 (Bankr. Fed. App. 2007).

merely sits at the lowest level of reasonableness, particularly when it is not in the best interests of the estate). Evidence should at least be summarized in the Amended Motion followed by the presentation of that evidence at any necessary hearing.

## IV.
## CONCLUSION

14. Neither Rule 9019(a) FBRP nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well-established and focus upon whether the proposed settlement is reasonable and in the best interests of creditors. In *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), the seminal case on approval of settlements in bankruptcy cases, the United States Supreme Court held that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, and explained as follows:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. *Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.*

309 U.S. at 424.

WHEREFORE, the Committee requests that the Debtor further plead the underlying facts and details that fully describe the reasons supporting the proposed settlement and circulate such pleading generally to creditors for their input and analysis and comments, and for such other and further relief to which the Committee may be justly entitled, both at law and in equity.

Respectfully submitted,

*/s/ Shelby A. Jordan*
Shelby A. Jordan
St. Bar No. 11016700; S.D. No. 2195
Antonio Ortiz
St. Bar No. 24074839; SD. No. 1127322
***JORDAN& ORTIZ, P.C.***
500 North Shoreline Drive, Suite 804
Corpus Christi, TX 78401
Telephone: 361.884.5678
Facsimile: 361.888.5555
Email: sjordan@jhwclaw.com
aortiz@jhwclaw.com
**ATTORNEY FOR THE UNSECURED CREDITORS' COMMITTEE**

**CERTIFICATE OF SERVICE**

I certify that on December 19, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

David R. Langston
Özen E. Zimmerman,
MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585

Attorneys for the Debtor, Garcia Grain Trading Corp. Debtor

Andrew Jimenez
U.S. Trustee's Office
606 N. Carancahua, Suite 1107
Corpus Christi, Texas 78476

All parties in the attached service list receiving notice via ECF in this case.

*/s/ Shelby A. Jordan*
Shelby A. Jordan