IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| GARCIA GRAIN TRADING CORP. | ) | CASE NO. 23-70028 |
| | ) | |
| DEBTOR. | ) | (CHAPTER 11) |

**BRIEF IN SUPPORT OF PLAN CONFIRMATION PROVIDING
FOR WAIVER OF ALL ACCEPTING PLAN CREDITORS**

TO THE HONORABLE EDUARDO RODRIGUEZ, UNITED STATES BANKRUPTY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") submits this Brief based upon this Court's judicial notice of the claims docket and the terms of the Debtor's Third Amended Plan of Reorganization [Dkt #762] (the "Plan") regarding the provisions for class waiver of preference actions against the Class of Unsecured Creditors, as follows:

**I.
PRELIMINARY STATEMENT**

1. One aspect of the proposed Plan is a provision waiving preference claims against creditors in a consenting class. In this case, Class 8 (bean unsecured creditors), Class 9 (farmers claims) and 11 (general unsecured claims) consist of 32 unsecured creditors, with 18 currently having claims that have not already had their preference claims waived (*e.g.*, Stony Ridge) that could be preference claims if pursued. At the time of confirmation, only one unsecured creditor objected to the Plan term waiving preference claims, that creditor itself reached a settlement in this case that waived 70% of its preference claim of approximately $550,000.00, in exchange for the agreement to deliver its product priced at retail. This sole creditor has now objected to the waiver of preference claims for all other similarly situated unsecured creditors. [*See*, Committee's Response to the Stony Ridge Objection to Confirmation, Dkt #827].

2.      **Exhibit "A"** is attached hereto and discussed in detail below, illustrates that 18 of the 35 creditors have transactions within 90 days, none of which have been found to be voidable. Additionally, creditors with $11,101,739 in allowed claims (including the preference payment treated as 100% returned and 100% collectible constitutes not less than 66% of the unsecured classes, with $3,802,575 without preference claims amounting to approximately 34% of the unsecured classes. The unsecured classes of creditors voted almost unanimously to accept the Plan (with only two rejecting votes, one of which preference claim *was waived previously* by this Court's order). With its preference claim waived, that creditor is now objecting to the class vote to accept the preference waiver provision, when in fact such a position is an effort to create and enforce unfair discrimination upon a class. [*See*, Committee's Response to the Stony Ridge Objection to Confirmation, Dkt #827].

3.      As set out below, waiver of preferences is frequently put before a class of unsecured creditors for a vote, with 66.66% controlling the decision. In this case less than 35% of the unsecured class of creditors do not have preference claims, and the 65% to 70% of the unsecured creditors (by dollar amount of claims) are subject to potential preference claims. This group of creditors are primarily made up of farmers and bean suppliers, *both critical to the post-confirmation operations of this Debtor's Plan Trust*. Without this group of farmers and vendor suppliers (all "critical vendors"), post-confirmation operations will be unsuccessful.

4.      More importantly, in this case the reason and purpose of waiving preference claims illustrates that the waiver does not materially impact the claims of non-preference unsecured creditors, even if the class vote could not control the decision (here the class vote has approved the preference waiver) simply because a creditor that pays a preference is then entitled to increase its claim to include the amount of preference actually paid into the estate.

## II.
## ANALYSIS OF PREFERENCE CLAIMS

5. The analysis of preference claims must begin with the practical side – is the target-creditor able to pay the preference in order to collect on its claim. Though not technically a defense and not described in the Bankruptcy Code or any case law, the "poverty" defense is based on practical realities. No analysis has been done of this defense because another "defense" is also available. Most all these creditors are "critical vendors" to the post-confirmation operation of the Plan Trust, without which there will be no successful operation. These creditors will either continue to supply their farm products to the Plan Trust or litigate their preference claims – but they will not do both (just as Stony Ridge refused to deliver its product unless its preference claim was waived).

6. Assuming arguendo, that notwithstanding the unfavorable outcome of the above preceding paragraph, the answer is to continue to pursue preference claims, next the analysis must turn to proving claims and avoiding defenses as a matter of costs of litigation administration and available proof. Frequently Trustees employ attorneys to handle preference claims in bulk on a contingent fee basis (generally from 33% to 40%, depending on the amount and number of potential claims the Trustee wants prosecuted). As to contingent fee preference prosecution, recoveries do not include attorney's fees, but do include reduction of the amount of recovery by the contingent fee amount.

7. A "preference" is defined by Section 547 of Title 11 of the United States Code (the "Bankruptcy Code"). Preferences can be reasonably simple or obtained by default while others are extremely complex in such cases as agricultural transactions. Defenses to preference claims include the following considerations and elements of proof:

1. Proof of a "transfer" of an interest of the debtor in property has occurred. A set-off, for example, is not a transfer.

2. The Bankruptcy Code does not define what constitutes an "interest of the debtor in property." Accordingly, courts ordinarily look to state law to determine whether the debtor had an interest in the property and proceeds from Agricultural transactions are governed by a number of state and federal farmer protections.

3. The Elements of a Preference:

    a. <u>On account of an "antecedent" debt</u>; - payment in accordance with credit terms is not an antecedent debt as to preferences. *Laws v. United Missouri Bank of Kansas City*, N.A., 98 F.3d 1047 (8th Cir. 1996), cert. denied, 520 U.S. 1168 (1997). An antecedent debt does not include payments in accordance with agreed terms, for example.

    b. The Transfer must be to or for the benefit of a creditor; and

    c. The Transfer must be made while the debtor was "insolvent;" and

    d. The Transfer must be made to a non-insider creditor, within 90 days of the filing of the bankruptcy; and

    e. The Transfer must have left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation.

The debtor or Trustee has the burden of proof of the claimed preference and if one element is missing, there is no preference. Also, proof of the insolvency and of the impact on the estate (what was given and what was received) require proof by professional accounting and valuation expert testimony.

8. In addition to proof of these preference elements there are significant defenses that may be raised requiring fact intensive and expert analysis. Generally, those defenses are as follows:

    A.    **The "contemporaneous exchange for new value" defense** - prevents the trustee from recovering payments that were actually intended to be contemporaneous exchanges for new value and were, in fact, substantially contemporaneous with the exchange of new goods, services, credit, or some other new value. The defense is meant to encourage creditors to continue to deal with financially distressed debtors, if only on a COD basis. *In re Jones Truck Lines, Inc.*, 130 F.3d 323 (8th Cir. 1997).

    B.    **The "subsequent new value" defense** - prevents a trustee from recovering a transfer as a preference where the creditor had extended new value in the form of credit sales of goods or services following the transfer because the creditor has repaid the estate for the preferential transfer. *In re Armstrong*, 291 F.3d 517 (8th Cir. 2002).

    C.    **The "ordinary course of business" defense** - prevents the trustee from recovering a payment as a preference when the payment was received by the creditor in the ordinary business terms of either the debtor and creditor or the debtor's industry and creditor's industry. The essential purpose of this exception is "to leave undisturbed normal financial relations because it does not detract from the general policy of the section to discourage unusual action by either the debtor or its creditors during the debtor's slide into bankruptcy." *Morrison v. Champion Credit Corp. (In re Barefoot)*, 952

F.2d 795, 801 (4th Cir. 1991).

D. **Grain sellers are afforded special protections**,[1] as are other participants in certain types of finance-industry transactions. See 11 U.S.C. § 546(d), (e), (f), (g). T

E. **Other Defenses:** These are not the only defenses to a claim of an avoidable preference but are the initial hurdle the Trustee must overcome.

## III.
## WAIVER OF PREFERENCE ACTIONS

9. Waivers of preference claims are common in the process of both administration of a bankruptcy estate (especially a reorganization as opposed to a liquidation). In this case, for instance, the Court has approved the "waiver" of 70% of the Stony Ridge unsecured claim as part of an overall decision to treat Stony Ridge as a "critical vendor" to the bean business needed to continue the bean and seed part of the Debtor's business. This is also the same issue raised in this Plan (and approved by the vast majority of unsecured creditors in this case) that the preference recipients are for the most part critical vendors to both the Debtor and the post-confirmation Plan Trust. Without a supply of farm products (grain, beans, and seeds) the post-confirmation resulting Plan Trust will not succeed. Waiving the preference is no different than what this Court approved in the Stony Ridge critical vendor settlement.

10. Likewise, as illustrated by the following cases, reorganization plans are frequently confirmed that waive preference claims (except as to Insiders and Affiliates of Insiders):

---

[1] "(d) In the case of a seller who is a producer of grain sold to a grain storage facility, owned or operated by the debtor, in the ordinary course of such seller's business (as such terms are define in section 557 of this title),… the rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common law right of such producer … to reclaim such grain or fish if the debtor has received such grain or fish while insolvent,…."

1. *In re Logistics Giving Res., LLC*, No. 22-20143, 2022 Bankr. LEXIS 1944, at *192 (Bankr. D. Utah July 14, 2022) confirmed its plan with the following provisions regarding waiving of preference claims.

> 6.2.1 Waiver of Right to Pursue Certain Chapter 5 Claims
> 6.2.1.1 *Waiver of Right to Pursue Certain Preference Actions*. Neither the Plan Administrator nor the Reorganized Debtor shall bring or prosecute Avoidance Actions against any creditor in Classes 1-4, 6-14, and 16-17 that accepts this Plan (either by affirmatively voting to accept the Plan or by not returning a ballot rejecting the Plan) and that does not object to confirmation of the Plan; provided, however, that the Plan Administrator shall have the right to bring and prosecute any Preference Claim or other Avoidance Action that is specifically identified in this Plan or the Disclosure Statement as a Preserved Claim.

2. *In re Crabtree & Evelyn, Ltd.,* No. 09-14267 (BRL), 2010 Bankr. LEXIS 3199, at *29 (Bankr. S.D.N.Y. Jan. 14, 2010) confirmed its plan with the following provisions regarding waiving of preference claims.

> Notwithstanding anything in the Plan or this Confirmation Order to the contrary, on the Effective Date, the Reorganized Debtor shall be deemed to waive and release any actions arising under section 547 of the Bankruptcy Code relating to any preference actions held by any Debtor or its Estate or any Reorganized Debtor against any Entity.

3. *In re Shane Co.*, No. 09-10367-HRT, 2010 Bankr. LEXIS 5590, at *28 (Bankr. D. Colo. Nov. 10, 2010) confirmed its plan with the following provisions regarding waiving of preference claims.

> XV. Waiver of Preference Actions. Except as otherwise provided in the Plan or the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, on the Effective Date, the Debtor and Reorganized Debtor waives all of its respective rights and interest in Preference Actions that it may hold against any Entity.

4. *In re Cabi Downtown LLC*, No. 09-27168-BKC-LMI, 2010 Bankr. LEXIS 5623, at *65-66 (Bankr. S.D. Fla. Nov. 17, 2010) confirmed its plan with the following provisions regarding waiving of preference claims.

III. Causes of Action to be Abandoned.

The Debtor's Estate shall abandon all claims and causes of action of the Debtor against third parties arising under Chapter 5 of the Bankruptcy Code, or arising under related federal or state statutes or common law, including fraudulent conveyance laws (the "Abandoned Causes of Action"). For the avoidance of doubt, the term "Abandoned Causes of Action" includes only those causes of action generally referred to as "preference" or "avoidance" actions and does not include all other pending or prospective litigation involving Cabi or the Debtor, and does not include any Transferred Causes of Action.

5.  *Dumas v. Research Testing Lab (In re EPI Prods.)*, 162 B.R. 1, 3-4 (Bankr. C.D. Cal. 1993) confirmed its plan with the following provisions regarding waiving of preference claims.

> *See In re Afco Dev. Corp.,* 65 Bankr. at 786. For example, he argues, the purpose of a Chapter 11 reorganization is the [**8] "salvage and rehabilitation of a financially distressed business, not necessarily . . . [the] recovery of voidable transfers." *See id.* In contrast, he asserts, once a Chapter 11 proceeding is converted to a Chapter 7 liquidation proceeding, the trustee must maximize and protect the value of the debtor's estate.
> This argument has some appeal. Given that the Chapter 11 trustee or debtor in possession must exercise considerable "discretion, judgment, diplomacy and creativity" to formulate and negotiate a plan of reorganization that the creditors will approve, it may be that filing an adversary proceeding to recover preferences might not be the best strategy in a Chapter 11 proceeding. *See id,* (Chapter 11 trustee [*4] may not have to litigate preference actions in every case; they may be dealt with by offsetting the creditor's preference against the dividend paid under the plan, or they may be settled or abandoned). In contrast, a Chapter 7 trustee might take a more aggressive stance than a Chapter 11 trustee to try to recover more money for the debtor's estate.

6.  Likewise, in *In re Sears Methodist Ret. Sys.*, No. 14-32821-11, 2015 Bankr. LEXIS 709, at *225 (Bankr. N.D. Tex. Mar. 5, 2015) the confirmed Plan Debtors agreed to waive preference claims under section 547 of the Bankruptcy Code against third-party, non-insider vendors, except for certain vendors whose identities will be disclosed in the Plan Supplement.

Part of the policy in waiving or abandoning preferences claims by Debtors is found in *In re Brook Mays Music Co.*, No. 06-32816-SGJ-11, 2007 Bankr. LEXIS 2902, at *4 (Bankr. N.D. Tex. Aug. 1, 2007):

Every bankruptcy case is different--what makes economic sense in one case may not make economic sense in another. But this court is troubled by a trend in large bankruptcy cases, in particular, of "preference litigation run amok" (*i.e.,* trustees and plan agents suing, with reckless abandon, every recipient of a transfer of property of the debtor that occurred within 90 days of the bankruptcy filing, with no consideration of obvious defenses, *what makes economic sense, or the underlying policies of the preference laws which, since Elizabethan times, have always been about promoting equality of distribution among similarly situated creditors and deterring overreaching*).  [Emphasis added.]

### IV.
### ANALYSIS OF THE IMPACT OF PREFERENCE CLAIM WAIVERS IN THIS CASE

11. The bankruptcy code has a self-collection provision that prohibits payments of dividends to a creditor receiving a preference, but such off-set of distributions only can occur after the preference claim and defenses have been adjudicated.  Any analysis of the precise impact of a waiver of preference claims must include how much in preference would be recovered, less the costs of recovery including the number of suits that would be necessary to accomplish the recovery.

12. Here, 18 potential preference claims[2] remain out of 34 total filed or allowed proofs of claims.  Analysis of the total allowed amount of the claims of these 18 show that more than 60% of the unsecured creditors would pay a preference and have their claims increased by the preference amount paid ("Total Claims & Preferences").  Thus, not only would 60% of the preference creditors receive back their preference payment in part, but also 39% would receive a distribution greater than their initial allowed claim.  However, and because the estate has little funds to pursue these complex preference claims, likely the Chapter 7 trustee would retain counsel on a contingency, assuming for purposes of these calculations 33%.  Thus, the Net recovery (assuming 100% success on proving every preference claim and 100% collections) would be less

---

[2] This number does not include the largest and close to the largest creditors with preference claims settled during the administration of the case (Stoney Ridge) and as part of the Plan (GrainChain).  Of those two creditors having the bulk of their preference claims waived, Stony Ridge now objects to the confirmation of the Plan, in part based on the waiver of the other creditors' preference claims.

33% of the preferences paid in ($1,871,663), or a net of $3,800,042.86, of which 61% would be paid to the preference holders themselves in allowed claims *vs.* the $3,802,575 allowed to the non-preference creditors.  See, **Exhibit "A"** attached hereto.

13. Although this amount is the maximum possible recovery to the 33% to 34% of the class of non-preference claimants, the reality is that many preference claims in the agriculture business are not easily recoverable.  Likewise, far greater than the minimum 66% majority of the class has approved the Plan that eliminates the costs, uncertainty, and contingent nature of the preference litigation and allows for fair and equal treatment.  That class has approved the Plan and approved the waiver, with only one exception at the time of confirmation as to Class 8 (separately classified not because of a dissimilar unsecured claim, but solely to administratively distinguish between the bean *vs.* the grain and seed nature of the claims and operations.

## V.
## CONCLUSION

14. It is undisputed that the Class 9 and Class 11 unsecured creditors have voted to approve the Plan and the plan term waiving preferences.  That provision is proper, and frequently used (as was used in this Court) for economic reality reasons.  The vote in Class 8 is not the vote of a dissimilar class of unsecured creditors, and the combined votes of Class 9 and 11 dwarf the voting in Class 8 that themselves in number approved the waiver of the preference through approval of the Plan.  In any event, the Plan provision waiving preferences is fair and equitable and unless Stony Ridge is given special treatment, does not discriminate against any other similar situated creditor.

Wherefore, and based on these reasons set out above, the Official Unsecured Creditors Committee supports the Plan as a Co-Proponent and seeks an order confirming this Plan over the objection of Class 8 Stony Ridge, and for such other relief and the Committee may be justly

entitled, at law and in equity.

Dated: March 27, 2024

                                      */s/ Shelby A. Jordan*
                                      Shelby A. Jordan
                                      St. Bar No. 11016700; S.D. No. 2195
                                      Antonio Ortiz
                                      St. Bar No.  24074839;  SD. No. 1127322
                                      ***JORDAN& ORTIZ, P.C.***
                                      500 North Shoreline Drive, Suite 804
                                      Corpus Christi, TX 78401
                                      Telephone: 361.884.5678
                                      Facsimile:   361.888.5555
                                      Email:       sjordan@jhwclaw.com
                                                        aortiz@jhwclaw.com
                                      **ATTORNEY FOR THE UNSECURED CREDITORS' COMMITTEE**

## CERTIFICATE OF SERVICE

I certify that on March 27, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

David R. Langston
Özen E. Zimmerman,
MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585

Attorneys for the Debtor, Garcia Grain Trading Corp. Debtor

Andrew Jimenez
U.S. Trustee's Office
606 N. Carancahua, Suite 1107
Corpus Christi, Texas 78476

All parties in the attached service list receiving notice via ECF in this case.

                                      */s/ Shelby A. Jordan*
                                      Shelby A. Jordan

**ECF SERVICE LIST**

Steven Michael Beauchamp on behalf of Creditor Harco National Insurance Company
sbeauchamp@drylaw.com, filings@drylaw.com;1371728420@filings.docketbird.com

Donald Christopher Carson on behalf of Creditor StoneX Commodity Solutions, LLC
ccarson@burr.com, mgunnells@burr.com

Jose Luis Caso on behalf of Interested Party Rio Beef Beefyard, Inc.
jcaso@casolawfirm.com, mberumen@casolawfirm.com

Steven Gerard Cennamo on behalf of Creditor Graneros Guadalupe SA DE CV
scennamo@cennamowernerlaw.com

Catherine Stone Curtis on behalf of Creditor Grainchain, Inc.
ccurtis@mcginnislaw.com, mgarcia@mcginnislaw.com;csc@trustesolutions.net;ccsc11@trustesolutions.net

Catherine Stone Curtis on behalf of Creditor Grainchain, Inc.
ccurtis@pulmanlaw.com, ecf@pulmanlaw.com,mgarcia@pulmanlaw.com

Russell Alan Devenport on behalf of Creditor Frank Bailey Grain Company Inc.
rad@mcdonaldlaw.com, tms@mcdonaldlaw.com

Demetrio Duarte, Jr on behalf of Debtor Garcia Grain Trading Corp.
dduarte@duartelawfirm.com, fmorgan@duartelawfirm.com

Demetrio Duarte, Jr on behalf of Stockholder Octavio Garcia
dduarte@duartelawfirm.com, fmorgan@duartelawfirm.com

Robert L. Ginsburg on behalf of Creditor Frank Bailey Grain Company Inc.
rlg@mcdonaldlaw.com

John Wallis Harris on behalf of Creditor South of the Border, LLC
jwharris@johnwharrislaw.com, jwharris@johnwharrislaw.com

Richard Edward Haynes, II on behalf of Creditor Falcon International Bank
rhaynes@thlaw.us, ilara@thlaw.us

Jose Wilfredo Hernandez on behalf of Interested Party Fausto Salinas & F&T Farms & Cattle Co.
jwh@jwhernandezlaw.com, jose-w-hernandez-5362@ecf.pacerpro.com;bb@lojwhlaw.com;acano@lojwhlaw.com

Nathaniel Peter Holzer on behalf of Creditor Forest River Bean Co., Inc.
pete@npholzerlaw.com

David W. Houston, IV on behalf of Creditor StoneX Commodity Solutions, LLC
dhouston@burr.com, tneely@burr.com;mgunnells@burr.com

Andrew Jimenez on behalf of U.S. Trustee US Trustee, 11
andrew.jimenez@usdoj.gov

Donald Anthony Kaczkowski on behalf of Creditor Frank Bailey Grain Company Inc.
donald@mcdonaldlaw.com

David R Langston on behalf of Debtor Garcia Grain Trading Corp.
drl@mhba.com, memert@mhba.com;rtownsend@mhba.com;ozimmerman@mhba.com

David R Langston on behalf of Plaintiff Garcia Grain Trading Corp.
drl@mhba.com, memert@mhba.com;rtownsend@mhba.com;ozimmerman@mhba.com

David J Lumber on behalf of Creditor Eat Fresh Farms
dlumber@guerralawgroup.com, awhite@guerralawgroup.com

Brent W. Martinelli on behalf of Creditor Simplot AB Retail, Inc. d/b/a Simplot Grower Solutions
brent.martinelli@qpwblaw.com, christina.rios@qpwblaw.com

Jeremy M. Masten on behalf of Creditor Lothringer Family Farms LLC
jeremy@themastenlawfirm.com

David C McLaughlin on behalf of Creditor Stoney Ridge Food, Inc.
dmclaughlin@fluegellaw.com, lberkner@fluegellaw.com;cbackman@fluegellaw.com

Layla Milligan on behalf of Interested Party Texas Department of Agriculture
layla.milligan@oag.texas.gov

Christopher S Murphy on behalf of Creditor Texas Comptroller of Public Accounts, Revenue Accounting Division
bk-cmurphy@oag.texas.gov, sherri.simpson@oag.texas.gov

Brad W Odell on behalf of Debtor Garcia Grain Trading Corp.
bodell@mhba.com, memert@mhba.com;mreynolds@mhba.com

J Scott Rose on behalf of Creditor KH Ranch
srose@jw.com, kgradney@jw.com

J Scott Rose on behalf of Creditor Prukop Farms
srose@jw.com, kgradney@jw.com

J Scott Rose on behalf of Creditor Sarge Farms, LLC

srose@jw.com, kgradney@jw.com

J Scott Rose on behalf of Creditor Starr Feedyards LLC
srose@jw.com, kgradney@jw.com

J Scott Rose on behalf of Creditor White Rock Farms
srose@jw.com, kgradney@jw.com

J Scott Rose on behalf of Creditor Alex Keller
srose@jw.com, kgradney@jw.com

Andrew Karl Rozell on behalf of Creditor Brian Jones Farms
akrlaw@xanadu2.net, akrlawharlingen@gmail.com

Andrew Karl Rozell on behalf of Creditor HAR-VEST
akrlaw@xanadu2.net, akrlawharlingen@gmail.com

Andrew Karl Rozell on behalf of Creditor Russell Plantation II d/b/a Russell Plantation
akrlaw@xanadu2.net, akrlawharlingen@gmail.com

Andrew Karl Rozell on behalf of Creditor Skalitsky Farms
akrlaw@xanadu2.net, akrlawharlingen@gmail.com

Andrew Karl Rozell on behalf of Creditor Zdansky Joint Venture
akrlaw@xanadu2.net, akrlawharlingen@gmail.com

Andrew Karl Rozell on behalf of Creditor Carl Hensz
akrlaw@xanadu2.net, akrlawharlingen@gmail.com

Andrew Karl Rozell on behalf of Creditor Wesley Valerius
akrlaw@xanadu2.net, akrlawharlingen@gmail.com

Rudy Salinas, Jr on behalf of Creditor Chad Szutz
rsalinas@jgkl.com, rsalinas@jubileebk.net;nramirez@jgkl.com

Rudy Salinas, Jr on behalf of Creditor Johnny Guin
rsalinas@jgkl.com, rsalinas@jubileebk.net;nramirez@jgkl.com

Rudy Salinas, Jr on behalf of Creditor Karen Arnold
rsalinas@jgkl.com, rsalinas@jubileebk.net;nramirez@jgkl.com

Diane Wade Sanders on behalf of Creditor Cameron County
austin.bankruptcy@publicans.com

Diane Wade Sanders on behalf of Creditor City Of Donna
austin.bankruptcy@publicans.com

Diane Wade Sanders on behalf of Creditor Hidalgo County
austin.bankruptcy@publicans.com

Diane Wade Sanders on behalf of Creditor Lyford CISD
austin.bankruptcy@publicans.com

Diane Wade Sanders on behalf of Creditor Willacy County
austin.bankruptcy@publicans.com

Vicki M Skaggs on behalf of Creditor Grainchain, Inc.
vmscourt@atlashall.com, crtnot@atlashall.com;jcummings@atlashall.com

Vicki M Skaggs on behalf of Creditor Vantage Bank Texas
vmscourt@atlashall.com, crtnot@atlashall.com;jcummings@atlashall.com

John Kurt Stephen on behalf of Creditor StoneX Commodity Solutions, LLC
kurt@kstephenlaw.com, myecfmail5@gmail.com;veronica@kstephenlaw.com;Vicky@kstephenlaw.com

Donald L Turbyfill on behalf of Creditor Ford Motor Credit Company LLC
dturbyfill@dntlaw.com

Ronald Lee Turbyfill, Jr on behalf of Creditor Ford Motor Credit Company LLC
lturbyfill@dntlaw.com

Mark Alan Twenhafel on behalf of Creditor Dreibelbis Farms
ecf@twenhafel-law.com, ecf@rgvlawyers.com

US Trustee, 11
USTPRegion07.SN.ECF@usdoj.gov

Antonio Villeda on behalf of Creditor Fike Farms
avilleda@mybusinesslawyer.com, VilledaFiled@hotmail.com;villedalawgroup@ecf.courtdrive.com;ccheatham@mybusinesslawyer.com;ehury@mybusinesslawyer.com;info2@mybusinesslawyer.com;mfsantos@mybusinesslawyer.com

Antonio Villeda on behalf of Defendant WNGU Properties, LLC
avilleda@mybusinesslawyer.com, VilledaFiled@hotmail.com;villedalawgroup@ecf.courtdrive.com;ccheatham@mybusinesslawyer.com;ehury@mybusinesslawyer.com;info2@mybusinesslawyer.com;mfsantos@mybusinesslawyer.com

Antonio Villeda on behalf of Defendant Rodolfo Plascencia, Sr.
avilleda@mybusinesslawyer.com, VilledaFiled@hotmail.com;villedalawgroup@ecf.courtdrive.com;ccheatham@mybusinesslawyer.com;ehury@mybusinesslawyer.com;info2@mybusinesslawyer.com;mfsantos@mybusinesslawyer.com

Kay Baezner Walker on behalf of Other Prof. Richard Schmidt
kaywalker@kaywalkerlaw.com

Jennifer F Wertz on behalf of Creditor Helena Agri Enterprises, LLC
jwertz@jw.com, kgradney@jw.com;jpupo@jw.com;steso@jw.com;dduhon@jw.com

Elias Marwan Yazbeck on behalf of Creditor Grainchain, Inc.
eyazbeck@mcginnislaw.com, mleonard@mcginnislaw.com;cosborn@mcginnislaw.com;clinscomb@mcginnislaw.com;jolson@mcginnislaw.com

# EXHIBIT "A"

| Name of Unsecured Creditor | Amount of Claim (POC) | No Preference | No Preference Amount | Claim subject to Preference | Preference |
|---|---|---|---|---|---|
| Brian Jones Farms (POC #19) | $69,441.82 | | | $69,441.82 | $84,749.45 |
| Carl Hensz (POC #22) | $90,273.78 | | | $90,273.78 | $50,000.00 |
| Chad Szutz (POC #24) | $51,020.56 | X | $51,020.56 | | |
| Dreibelbis Farms (POC #35) | $283,216.70 | X | $283,216.70 | | |
| Eat Fresh Farms (POC #13) | $58,294.41 | | | $58,294.41 | $71,719.26 |
| Fike Farms (POC #32) | $345,755.88 | | | $345,755.88 | $545,133.35 |
| Frank Bailey Grain Company (POC #33) | $653,585.11 | | | $653,585.11 | $639,760.01 |
| Johnny Guin (POC #25) | $110,085.65 | X | $110,085.65 | | |
| Karen Arnold (POC #26) | $99,857.39 | X | $99,857.39 | | |
| Lothringer Family Farms (POC #46) (Late) | $63,143.69 | | | $63,143.69 | $29,752.13 |
| Planters Grain Cooperative of Odem, TX (POC #34) | $255,696.00 | | | $255,696.00 | $253,306.55 |
| Robert Walsdorf (POC #43) | $543.76 | X | $543.76 | | |
| Russell Plantation II (POC #11) | $660,694.85 | | | $660,694.85 | $266,067.96 |
| Skalitsky Farms (POC #29) | $142,367.47 | | | $142,367.47 | $1,775,924.37 |
| Wesley Valerius (POC #28) | $111,969.52 | | | $111,969.52 | $180,302.61 |

| Name of Unsecured Creditor | Amount of Claim (POC) | No Preference | No Preference Amount | Claim subject to Preference | Preference |
|---|---|---|---|---|---|
| Zdansky Joint Venture (POC #17) | $339,264.93 | X | $339,264.93 | | |
| Wesley Vanderpool (POC #52) | $60,000.00 | | | $60,000.00 | $60,000.00 |
| Attebury Grain, LLC | $58,821.21 | | | $58,821.21 | $107,040.06 |
| Cadena Farms | $13,797.49 | | | $13,797.49 | $66,276.15 |
| Luna Brothers | $40,453.65 | | | $40,453.65 | $395,987.05 |
| Stony Ridge Food, Inc. (POC #31 Amended) | $1,439,027.75 | | | $1,439,027.75 | $733,281.27 |
| Forest River Bean Co. (POC #48) | $546,781.29 | | | $546,781.29 | $155,817.75 |
| PKT Associates, Inc. | $52,199.49 | X | $52,199.49 | | |
| Graneros Guadalupe SA de CV (POC #27) | $506,334.56 | X | $506,334.56 | | |
| Helena Agri-Enterprises, LLC (POC #16) | $518,134.08 | | | $518,134.08 | $117,521.76 |
| Simplot AB Retail (POC #23) | $217,537.13 | X | $217,537.13 | | |
| United Sorghum Checkoff Program (USCP) (POC #20) | $301,795.30 | | | $301,795.30 | $139,066.74 |
| Valley Coop Mill (VALCO) (POC #21) | $115,201.99 | X | $115,201.99 | | |
| BH Genetics | $228,960.00 | X | $228,960.00 | | |

| Name of Unsecured Creditor | Amount of Claim (POC) | No Preference | No Preference Amount | Claim subject to Preference | Preference |
|---|---|---|---|---|---|
| BWAB Mexico S De RL CV AV (POC #53) | $303,353.00 | X | $303,353.00 | | |
| Manuel Ramíro Sànchez (POC #50 and #51) | $495,000.00 | X | $495,000.00 | | |
| Prosesadora De Alimentos Integrales SA (POC #54) | $1,000,000.00 | X | $1,000,000.00 | | |
| TOTALS CLAIMS | $9,232,608.46 | | $3,802,575.16 | $5,430,033.30 | $5,671,706.47 |
| TOTAL Creditors | 32 | | | | |
| TOTAL Preferences creditors | 18 | | | | |