IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **GARCIA GRAIN TRADING** | § | **Case No. 23-70028-EVR-11** |
| **CORP.,** | § | |
| | § | |
| **Debtor.** | § | |

**DEBTOR'S AGREED EMERGENCY MOTION TO MODIFY AND CONFIRM
DEBTOR'S MODIFIED AND SUPPLEMENTED THIRD AMENDED
CHAPTER 11 PLAN OF REORGANIZATION**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an expedited basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the expedited consideration is not warranted, you should file an immediate response.**

**(Emergency Relief Needed by March 28, 2024)**

TO THE HONORABLE EDUARDO V. RODRIGUEZ, U.S. Bankruptcy Judge, all Creditors and Parties in Interest:

NOW COME, GARCIA GRAIN TRADING CORP., (the "Debtor") the Debtor and Debtor in Possession in the above-referenced bankruptcy proceeding, and files this Agreed Motion to Modify and Confirm Debtor's Modified and Supplemented Third Amended Chapter 11 Plan of Reorganization (the "Motion"), and in support of such Motion the Debtor would respectfully show

the Court as follows:

# I.
# BACKGROUND

1.      The Debtor filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on February 17, 2023 (the "Petition Date").

2.      On February 21, 2024, the Court entered an Amended Order Fixing Time for Filing Acceptances or Rejections of Plan Combined with Notice Thereof [Docket #749] (the "Order')

3.      On February 26, 2024, the Debtor filed its Modified and Supplemented Third Amended Chapter 11 Plan of Reorganization (Docket #762) (the "Plan").

4.      The Debtors complied with the directions of the Court as set out in its Order, and sent to all creditors a plan packet on February 28, 2024, which included a copy of the Order, a copy of the Plan, a copy of Debtor's Modified and Supplemental Third Amended Disclosure Statement to Accompany Debtor's Modified and Supplemental Third Amended Plan of Reorganization [Docket #763] and a Ballot for Accepting or Rejecting the Plan to vote on confirmation of the Plan. The deadline for submitting ballots expires on March 26, 2024, and the majority of creditors have either voted in favor of confirmation of the plan, or through discussions between counsel for the Debtor and counsel for the various creditors are willing to change their vote to favor confirmation based upon certain modifications to the Plan as are set forth in this Motion.

5.      The deadline to object to confirmation of the Plan was March 21, 2024, and two creditors have filed objections to the Plan – Stony Ridge Foods, Inc. [Docket # 802] and Forest River Bean Co. [Docket #804].

6.      The Debtor, after conferring with counsel for Stony Ridge on multiple attempts, proposes modifications to the treatment to be afforded Stony Ridge Foods, Inc. ("Stony Ridge") and

Forest River Bean Co. ("Forest River") to clarify the amount of their respective Allowed Unsecured Claims in the Plan following the approval by the Court of the settlements, as well as the extinguishments and releases of preferences asserted against each of them and to make clear that such allowed claims are treated in a fair and equitable and non-discriminatory manner  with the claims of all other Unsecured Creditors under the treatment to be afforded the claims in Class 11 of the Plan. Furthermore, Debtor's counsel has also proposed modifications to address the objections raised by Stony Ridge to make certain other clarifying amendments to the Plan to correct scrivener's errors in the Plan as they relate to the payments to be made from the Plan Trust out of the Net Distributable Income of the New Co. entity created pursuant to the provisions of the Plan, the rights of the Plan Agent to sell certain tracts of real estate during the term of the Plan and distribute the net after-tax proceeds to the holders of the non-recourse notes issued in favor of GrainChain, the Unsecured Creditors, and Harco National Insurance Company, and the obligation of GrainChain to pay its share of the administrative expenses of the Plan Trust following confirmation.

7.     Additionally, Debtor's counsel has reached agreements with Octavio Garcia and his related entities about the releases Octavio and  Gabriela Garcia along with their related entities ("Non-Debtor Entities")[1] will be receiving from StoneX Commodity Solutions, LLC ("StoneX"), Vantage Bank Texas ("Vantage"), Harco National Insurance Company ("Harco"), Falcon International Bank ("Falcon"), and GrainChain Inc. ("GrainChain") in exchange for:

 (i) Non-Debtor Entity(ies) contribution of certain real property interests (the "Garcia-Balli Properties ")  to the Plan Trust;

(ii) together with also conveying PSG's Moore Farms and PSG's Emory Farms to the Plan

---

1 "Non-Debtor Entities" means any entity not the Debtor, including but not limited to any insider entity and/or affiliate of the Debtor.

Trust for the benefit of the three note holders (GrainChain, Harco and the Unsecureds);

(iii) certain conveyances to New Co.; and

(iv) the execution of non-compete agreements with Octavio Garcia, Gabriela Garcia , Rene Izaguirre, Garba, LLC, and certain of the Debtor's other insiders and affiliates agree not to compete with New Co. during the first five years of its operations,  and Octavio Garcia's , Gabriela Garcia's and Garba's  commitment to work on behalf of the bean enterprise during the 5-year term of the Plan.

The contributions in this paragraph and as further detailed in this Motion and Order exclude cash and other Debtor-contributed assets to the Plan Trust as outlined in the Plan[2].

8.      Further, this Motion seeks to address the modifications to the Plan requested by the Texas Department of Agriculture ("TDA") clarifying that upon the receipt of the consideration to be given to StoneX and Vantage through the payment of funds from the Plan Trust that any claims they hold against the Surety Bonds issued by Harco will be fully extinguished and discharged.

9.      Finally, the Debtor, Octavio and Garbriella Garcia, their related-entities, PSG Products, LLC, Garcia-Balli, Ltd., and Val Verde Grain Holdings, along with StoneX, Vantage, the Official Unsecured Creditors Committee, and GrainChain, have reached agreements pertaining to the way the tax consequences that may be associated with the contribution of the New Co. Properties, the Preference Properties and the Garcia-Balli Properties will be handled by the Plan Trust, and modifications to the Plan to implement such agreements are also proposed in this Motion.

10.     The exact nature of the various modifications is summarized in more detail below. Upon approval of the Court of these proposed modifications, all these parties, save and except for Forest River and Stony Ridge, will be voting in favor of confirmation of the Plan and bound by its

terms.

# II.
## MODIFICATIONS TO THE AMENDED PLAN

11.     The Debtor proposes the following modified treatment of Stony Ridge and Forest River in Section (III). Classification and Treatment of Unsecured Claims, Paragraph H. Class 8 - Unsecured Bean Claims, Paragraph B by which the Plan language will more clearly implement the terms and conditions of the Compromise and Settlement Agreements approved by the Court settling the alleged preferences asserted against them and establishing the amount of their respective Allowed Unsecured Claims along with the treatment to be afforded each in Class 11 of the Plan. These amendments to the Plan language are as reflected below:

a.     On page 67 of the Plan delete the currently existing language under the heading, "**B. The Unsecured Bean Claim of Stony Ridge Food, LLC (POC #31)**" and replace it with the following:

**B.      The Unsecured Bean Claim of Stony Ridge Food, LLC (POC #31):**

Stony Ridge Food, Inc. ("Stony Ridge"), pursuant to the provisions of a Compromise and Settlement Agreement approved by the Bankruptcy Court [Docket #716], has an Allowed Unsecured Claim in the amount of $1,220,000 and Stony Ridge has now amended its claim to reflect this amount. In exchange for the agreement of the Debtor obtaining recognition of Stony Ridge as a "critical vendor" and settling the preference claims by offsetting approximately 30% of the amount of the claimed preferences against its claim, Stony Ridge will continue to supply the Debtor with black beans at a price and upon terms to be mutually agreed upon between Stony Ridge and the Debtor.

b.     On page 67 of the Plan following the language under the heading, "**B.      The Unsecured Bean Claim of Stony Ridge Food, LLC (POC #31)**" add an additional paragraph as follows:

**C.      The Unsecured Bean Claim of Forest River Bean Co. (POC #48):**

Forest River Bean Co. ("Forest River"), pursuant to the provisions of a Compromise and Settlement Agreement approved by the Bankruptcy Court [Docket #717], has an Allowed Unsecured Claim in the amount of $546,781, and Forest River has agreed to amend its claim to reflect this amount. The

section of the preference grid on page 66-67 that describes potential preference claims against Forest River are modified to add the following: "Notwithstanding anything to the contrary in the Plan or Disclosure Statement, all preference claims against Forest River were extinguished and released."

D.     TREATMENT OF UNSECURED BEAN CLAIMS

c.     On page 67 of the Plan following the language to be added as set forth above in paragraph b. under the heading "**C.   The Unsecured Bean Claim of Forest River Bean Co. (POC #48)**," strike the existing paragraph under the heading, "**Treatment of Unsecured Bean Claims**" and replace it with the following:

**Treatment of Unsecured Bean Claims**

The Allowed Unsecured Claims of the creditors classified as Unsecured Bean Claims are treated in a non-discriminatory, fair and equitable manner, and in compliance with the absolute priority rule, along with the Claims of General Unsecured Claims in Class 11 as described hereinbelow and share *pro rata* with the holders of General Unsecured Claims from the distributions made by the Plan Agent to participants in the Unsecureds Note to be paid 45% of the Distributable Net Income of New Co. and 45% from the net after tax sales proceeds of the New Co. Properties or the Preference Properties.

d.     At the top of page 76, following the chart summarizing the asserted preference claims and before the heading, "**(IV) UNSECURED CLAIMS OF HARCO (Class 12)**" and the description of its claim and treatment, to remove any doubt concerning the treatment of General Unsecured Claims insert the following heading and language:

**Treatment of General Unsecured Claims**

The provisions of the Plan generally provide that GrainChain which upon confirmation of the Plan will have an Allowed Unsecured Claim of **$7,841,054.99**, the General Unsecured Creditors, (excluding creditors in Class 10 – Administrative Convenience Class), consisting of **Class 8** (Unsecured Bean Claims) in the estimated total amount of **$1,922,627,75**; **Class 9** (Unsecured Farmers' and Grain Claims) in the estimated total amount of **$3,366,409.34**); and **Class 11** (General Trade Claims) in the estimated amount of **$3,749,475.27**) which all together add up to the total estimated sum of **$9,038,512.36**), and Harco with a contingent, unliquidated claim in the amount of the actual dollar amount received by the Plan Trust and/or Debtor paid on the bonds, estimated to be $1,748,750 and not to exceed **$2,402,704.00** are each granted a lien against the New Co. Property and Preference Property (which expressly includes PSG's Moore Farms and PSG's Emory Farms) in the amounts of their respective percentages – i.e., GrainChain a 45% lien to secure the payment of its claim of $7,841,054.99, the holders of General Unsecured Claims a 45% lien to secure the payment of its estimated claims of $9,038,512.36, and Harco a 10% lien to secure the payment of its contingent unliquidated claim in the amount $2,402,704.00. The Plan Agent will endeavor to market and sell the Preference Property conveyed into the Plan Trust as soon as possible while still trying to maximize the value of the Trust Assets.  If a dispute arises regarding the proposed sales price by the

Plan Agent, such dispute will be resolved by the Bankruptcy Court.   Generally, in accord with the terms of the Plan and as described and incorporated in the Intercreditor Agreement, the New Co. Property may be sold under the circumstance described therein following 24 months of operations, but must be sold at the conclusion of the 5-year term of the Plan and the net proceeds realized from the sales paid out to the Unsecured Creditors and Harco and GrainChain in their respective percentages in an effort to fully pay and extinguish their Notes, only if at the end of the 5-years the Unsecureds and Harco's note have not been paid in full.   But in no event shall any Note be paid in an amount greater than the balance then-owing on the Note at the time of the sale.

The division and distribution of Net Disposable Income from the operations of New Co. shall be in accord with the provisions established in the Intercreditor Agreement to be executed by the Plan Agent which similarly provides for a 45%-10%-45% split. In this regard, each of the holders of General Unsecured Claims shall each receive their respective share of the Net Distributable Income from the operations of New Co. in relation to the amount their claims constitute a percentage of the total amount of the General Unsecured Creditors Class.

e.      In order to correct scrivener's errors with respect to the definition of Net Distributable Income or "DNI" in place of the word, "profits" or the term "after tax profits," strike those terms where they appear and replace them with DNI in the following places:

- On page 21 in the third full paragraph on the last line, replace "profits" with "DNI";
- On the last line in the first full paragraph on page 25, replace "after tax net profits" with "DNI";
- On page 27 in the seventh full paragraph on the third line, replace "after tax net profits" with "DNI";
- In the last line of the first paragraph on page 40, replace "profits" with "DNI"
- ; and
- On page 80 in paragraph 12, replace the term "After Tax Net Profits" with "DNI."

f.      To make clear that GrainChain will be required under the terms of the Plan Trust Agreement to pay its fair share of the administrative expenses of the Plan Trust, on page 55 of the   Plan at the end of the third paragraph add a new sentence as follows:

"GrainChain shall be obligated to pay its percentage share (45%) of the administrative expenses of the Plan Trust as more fully set forth and described in the paragraph below for its fair share of such expenses."

12.      Counsel for the Debtor and counsel for Octavio and Gabriela Garcia and their related entities have worked to negotiate modifications of the Plan to clarify the releases they will be entitled to receive conditioned upon their contributions of cash and real estate either owned in their own names or in the names of other entities into which title to the property was placed.   The

principal terms of the agreement between the Debtor and Octavio and Garbriela Garcia and their related entities is for them to contribute the required cash and real property as defined in paragraph 7, above, to the Plan Trust and for such Trust Assets to be used by the Plan Agent to consummate the settlements described under the terms of the Plan between the major creditors, StoneX, Vantage, Harco, TDA, GrainChain and the Debtor. The proposed modifications below also address the requested changes of the TDA with respect to StoneX and Vantage transferring and assigning their Warehouse Receipts and any claims associated with the Surety Bonds executed by Harco in favor of the TDA and releasing Harco and TDA upon the receipt of the consideration described for the treatment of their claims in the Plan. To achieve these objectives and clarify the consideration to be paid for the releases on page 24 of the Plan after the heading "Equity Holders Treatment," the following language is proposed:

### EQUITY HOLDERS TREATMENT

As the Plan generally provides, all prepetition equity in the Debtor shall be cancelled and terminated as of the Effective Date. The Debtor, Garcia Grain Trading Corp. 's assets are transferred to the Plan Trust. The current stockholders of the Debtor are Octavio and Gabriela Garcia, Baldermar Salinas, and Rene Izaguirre. Upon consummation of the Plan, they will no longer have any ownership interest in the Debtor. The Plan, however, contemplates certain releases of Octavio and Gabriela Garcia, along with their related entities, PSG Products, LLC and Garcia Balli, Ltd., in exchange for (i) Garcia-Balli Properties to the Plan Trust, (ii) together with also conveying PSG's Moore Farms and PSG's Emory Farms to the Plan Trust for the benefit of the three note holders (GrainChain, Harco and the Unsecureds), (iii) certain conveyances to New Co., and (iv) the execution of non-compete agreements with Octavio Garcia, Gabriela Garcia , Rene Izaguirre, Garba, LLC, and certain of the Debtor's other insiders and affiliates wherein they agree not to compete with New Co. during the first five years of its operations, and Octavio Garcia's, Gabriela Garcia's, and Garba's commitment to work on behalf of the bean enterprise during the 5-year term of the Plan , to enable the Plan Agent to carry out the terms of settlement agreements negotiated between the Debtor and StoneX, Vantage, Harco, TDA, and GrainChain. In this regard, the following conditions must be met for the settlements to be implemented:

a.      StoneX must be paid a minimum of $12,500,000 by December 31, 2024. The Plan provides an initial payment in the amount of not less than $10,000,000 must be made on or before September 30, 2024. It has already received $3,550,402 from the funds in the Grain Escrow Account and such sum will be counted toward the $10 million due by September 30, 2024.

The balance of the $10 million payment to be made to StoneX by September 30, 2024, will be made from contributions to the Plan Trust realized by the sale of real estate owned by Octavio Garcia as well as certain assets titled in the name of Garcia-Balli, Ltd., an entity owned and controlled by him, and his wife currently known herein as the Garcia-Balli Properties and described as the South Padre Island Condominium, the Toluca Ranch Tracts, Moore Farm South, and the Huffman Farm Tracts. Some of this real estate has already been sold and the net proceeds can be paid into the Plan Trust in such cases. Unless a tract of real property  is the subject of a valid contract of sale with earnest money receipted by a title company as described in more detail below in this Motion, the balance of the real property must be conveyed into the Plan Trust on or before the Effective Date. Appropriate tax avoidance transactions can be taken to minimize the tax impact and maximize the funds realized from these properties for the benefit of the Plan Trust. Provided StoneX receives a minimum of $12.5 million from the sources set out in its treatment under the Plan, Octavio and Gabriela Garcia, their related entities, and Stone X will grant each other mutual releases of any and all claims, known or unknown, that they may have as to each other, their officers, directors, representatives, employees, shareholders, agents and attorneys , and upon the completion of the Plan treatment of StoneX as described in the Plan, including but not limited to the right of StoneX to receive up to $13,000,000 from the Plan Trust Assets, and, upon StoneX's assignment and release of its claims associated with the Surety Bonds issued by Harco in favor of TDA by transferring the Warehouse Receipts to the Plan Trust, StoneX and Octavio Garcia shall jointly file a motion to dismiss the lawsuit it has brought to collect against the personal guarantee of Octavio Garcia, or shall otherwise by agreement conclude the lawsuit or arbitration, then existing.

b.  Under the terms of the Vantage settlement set forth in the Plan, the Donna Facility, titled in the name of Val Verde Grain Holdings, a Texas general partnership, ("Val Verde Grain") shall be sold free and clear of all liens to Vantage, or its designated nominee. Debtor, CRO, Plan Trust/Trustee, and Val Verde Grain and its partners (Gabriela Garcia, Baldemar Salinas, and Rene Izaguirre) have approved the Plan, and such approval of the Plan evidences their consent to the Donna Facility property sale, and they shall timely execute any and all documentation necessary to effectuate such sale to Vantage or its designated nominee.

After Vantage has acquired the Donna Facility, free and clear of all liens, Vantage will release any and all claims, known or unknown, that it may have as to Val Verde Grain, Baldemar Salinas, and Rene Izaguirre with regard to the Garcia Grain promissory notes owing to Vantage as reflected in Vantage's proof of claim filed in this Bankruptcy ("Garcia Grain Notes"). Val Verde Grain, Baldemar Salinas, and Rene Izaguirre will release any and all claims, known or unknown, that they may have as to Vantage Bank Texas, its officers, directors, representatives, employees, shareholders, agents, and attorneys relating to the Garcia Grain Notes.

As set forth in the Plan, Vantage has a first lien and security interest on the real and personal property described as the Toluca Ranch, including, without limitation, the land, all improvements, all water rights,  all mineral rights, all agreements associated with the Toluca Ranch, and any and all other rights appurtenant thereto (the "Toluca Ranch Collateral") that

secures the indebtedness represented by the non-bankruptcy Loan #115998 to Garcia Balli, LTD, as borrower, (the "Garcia Balli Loan"). Vantage shall be paid all amounts due and owing on the Garcia Balli Loan including, without limitation, costs of collecting the Garcia Balli Loan upon the sale and/or foreclosure of the Toluca Ranch Collateral. After an event of default under the terms and conditions of the promissory note and loan documentation relating to the Garcia Balli Loan, no Plan injunction or prohibition shall be in effect prohibiting Vantage from bringing any action against the borrowers, guarantors, Plan Trust and/or Trustee, and/or the Toluca Ranch Collateral in order to enforce and collect all indebtedness represented by the Garcia Balli Loan.

Under the terms of the Vantage settlement set forth in the Plan, Vantage must also be paid $400,000.00 by the Plan Trust on or before ninety (90) days from the entry of the order confirming the Plan. The Plan Trust and/or Debtor may use the cash and proceeds received from any real property contributed by Octavio Garcia and Gabriela Garcia and their related entities under the Plan to make this $400,000.00 payment. Provided this $400,000.00 payment is made by the Debtor and/or the Plan Trust in a timely manner, Vantage will transfer and convey, without recourse, all its Collateral Warehouse Receipts to the Plan Trust.

After Vantage has (i) acquired the Donna Facility, free and clear of all liens and (ii) received the $400,000.00 payment, (a) Vantage will waive its unsecured deficiency claim on the Garcia Grain Notes solely against the Debtor; (b) Vantage will release any and all claims, known or unknown, relating solely to the Garcia Grain Notes that it may have as to the Debtor, the Bankruptcy Estate, the Plan Trust and Trustee and their officers, directors, representatives, shareholders, partners, agents and attorneys; and (c) the Debtor, the Bankruptcy Estate, and the Plan Trust and Trustee will release any and all claims, known or unknown, relating solely to the Garcia Grain Notes that they may have as to Vantage, its officers, directors, representatives, employees, shareholders, agents and attorneys.

Upon completion of the Plan treatment of Vantage described in this Motion and the terms set forth in the Plan, including without limitation, (i) the sale to Vantage of the Donna Facility, free and clear of all liens; (ii) Vantage's receipt of the $400,000.00 payment; and (iii) Vantage's receipt of payment in full of the indebtedness represented by the Garcia Balli Loan: (a) Vantage shall release any and all claims, known or unknown, in regard to the Garcia Grain Notes and the Garcia Balli Loan that it may have as to Octavio Garcia, Gabriela Garcia, and Garcia Balli, LTD and their officers, directors, representatives, shareholders, partners, agents and attorneys; (b) Vantage shall release any and all claims, known or unknown, in regard to the Garcia Balli Loan that it may have as to the Debtor, the Bankruptcy Estate, and the Plan Trust and Trustee, and their officers, directors, representatives, shareholders, partners, agents and attorneys; (c) Octavio Garcia, Gabriela Garcia, and Garcia Balli, LTD shall release any and all claims, known or unknown, in regard to the Garcia Grain Notes and the Garcia Balli Loan that they may have as to Vantage, and its officers, directors, representatives, employees, shareholders, agents and attorneys; (d) the Debtor, the Bankruptcy Estate, and the Plan Trust and Trustee shall release any and all claims, known or unknown, in regard to the Garcia Balli Loan that they

may have as to Vantage, and its officers, directors, representatives, employees, shareholders, agents and attorneys; and (e) Vantage shall dismiss with prejudice its pending lawsuit against Octavio Garcia in which Vantage seeks to collect from Octavio Garcia the indebtedness described in the pending lawsuit.

The terms of the Vantage settlement set forth in the Plan, and Vantage's treatment under the Plan, including without limitation, Vantage's treatment in regard to: (i) the Santa Rosa Facility; (ii) the Pitts Property; (iii) the Donna Facility; (iv) the assumption and assignment of any and all leases relating to the Santa Rosa Facility, Donna Facility, and the Pitts Property; (iv) the Surety Bonds Collateral/Vantage Warehouse Receipts; and (v) the Life Insurance on Octavio Garcia, remain in full force and effect, unless and to the extent any of those terms are specifically modified in the Confirmation Order.

c.   Falcon must receive payment in full of its outstanding Allowed Secured Claim in the amount of approximately $5,989,152.71, plus all accrued interest and attorneys' fees since the date of the filing of its Proof of Claim. This payment will be accomplished by Falcon receiving the net proceeds from the sale of the PSG's Moore Farms property having an estimated value for purposes of the Plan of at least $7,000,000, with any remaining property and/or sales proceeds from PSG's Moore Farms to conveyed into the Plan Trust to be used to pay down the three notes (GrainChain, Harco and the Unsecureds), and if necessary, to escrow funds for potential capital gains taxes due to the IRS by Garcia Balli, LTD or to satisfy any deficiency under the plan to satisfy the $12,500,000.00 agreed sum due to StoneX under the plan. Upon payment in full of the indebtedness owed to Falcon it shall release its liens, including without limitation the Deeds of Trust against all other real property of the estate including but not limited to its Deeds of Trust against the Progreso Facility and any other tracts of real property encumbered in any manner by its recorded Deeds of Trust including all liens in applicable insurance proceeds for the restoration of the Progreso Facility. Furthermore, Falcon agrees to release any liens on real property it may have filed in error covering collateral by Vantage, including the Pitts Property. Upon the receipt by Falcon of payments sufficient to fully extinguish its Allowed Secured Claim it shall release the personal guarantee of Octavio Garcia.

d.   Harco has filed a contingent and unliquidated Proof of Claim that is partly contingent and unliquidated for the penal sums of the four (4) Surety Bonds it executed for the benefit of the Debtor in which the Debtor is named as Principal Obligor and TDA is named as Obligee for the Progreso Facility, the Santa Rosa/Donna Facility, the Edcouch Facility, and the Alamo Facility. Upon the payment of funds to the Plan Trust in the amount determined at the conclusion of the investigation by Harco and TDA, with the full cooperation and assistance of the Debtor and Indemnitors, as set forth in the Plan in satisfaction of the claims of depositors of grain at these public warehouses, the Plan proposes to allow that Claim in the amount that Harco pays into the Plan Trust for the Surety Bonds. This consensual treatment provided in the Plan provides that, upon funding of the Surety Bonds in an agreed upon sum to the Plan Trust as provided in this Plan, thereafter for the first three (3) years, the Distributable Net Income shall be divided between GrainChain at the percentage of 45%, Harco at 2.5% and the Unsecured Creditors receiving an initial

percentage of 52.5%; save and except for beans and sunflower seeds, during which the first year: 62.5% to be paid on the Unsecureds Note, 2.5% on the Harco Note, and 35% on the GrainChain Note; during the second year, 60% to be paid on the Unsecureds Note, 5% on the Harco Note, and 35% on the GrainChain Note; during the third year, 57.5% to be paid on the Unsecureds Note, 7.5% on the Harco Note, and 35% on the GrainChain Note, during the fourth and fifth years, 55% to be paid on the Unsecureds Note, 10% on the Harco Note, and 35% to GrainChain. Harco shall also be entitled to receive 10% of the net proceeds from the sale of the Preference Property conveyed into the Plan Trust as well as from the net sales proceeds realized from sales of the New Co. Property. Harco has filed a lawsuit now pending under Case No, 7-23-CV-430 in the U.S. District Court for the Southern District of Texas, McAllen Division styled Harco National Insurance Company v. Octavio and Gabriela Garcia (the "District Court Lawsuit") wherein it seeks indemnity for certain claims and recovery under its written indemnity agreement signed by Octavio and Gabriela Garcia. If pursued, the relief and injunction sought in the Harco Lawsuit would impede the ability of Octavio and Gabriela Garcia to meet their commitment to contribute cash and real property tracts held by them and their related entities necessary to fund the Plan. Furthermore, continued prosecution of the Harco Lawsuit during the term of the Plan may impede and interfere with Octavio's participation in the bean enterprise necessary to produce revenues that will be contributed to the Plan Trust, and which are important for the successful completion of the Plan. The agreement the Debtor, Octavio Garcia, and Gabriela Garcia have reached with Harco will provide for an injunction to prohibit Harco or other creditors from bringing actions or continuing the prosecution of lawsuits against Octavio Garcia and his wife, Gabriela Garcia because it is believed that such actions would have a direct adverse economic impact on the implementation of the Plan. Provided however, that such injunction shall not apply to StoneX if the Plan is in default as to StoneX. Such an injunction will also prevent other creditors from pursuing derivative actions that are asserted to belong to the Bankruptcy Estate and over which the Bankruptcy Court is believed to have exclusive jurisdiction. Such injunction will operate to toll the running of any applicable statutes of limitation which would infringe upon the rights of creditors having claims against these shareholder insiders by virtue of their execution of personal guarantees or indemnity agreements. To enforce such tolling of the statutes of limitation Octavio and Gabriela Garcia will sign tolling agreements for the duration of the Plan, but in no event less than the five-year term, as a condition for the issuance of the injunction prohibiting the initiation or prosecution of lawsuits against them. Provided, however, and strictly conditioned upon Octavio Garcia's, Gabriela Garcia's, and Garba's continued service under the Plan for the full 5-year term, in the event that the payments applied to the Harco Note total a minimum of sixty-five percent (65%) of Harco's Allowed Unsecured Claim from any sources of recovery, including any voluntary payments by Octavio Garcia and Gabriela Garcia, Harco agrees to fully release them from their liability under the terms of the indemnification agreement they signed associated with the Surety Bonds. In the event Harco does not receive repayment of sixty-five percent of its Allowed Unsecured Claim, Octavio Garcia or Gabriela Garcia default or fail to perform their obligations under the Plan, or the case is converted or dismissed, then Octavio Garcia and Gabriela shall not be released from their indemnity obligations and the injunction shall be lifted to authorize, but not

require, Harco to pursue its claims including, but not limited to those asserted in the District Court Lawsuit.

e.     GrainChain asserts a Contested Secured Claim against the Debtor in the amount of $7,841,054.99. GrainChain's claim is secured by an asserted 2nd Lien Deed of Trust against the Progreso Elevator and PSG's Moore Farms against which Falcon holds the 1st Lien Deed of Trust. GrainChain's also asserts its debt is secured by a 2nd Lien Deed of Trust against the Pitts Property against which Vantage holds the 1st Lien Deed of Trust. The Debtor for Plan purposes asserts that the value of GrainChain's equity interest in the above-described collateral is approximately $5,770,847. In addition, GrainChain has a 1st Lien Deed of Trust against PSG's Emory Farms (i.e., a 56-acre tract of land titled in PSG Products LLC) having an estimated value at $770,000, a 1st Lien Deed of Trust against Baryta Industrial Tract (titled in Octavio Garcia) valued at $650,276, and a 1st Lien Deed of Trust against the Edcouch Elevator (i.e., the grain elevator facility owned by the Debtor located at the municipal address of 624 W. Missouri, Edcouch, Texas 78538) valued at $1,334, 435. In accord with the Plan provisions, GrainChain will voluntarily release its pre-petition liens on the properties transferred to the Plan Trust and New Co.  New Co. will operate the New Co. conveyed properties (Progreso Facility, Edcouch Facility and Baryta) with the anticipation of generating Distributable Net Income to be used to make note payments on the three non-recourse notes in favor of GrainChain, the Unsecureds and Harco secured by the New Co. conveyed properties.  New Co. will hire Elkins for continued grain, corn and sunflower seed operations and New Co. will also hire an operator for an anticipated bean operation, all of which is to be further detailed in the transactional documents.  Additionally, the Unsecureds, GrainChain, and Harco will also receive proceeds as a trust beneficiary from properties sold and recoveries had by the Plan Trust from the New Co. Property and the Preference Property. The Plan provides that Octavio and Gabriela Garcia will cause to be transferred and conveyed to New Co., the Progreso Facility, the Edcouch Facility and the Baryta Industrial Tract.  Notwithstanding any other provision of this Motion, the PSG Products, LLC real estate known as PSG's Moore Farms and PSG's Emory Farms shall be conveyed to the Plan Trust for the benefit of the three note holders (GrainChain, Harco and the Unsecureds) and are not subject to the Garcia Balli Property contribution to the Plan Trust. After payment of Falcon, any and all sales proceeds from PSG's Moore Farms and PSG's Emory Farms shall be conveyed to the Plan Trust and used to pay down the three notes, and if necessary, to escrow funds for potential capital gains taxes due to the IRS by Garcia Balli, LTD to satisfy any deficiency under the plan to satisfy the $12,500,000.00 agreed sum due to StoneX under the plan. The debts owed to GrainChain are guaranteed by Octavio Garcia and Rene Izaguirre.  Octavio Garcia and Rene Izaguirre will enter into tolling agreements with GrainChain and the Plan Trust.  Generally, these tolling agreements (a) provide that the guaranties will remain in full force and effect during the Plan term, (b) toll any and all limitation periods through and including the sixth anniversary date of the Plan's Effective Date, and (c) contain the terms and conditions upon which each guarantor will be released from their respective guaranty. The claims by the estate of the Debtor assigned to the Plan Trustee include potential claims against the Debtor's Insiders or Affiliates, or Insiders to those Affiliates, and Octavio Garcia and Rene Izaguirre will enter into tolling agreements

with the Plan Trustee to: toll any and all limitation periods through and including the sixth anniversary date of the Plan's Effective Date, and providing that upon in the payment in full of the Unsecureds Note and payment under the Plan of the Harco Note, Octavio Garcia and Rene Izaguirre will be fully and finally released by the Plan Trustee on behalf of the general unsecured creditors. Nothing in this Motion, the Plan, nor the Confirmation Order shall affect or extinguish Octavio Garcia's and Rene Izaguirre's guaranties in favor of GrainChain. GrainChain reserves all rights to pursue any and all claims in the event its Allowed Claim is not paid in full against any party. Nevertheless, the tolling agreement shall provide that the guarantors will be released from their respective guaranties if after five years and the sale of the New Co. Properties GrainChain has be paid at least 85% of its Allowed Claim.

12.     The following language is proposed by the Debtor, and such modifications are supported and agreed to be Octavio and Gabriela Garcia, their related-entities, PSG Products, LLC, Garcia-Balli, Ltd., and Val Verde Grain Holdings, along with the creditors, StoneX, Vantage, the Official Unsecured Creditors Committee, and GrainChain. This language provides a means by which the Debtor and other affected parties can assure the Court, as well as other creditors and parties in interest, that the contributions to the Plan Trust by Octavio and Gabriela Garcia and their related-entities, PSG Products, LLC, Garcia-Balli, Ltd., and Val Verde Grain Holdings, will be made in accordance with the Plan, and to clarify that any potential resulting tax consequences from the conveyances will be appropriately addressed and the taxes paid.

To accomplish these goals under ARTICLE V, delete the existing paragraphs under the heading C. MEANS FOR IMPLEMENTATION OF THE PLAN, down to the heading "Plan Trust," and insert in its place, the following paragraphs:

### C.     MEANS FOR IMPLEMENTATION OF THE PLAN

Certain real, personal, and intangible property shall be conveyed on the Effective Date to the Plan Trust and New Co., as well as certain payments to certain creditors as set forth in this Plan and generally set out below.

**The New Co. Properties [defined in, §I, 2.58]**     On or before the Effective Date, the Edcouch Facility, Progreso Facility, and Baryta shall be conveyed by each property's record owner

via special warranty deed together with all rights, title, and interests in and to each property to New Co., and by bill of sale(s) all related personal property located at or generally used at each location. For the avoidance of doubt, GrainChain will only release it liens when those properties are conveyed by the record owner(s) to New Co. in an acceptable manner to New Co. and GrainChain and as provided for under the Plan.

**The Preference Properties [defined in, §I, 2.77]**   On or before the Effective Date, those certain properties including PSG's Moore Farms and PSG's Emory Farms titled in the name of PSG Products, LLC, and subject to the liens of any Secured Creditors, will be contributed to the Plan Trust. However, for the avoidance of doubt, GrainChain will only release its liens on the Plan Trust Properties when those properties are conveyed to the Plan Trust in an acceptable manner to GrainChain and the Plan Agent (including an acceptable lien ownership), and GrainChain is granted a 45% beneficial interest, Unsecureds are granted a 45% beneficial interest, and Harco is granted a 10% interest in the sales proceeds from the future anticipated sales of such Plan Trust Properties by the Plan..

**The Garcia-Balli Properties [defined in, §I, 2.6]**   On or before the Effective Date, those certain properties including the South Padre Island Condominium, Toluca Ranch, Moore South, and Huffman, subject to the liens of any Secured Creditors, will be contributed by their record owners to the Plan Trust. These properties are being contributed to the Plan Trust to provide a means for consummation of the settlement with StoneX as detailed in the Plan

**Properties Subject to Contracts of Sale**   If as of the Effective Date any portion of any of the tracts of real property, and excluding any tracts not under contract as defined herein, in the Garcia Balli Properties or  PSG's Moore Farms, or PSG's Emory Farmsare the subject of bona fide contracts of sale with a third-party purchaser, not in breach, andin which earnest money has been deposited and receipted by a title company, then the contracts of sale for those tracts may be closed and the net proceeds, less reasonable attorneys' fees and costs of sale, shall be paid over to the Plan Agent at the closing. However, if the pending contract of sale does not close and the earnest money is returned to the prospective purchaser, then the property which is the subject of the sale shall be promptly conveyed over to the Plan Trust by the title holder.

**Proceeds From the Sale of Properties Already Sold**   Certain of the Garcia-Balli Properties or proceeds from the sale of Non-Debtor Entity Owned Properties [defined in, **§I, 2.33]** have been the subject of sales before the Confirmation Date and the proceeds have been escrowed. These proceeds will be paid over to the Plan Trust on or before the Effective Date and the procedures related to the provision for the payment of any potential capital gains taxes set forth below shall equally apply to those transactions.

**Provision for Payment of Capital Gains Taxes**   The record owner(s) of the tracts of real property set out above shall arrange for their respective accountants to provide to the Plan Agent the present tax basis as of the Effective Date of the various tracts of real property along with an estimate of the amount of capital gains taxes, if any, for which the owner, or responsible taxpayer, will be liable depending upon the amount of the sales price of the property. Upon being provided this information, and upon review by the Plan Agent's tax professionals, the Plan Agent shall escrow the

requisite amount out of the sales proceeds to pay the expected taxes. The taxpayer shall have the eighteen (18) months from the Effective Date or sale, as the case may be, to present the tax return along with other documentation related to any capital gain tax liability related solely to the transfer of the Garcia Balli or PSG's Moore Farms and/or PSG's Emory Farms, or Baryta into the Plan Trust or New Co., as the Plan provides.  Once the taxpayer for the particular tract has prepared the tax return for the year during which the sale occurred, the taxpayer shall present the tax return along with other documentation of any capital gain tax owed to the Plan Agent, who will then review with the Plan Agent's tax professionals.  The Plan Agent, after proper cooperation as defined below,  shall pay the actual taxes owing from the escrowed funds. Any surplus escrowed funds over and above those necessary to pay the taxes shall be retained by the Plan Agent and may be distributed to the beneficiaries of the Plan Trust. Should an occasion arise where the amount escrowed by the Plan Agent for payment of the capital gains taxes of the responsible taxpayer is insufficient to pay the amount of the capital gains taxes associated with the sale of the property then the Plan Agent shall use other resources in the Plan Trust to make up the difference and pay the taxes due. In the event a surplus amount has been deposited into escrow the Plan Agent shall deposit into the Plan Trust the excess funds unless the selling party files a reasonable objection.  In such event, the Parties shall cooperate in good faith in seeking to calculate the appropriate capital gains reserve.

**Cooperation to Minimize the Amount of Taxes Due**        The owners of the various tracts of real property set out above to be conveyed into the Plan Trust shall facilitate and coordinate communication between their respective tax professionals and the Plan Agent and Plan Agent's tax professionals and use all reasonable efforts  to minimize the tax impact that the contributions of the real property tracts will have either on the responsible taxpayer or the Plan Trust and maximize the proceeds available to pay to the beneficiaries.

**Provisions Relating to the Contribution of Real Property to New Co.**    The Plan provides in more detail, and as set out generally here:

Such real property title and interest shall be capable of being insured by one or more title policies and insurance at the election, expense, and in favor of New Co. and/or GrainChain.

Additionally, all such conveyances of real and personal property to New Co. shall be free and clear of any and all liens, claims, interests, and encumbrances in a manner satisfactory to New Co. and GrainChain, save and except for (i). the existing deed of trust lien in favor of Falcon International Bank on the Progreso Facility to secure the payment of its Allowed Secured Claim; (ii.) liens securing the three non-recourse Notes (Unsecureds, Harco, and GrainChain) all in equal priority and without non-judicial foreclosure rights, and (iii). GrainChain's continuing rights of first refusal.

As set out in more detail in its treatment the Plan, GrainChain will voluntarily release its asserted liens on the New Co. Properties on the Effective Date, and the non-recourse Notes will be secured by deeds of trust executed by the respective property owners, in favor of the respective Note holders consistent with the non-recourse Note terms and deeds of trust, which deeds of trust shall be filed in the real property records together with the Intercreditor Agreement.

GrainChain will release asserted liens on New Co. Properties and Plan Trust Properties only when those properties are conveyed by the record owners to New Co. or the Plan Trust in a manner acceptable to GrainChain and the Plan Agent.

The real and personal property to be conveyed to New Co. shall be operated, protected, insured, and improved in New Co.'s business judgment and will be operated for the purpose of generating anticipated Distributable Net Income that is to be used by New Co. to pay down the three non-recourse Notes until either (i). the expiration of the five-year term and liquidation thereafter, or (ii). the Unsecureds Notes and the Harco Note are paid in full, whichever is earlier.

At the conclusion of the five-year note term, in the event that the Unsecureds Note and the Harco Note have not been paid in full, the New Co. Properties will be sold, subject to GrainChain's continuing rights of first refusal, which it may exercise at its sole discretion from time to time. New Co. may continue to operate, protect and insure the New Co. Properties after the expiration of the five-year term at its and GrainChain's sole discretion, for a reasonable period of time consistent with the Plan purpose. If operations continue beyond the five-year term by New Co. and until a sale of the New Co. Properties, Distributable Net Income shall continue to be shared (up to the payment of the full amount of the Unsecureds Note and the Harco Note). Absent agreement or Bankruptcy Court authorization, in no event will more than the actual Note amounts be paid on the Unsecureds Note and the Harco Note.

If GrainChain acquires the New Co. Properties by one or more sales, in no event shall the post-sale profits earned from post-sale operations be shared with the Plan Trust for the benefit of the Unsecureds Note or the Harco Note.

## III.
## NEED FOR CONSIDERATION OF MOTION ON AN EMERGENCY BASIS

13.     The Debtor urges emergency consideration of this Motion as it reflects the most recent agreements of the major secured creditors in this case along with the Committee and the Debtor to clarify certain provisions of the pending Plan of Reorganization. Debtor would show that it is important for the Plan to be considered and confirmed at the hearing on March 28, 2024 so that the provisions restructuring the grain and bean operations conducted by the Debtor can be in place by the 2024 grain harvest. The Debtor urges the Court therefore, to rule on this Motion at the confirmation hearing so that the reorganization efforts will not be irreparably harmed. Delay in confirming of this Plan may doom any hopes of reorganization.

14.     Counsel for the Debtors hereby certifies that the information contained herein is a complete and accurate account as related to the facts and circumstances pertaining to the emergency relief requested.

## IV.
## RELIEF REQUESTED

15.     Pursuant to § 1127 of the Bankruptcy Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor urges that these Modifications as set forth above be approved by the Court without further notice or re-solicitation of the votes of creditors.

16.     Section 1127 provides that a proponent of a plan may modify the plan at any time before confirmation so long as the plan as modified meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code.  The Debtors' modifications as set forth above meet the requirements of §§ 1122 and 1123 of the Bankruptcy Code.

17.     Additionally, the proposed modifications set forth above do not adversely change the treatment of the claim of any creditor that has not accepted in writing the modification, as required by Bankruptcy Rule 3019. Counsel for all creditors, being affected by the modifications have accepted in writing the modifications.

18.     Finally, the modifications set forth in the Motion do not adversely impact any creditor or the treatment of any creditor's claim except for the creditor identified above (e.g., Stony Ridge), and this creditor is fully in support of the modifications.  As such, the Court may approve the modifications proposed by the Debtor and confirm the Plan without requiring further disclosure or solicitation of new acceptances from the entire creditor body.  *See, e.g., In re Couture Hotel Corp.*, 536 B.R. 712, 731 (Bankr. N.D. Tex. 2015) ("[E]ach written Plan Modification reflects agreements

reached between the Debtor and individual creditors that no not adversely change the treatment of any creditor or interest holder who has not accepted the modifications" and, accordingly, "the Written Modifications and Oral Modification meet the requirements of Bankruptcy Rule 3019, and do not require additional disclosure under 11 U.S.C. § 1125 or re-solicitation of votes under 11 U.S.C. § 1126, nor do the modifications require that holders of claims or equity interests be afforded an opportunity to change previously cast votes."); *In re American Trailer and Storage, Inc.*, 419 B.R. 412, 419 (Bankr. W.D. Mo. 2009) ("If modifications made to a plan prior to confirmation (but after the ballots have been counted) are minor, impact only a creditor who has been fully involved, and do not adversely impact any other creditor, then it is not necessary to solicit new acceptances.").

WHEREFORE, PREMISES CONSIDERED, the Debtor, Garcia Grain Trading Corp. prays that these modifications be approved by the Court, and that the Court determine that the Debtor's Modified and Supplemented Third Amended Plan proposed by the Debtor be confirmed in accordance with the provisions of 11 U.S.C. § 1129(a), and also seeks such other and further relief as the Court may deem necessary and proper.

Respectfully submitted,

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806)765-7491
Facsimile: (806) 765-0553

By   /s/ David R. Langston
David R. Langston:  SBN 11923800
Southern District Bar No. 9489
***Attorneys for Debtor, Garcia Grain Trading Corporation***

## CERTIFICATE OF CONFERENCE

I, David R. Langston, counsel for the Debtor, hereby certify that I have spoken with counsel for Vantage, Falcon, GrainChain, the Official Unsecured Creditors Committee, Harco, the Texas Department of Agriculture, and Octavio Garcia, and they have each stated that they are in agreement with the relief requested in this Motion.

/s/ David R. Langston
David R. Langston

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Motion was served regular U.S. Mail, postage prepaid and/or via ECF on the parties in interest listed below on this 27th day of March, 2024.

1.  Garcia Grain Trading Corp./Garba
    Attn: Octavio Garcia
    1702 S. International Blvd.
    Weslaco, TX 78596
    *Debtor*

2.  Andrew Jimenez
    U.S. Trustee's Office
    606 N. Carancahua, Suite 1107
    Corpus Christi, Texas 78476

3.  David C. McLaughlin
    Fluegel Anderson McLaughlin & Brutlag, Chartered
    129 2nd St. NW
    Ortonville, MN  56278
    *Counsel for Stony Ridge*

4.  Demetrio Duarte, Jr.
    Duarte & Molina, P.C.
    2200 Warner Ave.
    San Antonio, TX 78201
    *Counsel for Octavio Garcia*

5.  All parties receiving notice via ECF in this case.

/s/ David R. Langston
David R. Langston